UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO. 14-21385-CIV-LENARD/GOODMAN**

WREAL LLC,

    Plaintiff,

v.

AMAZON.COM, INC.,

    Defendant.

_____/

**AMENDED ORDER ON DISCLOSURE OF NON-TESTIFYING CONSULTING EXPERTS WHO RECEIVE HIGHLY CONFIDENTIAL INFORMATION UNDER PROTECTIVE ORDER[1]**

*"Listen, do you want to know a secret?*

*Do you promise not to tell, whoah, oh"*

\- The Beatles[2]

In this trademark infringement case involving alleged reverse confusion, the parties agree on almost all aspects of a proposed protective order governing the exchange of sensitive business and financial information. But Plaintiff Wreal, LLC ("Wreal") and Defendant Amazon.Com, Inc. ("Amazon") do not agree on one issue,

---

[1] This Amended Order is designed to more precisely cite to the original publication source of an American Bar Association article cited in footnote 5 below. A prior version of this Order accurately cited an abbreviated republication of that article (which originally appeared in a different American Bar Association periodical). There are no other changes between the initial Order and this Amended Order.

[2] From *Do You Want to Know a Secret?* on the *Please Please Me* album (EMI Studios 1963).

1

which has now become a sticking point and the subject of legal memoranda [ECF Nos. 61 and 62] as well as a hearing: whether the parties should disclose the names of non-testifying consulting experts who receive the most-confidential type of discovery -- material marked "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY."

Contending that its consultant-identification request is common and that it has established good cause because the information at issue is of the utmost commercial sensitivity, Amazon wants these consulting experts identified. But Wreal contends the "disclose-the-consultants'-identities" position is unnecessary, will interfere with its ability to prepare its case and will lead to needless litigation over objections to potential experts.

Although there are cases and sample orders including such identification provisions when the parties *agree* to the mandatory disclosures of experts' identities, there is not a large body of law when, as is the case here, there is a *dispute* over expert identification. Under the specific facts of this particular case (and without adopting a blanket rule that the provision would always be appropriate), the Undersigned, exercising the Court's broad discretion after balancing the parties' interests, concludes that Amazon has demonstrated the requisite good cause to have the requested provision included in the protective order. The Undersigned will outline the background and legal rationale below.

### I.   Factual Background

Wreal owns the federally-registered trademarks **FyreTV® and FyreTV.com®** for video-streaming services (including through its set-top box). [ECF No. 1, p. 2]. According to Wreal, it began using its marks for its streaming video service, which allows consumers to stream videos to their television sets using an internet connection, long before Amazon debuted its "Fire TV" set-top box in April 2014. [*Id.* at p. 3]. Wreal's video streaming service has provided adult content to consumers since 2007, though it alleges an intent to broaden its reach beyond adult content. [*Id.* at p. 4]. Amazon's video streaming service allows consumers to stream a broad range of videos, presumably including adult content, to their television sets using an internet connection. [*Id.* at p. 5].

Five months after filing its lawsuit, Wreal filed a motion for a preliminary injunction. [ECF No. 28]. In its motion, Wreal alleges that, given Amazon's dominant market position and superior marketing power, consumers are likely to mistakenly assume that Wreal's Fyre TV is somehow affiliated with Amazon or that Wreal is the infringer. [*Id.*].

The Court has established a discovery timetable and scheduled an evidentiary hearing on the motion for a preliminary injunction. [ECF No. 36]. The parties have, with one significant exception, agreed to a protective order to protect their trade secrets and

proprietary, sensitive information. Although the proposed protective order provides that highly confidential information may be shared only with outside counsel and outside experts who agree to be bound by its terms, Amazon demands that Wreal identify and give Amazon the opportunity to object to non-testifying experts who are asked to view Amazon's highly confidential materials. [ECF No. 62]. Wreal objects. [ECF No. 61].

Wreal's discovery requests, among other things, Amazon's financial, business and marketing strategies. It seeks documents showing Amazon's internal sales figures, documents revealing Amazon's target market, documents related to Amazon's internal branding decisions concerning its naming of its "Fire TV" product and service, and documents showing how Amazon uses information received from users. [ECF No. 62, p. 5]. Amazon contends that this information, if made known to its competitors, would cause it substantial harm. [*Id.*]. By way of example, Amazon argues that the "total sales" of its new streaming video set-top box and service would be valuable to a competitor making pricing and advertising decisions in the "fast-moving business of capturing consumers for streaming video." [*Id.* at p. 2].

II. **The Parties' Legal Arguments**

Wreal says that courts have repeatedly found protective orders sufficient when they do not contain expert-identification provisions. [ECF No. 61, p. 2]. It also notes that courts recognize the role that consulting experts play in a party's litigation strategy, and

4

it therefore argues that disclosure would interfere with its ability to prepare its case. [*Id.*]. Moreover, Wreal says that an expert identification provision will bog down discovery because it could lead to "a needless string of objections" (to the proposed consulting experts). [*Id.* at p. 4]. For example, Wreal argues, Amazon could simply (for strategic reasons) object to a disclosed consulting expert and "block Wreal from consulting with that expert until the Court rules otherwise." [*Id.*]. In addition, Wreal says that the requested provision would provide "a wealth of information about Wreal's litigation strategy." [*Id.* at p. 3].

Recognizing that some courts have model stipulated protective orders, Wreal says that Amazon's reliance on stipulated or model provisions is misplaced because only court rulings on disputed disclosure provisions are relevant and because "Wreal is not willing to compromise its ability to prepare its case and risk stalling discovery." [*Id.* at p. 5].

Finally, Wreal stresses that its version of the protective order (which omits the consulting expert disclosure mechanism) is adequate because it requires any expert (consulting or otherwise) to be bound by the protective order before seeing any confidential information. [*Id.* at p. 3].

Amazon, however, argues that good cause supports its expert identification disclosure provision because the information is especially sensitive and in need of protection. [ECF No. 62, p. 5]. Amazon disclaims an intent to suggest that Wreal or its

5

experts will act in bad faith. [*Id.*]. Instead, it argues that its position is based on the practical reality that there are only a few likely candidates for consulting experts and they may work for Amazon's competitors. [*Id.*]. Therefore, Amazon says, it is "unreasonable to expect such an expert to compartmentalize his or her knowledge, or un-ring a bell." [*Id.*]. Phrased slightly differently, Amazon says that the provision is imposed "because experts are human beings with human failings and best intentions notwithstanding, none of us can promise to unlearn a secret." [*Id.* at p. 8].

Noting that model protective orders include expert identification provisions, Amazon describes its request as neither unprecedented nor unique. [*Id.* at p. 8]. It also challenges Wreal's work product argument, noting that the work-product rule itself does not prevent disclosure of the identity of a non-testifying expert and stressing that Federal Rule of Civil Procedure 26(b)(4), which governs what may and may not be discovered from an expert, does not extend the prohibited category to an expert's name. [*Id.* at p. 9].

### III.     Legal Analysis

Fed. R. Civ. P. 26(c) authorizes protective orders concerning the dissemination of sensitive information. Courts have "broad discretion" to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). District courts evaluating the grounds for a protective order should "balance the interests of those requesting the order." *McCarthy v. Barnett Bank of*

*Polk City*, 876 F.2d 89, 91 (11th Cir. 1989). Once a party demonstrates good cause for the entry of a Rule 26(c) protective order, the burden shifts to the party opposing the protection to explain why it is not warranted. *Am. Standard Inc. v. Pfizer*, 828 F.2d 734, 741 (Fed. Cir. 1987).

Rule 26(c)(1)(G) provides that a court, for good cause, may enter an order "requiring that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a specified way." Amazon's requested (and challenged) provision falls under subsection G, and Wreal does not dispute that some of the information produced in discovery would be of this type.

The Undersigned finds it significant that the United States Patent and Trademark Office's model protective order for intellectual property cases (and a trademark infringement case like this one is surely an intellectual property case) includes the very type of provision Amazon requests here.[3] In addition, several district courts, including the District of Columbia and the Southern District of California, have similar model orders. [ECF No. 62-1]. The model order used in the Southern District of California, for example, requires the party seeking advance approval of an independent expert to

---

[3] Section 5 of the model order, entitled "Disclosure to Independent Experts or Consultants," requires advance notification of the identity of the proposed expert consultant. [ECF No. 62-2, 3]. The notice must include the name, address, occupation and professional background" of the expert or consultant and gives the party receiving the notice ten (10) business days to object. [*Id.*]. If there is a timely objection, then the parties must negotiate and, if unable to resolve the dispute, then the party proposing disclosure to the challenged expert or consultant must bring the matter to the Trademark Trial and Appeal Board. [*Id.*].

receive confidential information to provide the name and curriculum vitae of the proposed independent expert, along with a copy of the form evidencing the expert's agreement to be bound. It gives the producing party 14 days to lodge a written objection and also provides that approval of independent experts "must not be unreasonably withheld." [*Id.* at p. 91].

In addition, other courts have recognized the concerns advanced by Amazon and have authorized protective orders designed to address them. For example, in *In re Neubauer*, the district court evaluated an appeal of a protective order entered by the bankruptcy court requiring the appellant to disclose those persons to whom he intended to reveal his opponent's confidential information. 173 B.R. 505, 506 (D. Md. 1994). Similar to Wreal's position here, Neubauer argued that the order was unduly intrusive on his preparation of the case because it forced him to reveal to his opponent, a bank, those experts with whom he informally consulted with but chose not to retain. *Id.* at 507. The bank raised the same type of argument that Amazon asserts: it argued that it needed to know which competitor is to receive its confidential information before it is disclosed in order to guard against inappropriate use. *Id.*

Siding with the bank, the *Neubauer* Court determined that the bank's concern was legitimate and concluded that the provision was "necessary to assure no commercial harm" to the bank and did not "inhibit Neubauer's discovery rights under Rule 26." *Id.* at 508. The Court held that the final protective order "strikes the

8

appropriate balance" between the competing concerns -- the bank's need for a protective order to prevent the release of its confidential information to competitors and Neubauer's need to use information to help his investigation. *Id.* That finding is equally applicable here.

In addition, the Undersigned does not accept Wreal's argument that the requested provision would violate its right to keep the identities of its consultants secret. Rule 26(b)(3)(B) does not prevent disclosure of the *identity* of a non-testifying expert -- it prohibits only the disclosure of "mental impressions, conclusions, opinions, or legal theories." *See generally Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 999 (9th Cir. 2012) ("the rule does not prevent disclosure of the identity of a nontestifying expert, but only 'facts known or opinions held' by such an expert") (quoting Rule 26). *See also Baki v. B.F. Diamond Constr. Co.*, 71 F.R.D. 179 (D. Md. 1976) (names and addresses and other identifying information of non-testifying experts may be obtained through interrogatories without any special showing of exceptional circumstances, in the absence of specific facts peculiar to the case).[4]

Not only have several courts concluded that the identity of a non-testifying expert is not automatically off limits, but a very recent article in the ABA's Litigation

---

[4]     *Ager v. Stormont*, 622 F.2d 496, 503 (10th Cir. 1980) takes the contrary view, but in a relatively recent review of the authorities, one court concluded that "the case law seems to show that, if anything, it is the rule announced in *Baki*, not *Ager*, that seems to predominate." *In re Welding Fume Prods. Liability Litig.*, 534 F. Supp. 2d 761, 768 n.8 (N.D. Ohio 2008) (internal citation omitted).

9

News, entitled "Your Opponent Can Discover Your Experts," noted the case law permitting the discovery and provided a practice tip -- be more circumspect about what one tells consultants.[5]

The Undersigned need not determine whether the rule in *Baki* or in *Ager* should govern generally. Instead, like the Court in *In re Welding Fume Products Liability Litigation*, "even if the rule announced in *Ager* adheres, exceptional circumstances exist in this case to support disclosure." 534 F. Supp. 2d at 768. Because Amazon has demonstrated good cause for the requested provision, the Undersigned will be entering

---

[5] Maria E. Rodriguez, *Your Opponent Can Discover Your Experts*, Litigation, American Bar Association, Vol. 40 No. 4 (Summer 2014), http://www.americanbar.org/publications/litigation_journal/2013-14/summer/experts_your_opponent_can_discover_your_experts.html (membership required) (last visited December 19, 2014), *shortened version republished in* Litigation News: Tips From the Trenches, American Bar Association, http://apps.americanbar.org/litigation/litigationnews/trial_skills/102914-tips-opponent-discover-experts.html (last visited December 19, 2014) (no membership required). The original Order did not explain that the Litigation News version is a shorter version of an article from Litigation magazine. The ABA asked the Undersigned to issue an Amended Order in order to make this point clear, and the Undersigned has done so.

a protective order containing the expert identification clause -- albeit one with slightly compressed deadlines for objecting.

**DONE AND ORDERED** in Chambers, in Miami, Florida, December 19, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
Judge Joan A. Lenard
All Counsel of Record