UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-21385-CIV-LENARD/GOODMAN

WREAL, LLC, a Florida limited liability
company,

    Plaintiff,
vs.

AMAZON.COM, INC., a Delaware
corporation,

    Defendant.
_____/

**MOTION FOR RECONSIDERATION OF
MAGISTRATE GOODMAN'S MAY 5, 2015 DISCOVERY RULING**

**I.  INTRODUCTION**

Wreal, LLC ("Wreal") is the owner of the federally registered marks FyreTV® and FyreTV.com®, and has used those marks for over seven years to market an adult streaming video service. That service, called FyreTV®, is available on the web, through mobile devices, and through set-top boxes like Roku and Wreal's own FyreTV® set-top box. In April 2014, Amazon.com, Inc. ("Amazon") launched its own streaming video service and chose to use the identical-sounding name Fire TV despite having prior knowledge of Wreal's rights to the name.

Wreal alleges that Amazon, with its household name and superior marketing power, will cause consumers to incorrectly believe that it is the source of Wreal's FyreTV® service. The result is reverse confusion. And while both parties use the mark for streaming video services, Amazon argues that confusion is unlikely because of the difference in content offered by each. Specifically, despite the substantial evidence that pornographic and mainstream content are complementary products provided by well-known companies such as Comcast and Amazon

1

itself, Amazon claims that adult-oriented content is so far from what Amazon does as a company that consumers are unlikely to be confused.

In order to determine whether consumers are likely to believe that Amazon would put out an adult streaming video service, Wreal sought discovery related to some of the other products that Amazon sells, including sex toys, items that are traditionally sold alongside pornography in brick-and-mortar stores that offer adult content.

The publicly available information is staggering. Amazon offers approximately 350,000 different types of sex toys for sale on its website. (*See* Ex. 1). Many of these sex toys are called "masturbators," and as the name implies, are designed for use in masturbation. (Ex. 2). These products are clearly marketed at consumers of adult content, and indeed many of them are endorsed by adult film actresses. (*Id.*) In fact, some are even advertised as being molded from their genitalia. (*Id.*).

Moreover, when a consumer performs a Google search for certain types of sex toys, Amazon is among one of the first search results. (Ex. 3). Those Google searches also returned paid advertisements from other companies that, like Amazon, sell sex toys. (*Id.*) Those companies sell adult movies as well, further showing that the two products are indeed complementary and often sold by the same source. (Ex. 4.)

Given the above, discovery related to Amazon's sale of sex toys is unquestionably relevant to this case. Because sex toys and adult films are complementary products, the same consumers are likely to purchase them. Thus, discovery related to the extent of Amazon's sex toy sales is relevant to whether the parties share the same consumers. It is also relevant to Amazon's intent, particularly given Amazon's defense that consumers would never associate it with adult content.

Moreover, the fact that sex toys and adult videos are complementary means that it is likely that consumers will attribute them to the same source. This contradicts Amazon's argument that consumers would never associate Amazon with adult content. And it goes to the ultimate question in a trademark infringement case, which is whether consumers will be confused as to the source of the product or service. In this reverse confusion case, Amazon's sale of sex toys makes it more likely than not that consumers will associate Wreal's FyreTV® with Amazon. That is particularly true when the sex toys at issue are not mere personal massagers often made available at pharmacies like CVS and Walgreens, but instead consist of items like the "Doc Johnson Lexi Belle Ur3 Pocket P*ssy Masturbator," a product advertised on Amazon's website as being an "exact replica" of Ms. Belle's "ribbed internal cavities." (Ex. 5).

While Amazon's sale of sex toys falls clearly within the scope of relevance for discovery, the Magistrate disagreed, and held that "sex toys are irrelevant to this case" because (1) Wreal does not sell sex toys, (2) Wreal is not suing Amazon for selling sex toys, (3) Wreal has not amended its complaint to include a sex toy theory, (4) Wreal withdrew its previous request of sex toy related documents, and (5) a consumer can only access sex toys through Amazon's health and wellness section, not Amazon's Fire TV.[1] (Dkt. 144).

As will be explained below, the Court should reverse the Magistrate's order because it is clearly erroneous and contrary to the law. Amazon's sale of sex toys is relevant to the ultimate issue in this case, which is **not** whether Amazon copied Wreal's website by selling sex toys or otherwise. Rather, the ultimate issue is whether consumers will believe that Amazon is the source of FyreTV®. In that regard, the Magistrate's ruling does not accurately reflect trademark

---

[1] It is true that the main category for Amazon's hundreds of thousands of sex toys is "Health & Personal Care," and the product endorsed by Ms. Belle falls within this broad category. The sub-categories are "Sexual Wellness > Adult Toys & Games > Sex Toys > Masturbators & Dolls." (*See* Id.)

3

law because whether Wreal sells sex toys is irrelevant to consumers' perceptions of *Amazon*, and specifically whether *Amazon* could be the source of Wreal's FyreTV® service. Accordingly, the Magistrate's discovery ruling should be reversed, and Wreal should be permitted to pursue discovery related to Amazon's massive sex store.

## II.     DISCOVERY AT ISSUE

Wreal moved to compel responses to the following discovery[2]:

- Wreal's First Requests for Production, No. 8. (*See* Ex. 6, which contains Wreal's requests and Amazon's objections, at 5).

- Wreal's Re-Notice of Rule 30(b)(6) Deposition of Amazon.com, Inc., Topic Nos. 5, 6, 7, 14, and 15. (*See* Ex. 7 at 4.)

- Wreal's First Requests for Admission, Nos. 1-13. (*See* Ex. 8, which contains Wreal's requests and Amazon's objections, at 2-7).

---

[2] With respect to Wreal's Request for Production and its 30(b)(6) notice, the Magistrate found that Wreal waived its request for relief by not moving to compel within 30 days as required by Local Rule 26.1(i). As Wreal will explain below, Wreal's delay was reasonable given the procedural posture of this case. Regardless, the Magistrate specifically found that Wreal brought the discovery dispute related to Wreal's Requests for Admission to be timely, and rejected Amazon's argument that Wreal's purported waiver with respect to discovery at the preliminary injunction phase of this case somehow waived the entire topic. (Dkt. No. 144, fn 3). Further, fact discovery was just over a month from being closed at the time of the hearing on this matter, and it was noticed well before then. Moreover, Wreal re-noticed the 30(b)(6) deposition topics for which Amazon failed to present a witness on April 30, 2015, and Wreal propounded additional discovery related to sex toys the same day, before the Magistrate issued his May 5, 2015, ruling. Thus, even if the Court were to find that Wreal waived its right to seek relief with respect to its initial discovery requests, there is no support in the law that any such waiver extends to subsequent discovery requests made while fact discovery is ongoing.

### III. ARGUMENT

#### A. <u>Applicable Standards.</u>

##### 1. *Standard of Review*

A magistrate judge may decide non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A). Pursuant to that statute and Rule 72(a), the Magistrate's order is subject to review by this Court to determine whether it is "clearly erroneous or contrary to law." *Tosto v. Zelaya*, No. 06-21213-CIV, 2010 WL 4942906, at *3 (S.D. Fla. Nov. 30, 2010) (quoting *In re Commr's Subpoenas,* 325 F.3d 1287, 1291 fn2 (11th Cir. 2003). A review of the Magistrate's application of the law is *de novo*, as the "application of an improper legal standard ... is never within a court's discretion." *Id.* (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)).

As will be explained below, the Magistrate's order is clearly erroneous and contrary to the law because Amazon's sale of sex toys is plainly relevant under Rule 26(b)(1).

##### 2. *Standard for Relevance Under Rule 26*

Relevancy under Rule 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-CV-81004, 2010 WL 623699, at *1 (S.D. Fla. Feb. 23, 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). Put another way, discovery should be allowed "unless it is clear that the information sought has ***no possible bearing*** on the claims and defenses of the parties or otherwise on the subject matter of the action." *Id.* (citing *Tate v. United States Postal Serv.,* No. 04-61509, 2007 WL 521848, at *1 (S.D. Fla. Feb. 14, 2007) (emphasis added) (internal citation omitted)). "[D]iscovery is not limited to the issues raised by the pleadings

5

because discovery itself is designed to help and clarify the issues." *Donahay v. Palm Beach Tours & Trans., Inc*. 242 F.R.D. 685, 687 (S.D. Fla. 2007)

As will be explained below, the Magistrate misapplied this standard. This is evident by the fact that the Magistrate put the burden on Wreal to explain the relevancy of the requested discovery. However, a party objecting on relevance grounds must "show that the requested discovery at issue has **_no possible bearing_** on the claims and defenses of the case." *Tate,* 2007 WL 521848, at *2; *see also Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 2001 WL 34079319 (S.D. Fla. 2001) ("[T]he burden of showing that the requested information is not relevant to the issues in the case is on the party resisting discovery") (citation omitted)); *see also* Fed. R. Evid. 401(evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence).

This means that Amazon must show that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure. *Tate*, 2007 WL 521848, at *2 (citations omitted). Amazon made no such showing, and thus the Magistrate's ruling is clearly erroneous and contrary to the law.

    B. **Amazon's Sale of Sex Toys is Relevant to This Case.**

Had the Magistrate applied the proper standard, he would have determined that Amazon's sale of sex toys is relevant to this case. The ultimate question of fact in a trademark infringement case is whether consumers are likely to be confused. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir. 1983). Because this is a reverse confusion case, the specific question is whether consumers are likely to think that FyreTV® is put out by

Amazon as a result of its streaming service Fire TV, which is advertised together with Amazon's housemark.

In determining whether there is a likelihood of confusion, courts look at a number of subsidiary facts. *Id.* Specifically, courts in the Eleventh Circuit consider the following subsidiary factors in determining whether there is a likelihood of confusion: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets (trade channels) and customers, (5) similarity of advertising media, (6) defendant's intent, and (7) actual confusion. *Tiger Direct, Inc. v. Apple Computer, Inc.*, No. 05-21136, 2005 WL 1458046, at *13 (S.D. Fla. May 11, 2005) (Lenard, J.) (citing *Frehling Enterprises v. Int'l Select Group,* 192 F.3d 1330, 1335 (11th Cir. 1983)).

Other factors may be considered when appropriate given the facts of the case. *See, e.g., Tana v. Dantanna's,* 611 F.3d 767, 780 (11th Cir. 2010) ("Our circuit has recognized that new factors may merit consideration in determining whether there is a likelihood of confusion"). Thus, while the "seven subsidiary findings typically inform a court's determination of the likelihood of confusion, a court must also take into account the unique facts of each case." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007). Ultimately, the Court must make the ultimate fact decision by weighing the individual subsidiary facts. *Jellibeans,* 716 F.2d at 840 n.17.

Amazon's sale of sex toys is relevant to at least two of the traditional factors, namely the similarity of the parties' customers, and Amazon's intent. It is also relevant to the ultimate fact in this case. Thus, sex toys have more than a "possible bearing on the claims and defenses in this case…;" they are directly relevant to Wreal's claims and to Amazon's defense to those claims as will be explained further below. *Rosenbaum,* 2010 WL 623699, at *1.

### 1. *Amazon's Sale of Sex Toys is Relevant to Show That the Parties Share the Same Customer Base.*

Amazon's sale of sex toys is relevant to whether there is overlap in the parties' customer bases. In a trademark infringement case, it is not necessary that the parties share identical customers in order for this factor to weigh in favor of a likelihood of confusion, though "some degree of overlap should be present." *Tiger Direct,* 2005 WL 1458046 at *18 (citing *Frehling*, 192 F.3d at 1339). In *Tiger Direct,* Apple argued that the parties do not share a customer base because it only marketed the specific product at issue, its Tiger operating system, to consumers that purchase a Mac. *Id.* This Court rejected Apple's argument, and explained that Apple does not only market Mac computers, but also markets other consumer electronics such as iPods. *Id.* This Court found that "Apple's growth in the portable digital music player market has significantly expanded its customer base beyond Mac users." *Id.* Thus, a consumer that visits Apple's website to purchase an iPod "will be exposed to Apple's new Tiger operating system." *Id.* Accordingly, this Court correctly looked beyond the product at issue, Apple's Tiger operating system, and looked at Apple's sale of *other products* in order to determine that the parties share customers.

To be sure, in *Tiger Direct*, evidence was apparently presented that Tiger Direct sold some of Apple's other products, whereas Wreal does not currently sell sex toys. But Wreal's sale of sex toys is not at issue, Amazon's are. If the jury were to conclude that consumers that purchase adult videos or pornography are likely to also purchase sex toys, then discovery related to Amazon's sale of sex toys is relevant to whether the parties share similar customers. Put another way, the Court can look at Amazon's sale of sex toys to determine whether the parties share the same customer base, as consumers that purchase sex toys are also likely to purchase complementary products like adult movies.

The Magistrate did not accept this premise, and explained that Wreal "provided no evidence to prove the viability of its theory – only attorney rhetoric." (Dkt. 144 at 6). There are two problems with the Magistrate's conclusion. *First*, Wreal *did* make a showing that consumers that purchase sex toys are also likely to purchase adult movies. To that end, Wreal provided screenshots from the websites of a number of stores that specialize in the sale of sex toys including Adam & Eve[3], Better Sex, and Sex Toy Warehouse. (*See* Ex. 4). These three websites, which appear alongside Amazon in Google search results for various types of sex toys (*see* Ex. 3), also sell adult movies. The fact that these three major sex toy distributors also market adult movies supports Wreal's contention that consumers that purchase adult videos are likely to also purchase sex toys. Otherwise, companies that sell sex toys would not market adult movies alongside them.

*Second*, the Magistrate's apparent requirement that Wreal provide "evidence to prove the viability of its theory…" is contrary to the law, as Wreal does not have to prove that consumers associate sex toys with adult videos in order to show that discovery of the former is relevant. Rather, as explained above, Amazon bears the burden of showing that the discovery requested is irrelevant. *See Adelman v. Boy Scouts of America,* 276 F.R.D. 681, 689 (S.D. Fla. 2011) (Goodman, M.J.) (Explaining that "the party resisting discovery … has the burden to demonstrate specifically how the request is unreasonable or not relevant.") (internal citation omitted). Amazon could not meet that burden because adult movies and sex toys are indeed complementary, and Amazon's sale of sex toys is relevant to whether the companies share the same customer base.

---

[3] The Adam & Eve website sells thousands of different sex toys along with adult movies. Amazon sells far more sex toys than Adam & Eve, however, by approximately two orders of magnitude. Amazon sells *hundreds of thousands* of different types of sex toys.

The fact that Amazon sells hundreds of thousands of sex toys, including those endorsed by adult film actresses and those that are specifically designed for masturbation, supports a finding of fact that the parties share the same customers. Accordingly, sex toys are relevant in this case.

### 2. *Amazon's Sale of Sex Toys is Relevant to Show Amazon's Intent.*

Amazon's massive sex store also goes to Amazon's intent.[4] Ms. Elizabeth Baicy, Amazon's corporate representative and a Principal Marketing Manager who was involved in naming Amazon's Fire TV, explained in her declaration in support of Amazon's opposition to Wreal's motion for preliminary injunction that Amazon knew about Wreal's FyreTV® when it chose the Fire TV name. (Ex. 9, Baicy Decl. ¶ 4). She said that Amazon did not think that people "would associate Amazon with hardcore pornography because it was so far away from what the company stands for...." (*Id.*) She gave similar testimony at the Dec. 30, 2014, evidentiary hearing, where she explained that Amazon would not be associated with Wreal's FyreTV because "Amazon was so far away from being anything *related to* porn and pornography that that would be something that we wouldn't have to deal with." (Ex. 10, Tr. at 211:20-212:3) (emphasis added). The Magistrate *relied on* Ms. Baicy's testimony in his Report and Recommendations, and thus it is critical that Wreal be afforded the opportunity to discovery of evidence that would suggest otherwise.

Thus, evidence that Amazon sells sex toys, including those endorsed by adult film actresses and even molded from their genitalia, is relevant to rebut Ms. Baicy's conclusion that

---

[4] In reverse confusion cases, courts look at whether "the more well-known junior user ignored the senior user's rights," *Imperial Toy Corp., Inc. v. Ty, Inc.,*, No. 97-C-8895, 1998 WL 601875, at *6 (N.D. Ill. 1998) or whether the junior user acted with "deliberate intent to push the senior user out of the market…." *Freedom Card Inc. v. JP Mogran Chase & Co.*, 432 F.3d 463, 479 (3d Cir. 2005).

"any association was unlikely because hardcore pornography was so different from what Amazon does as a company." (Dkt. 130 at 32). A jury may come to a different conclusion when presented with evidence that Amazon sells hundreds of thousands of sex toys, including those directly associated with pornography. If the jury concludes that sex toys are indeed related to pornography, then it may also conclude that Ms. Baicy's statement that Amazon is "so far away from being anything *related to porn...*" lacks credibility. "[I]nformation that could be used to impeach a likely witness…" falls squarely within the scope of relevance for discovery purposes. *See Adelman,* 276 F.R.D. at 689 ("One illustration of a subject encompassed by the scope of discovery, even though not directly linked to a claim or defense, is information that could be used to impeach a likely witness.") (internal quotation omitted). This makes Amazon's sale of sex toys relevant to at least two of the seven predicate factors considered by courts in this Circuit.

       3. *Amazon's Sale of Sex Toys is Relevant to the Ultimate Fact at Issue in This Case Because Adult Movies and Sex Toys are Complementary.*

This issue is also relevant to the ultimate issue of fact in this case. The jury will be asked to determine whether consumers are likely to believe that Amazon is the source of FyreTV®, not Wreal. Courts may consider factors outside of the seven traditional predicate factors depending on the facts of the case. *Custom Mfg. & Eng'g, Inc.,* 508 F.3d at 650. Because this is a reverse confusion case, the focus is on Wreal's target market, and specifically whether those consumers are likely to associate FyreTV® with Amazon. *See Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998). In *Dreamwerks*, a reverse confusion case like this one, the court looked at the wide range of products that the junior user marketed, and determined that "it's easy for customers to suspect…" that the junior user would market the senior user's service. *Id.* Likewise, here, a jury may look at the wide range of products marketed by Amazon, including the approximately 350,000 different kinds of sex toys currently offered for sale, and

11

determine that it will be "easy for consumers to suspect…" that Amazon puts out an adult streaming video service called FyreTV® to complement its line of sex toys. Wreal is certainly entitled to examine the extent of Amazon's sales of a complementary product to its FyreTV® in order to show that consumers are likely to attribute FyreTV® to Amazon.

### C. Any Delay by Wreal in Bringing its Motion Was Reasonable Under the Circumstances.

The Magistrate correctly emphasized the importance of deadlines. But the 30-day deadline found in Local Rule 26.1(i) is a permissive one, and it should not bar relief when there is reasonable cause for a delay. Because the provision is permissive, the Court has discretion to grant the discovery motion, even if it was filed late. *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 1880346, at *6 (S.D. Fla. Apr. 24, 2015) (citing *Kabula v. Southern Homes of Homestead, VII, Inc*., No. 08–20685, 2008 WL 4691983 (S.D. Fla. Oct. 22, 2008). There is reasonable cause here due to the procedural posture of the case when these disputes arose.

Shortly after Wreal filed its motion for preliminary injunction in this case, it sought to expedite discovery in connection with that motion. (Dkt. 32). This Court referred that motion to Magistrate Goodman, who on October 1, 2014, issued an expedited timetable for discovery. (Dkt. 36). In that regard, the parties had to respond to document requests related to the preliminary injunction motion less than three weeks after they were served, and complete all depositions no later than November 14, 2014. (*Id.* at 2). The hearing on Wreal's motion was not set until December 30, 2014, and thus Wreal understood the Magistrate's order to both expedite and limit discovery ahead of the preliminary injunction hearing.

Amazon objected to Wreal's discovery request related to sex toys on October 20, 2014, and later indicated that it would not produce a witness related to sex toys at the 30(b)(6) deposition. The parties met and conferred via email and over the telephone on numerous

12

occasions. Thus the parties were in constant discussions over this issue, and Amazon did not move for a protective order with respect to the depositions of Amazon's personnel in Seattle on November 17 and 18, 2014.[5] Amazon did not produce a witness prepared to testify as to the topics related to sex toys.

Thus, the issue was not ripe until at least November 18, 2014, the last day when Amazon could have designated a witness to testify about Amazon's sex toy sales. And while Wreal could have brought its motion to compel during December, as a practical matter, even if it were successful, any victory would have served little purpose in support of its motion for preliminary injunction. That is because a ruling just days before the hearing would not have provided Wreal with sufficient time to travel back to Seattle and take the 30(b)(6) deposition of Amazon related to sex toys. Moreover, Amazon made it quite clear that its witnesses were unavailable during the back end of December. (Dkt. No. 42 at 2) ("While Amazon of course is a large corporation, the week before Christmas is an 'all hands on deck' week."). Thus, Wreal had reasonable cause for filing made later than 30 days.

And while the rule is specific to 30 days, the Magistrate nevertheless took issue with the fact that Wreal did not pursue the issue after the deadline had expired. However, Wreal raised the issue again 10 days *after* the deadline past, at the preliminary injunction hearing. There, Wreal published the testimony of Mr. Anthony Martinelli, the witness that Amazon designated to testify on the topics related to Amazon's adult content and who offered some testimony related to sex toys. (Ex. 10 at 194:12-203:21.) The Magistrate ordered the parties to brief whether this testimony should be treated as 30(b)(6) testimony. In other words, the Magistrate indicated that it may rule on the issues presented in this motion. (Ex. 10, Tr. at 199:10-200:18.) This drew no

---

[5] The Magistrate granted Wreal leave until November 18, 2014, to complete depositions due to a scheduling conflict with Amazon's personnel.

objection from Amazon. In fact, Amazon specifically asked for the opportunity to brief the issue. (*Id.* at 197:16-198:17.)

Amazon filed its brief on January 14, 2015, and argued that its objections were meritorious. (Dkt. 122). Notably, Amazon did not argue that sex toys were irrelevant on their face. Rather, it argued that "even relevant material is not discoverable if the burden of producing it outweighs any probative value it may have[6] (*Id.* at 4.) And the Magistrate addressed the issue in its Report and Recommendations, which were issued on February 3, 2015, more than two months after the discovery dispute related to the preliminary injunction phase of discovery became ripe. (Dkt. 130). The Magistrate did not make a discovery ruling, however. Rather, he found Mr. Martinelli's testimony "not admissible." Otherwise, it did not address whether Mr. Marintelli's deposition testimony related to sex toys was relevant. Thus, the Court did not address the issue as to whether sex toys were relevant for *discovery* purposes, though it could have done so. Under these circumstances, it was reasonable for Wreal to await the Magistrate's decision.[7] Wreal then propounded additional discovery related to sex toys – the RFAs at issue in this motion - shortly after briefing was complete on Wreal's objections to the Magistrate's R&R. Amazon again objected on relevance grounds, even though the Magistrate had not explicitly issued a discovery ruling. The Magistrate ruled that *this* dispute was timely brought.

Accordingly, it was reasonable for Wreal to wait to bring this discovery dispute until the merits phase of discovery. And Amazon did not object. Indeed, per the Magistrate's procedures,

---

[6] "[T]o even merit consideration, 'an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden.'" *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010). Amazon failed to do this, and thus its objection as to burden does not "merit consideration." *Id.*

[7] Admissible evidence would necessarily be discoverable in this context.

Wreal explained the parties' respective positions in its April 20, 2014, notice of hearing for the April 30, 2014, hearing as follows: "Wreal's position is that the information related to Amazon's sale of sex toys is relevant and reasonably calculated to lead to the discovery of admissible evidence, and Amazon disagrees." Amazon failed to object to this notice or otherwise argue that it failed to fully explain Amazon's position that Wreal had waived its right to compel this important discovery.

Under these circumstances, and the permissive nature of Local Rule 26.1(i), the Court should grant Wreal's motion to compel with respect to all discovery at issue in this motion.

## IV.  CONCLUSION

The issue in this case is whether consumers will associate Wreal's FyreTV® with Amazon. Amazon thinks that is unlikely, because consumers do not associate it with adult content. Yet Amazon sells hundreds of thousands of sex toys, including many endorsed by pornographic film actresses. This evidence is relevant to whether there is a likelihood of confusion in this reverse confusion case. This is not a copyright infringement case, and the issue is not whether Amazon copied a non-existent sex toy section on Wreal's FyreTV® website. The Magistrate failed to consider the relevance of this evidence to the traditional trademark infringement factors, and to the ultimate issue of fact in this case. Accordingly, the Magistrate's decision should be reversed, and the Court should grant Wreal's motion to compel.

## LOCAL RULE 7.1 CERTIFICATION

Counsel for Wreal met and conferred with counsel for Amazon in a good faith effort to resolve the issues raised in this motion, but the parties were unable to do so.

Respectfully submitted,

WNF LAW, P.L.
*Attorneys for WREAL, LLC*
1111 Brickell Avenue Suite 2200
Miami, Florida 33131
Phone: (305) 760-8500 / Fax: (305) 760-8510

By: ___/s/___John Marfoe_____
Carlos Nunez-Vivas  (FL. Bar No.: 128181)
can@wnflaw.com
Daniel Foodman (FL. Bar No.: 337160)
df@wnflaw.com
Dennis J. Wouters (FL. Bar No.: 28692)
djw@wnflaw.com
John G. Marfoe (FL. Bar No.: 101535)
jgm@wnflaw.com

**CERTIFICATE OF SERVICE**

I certify that on May 19, 2015, this document was served by transmission of a Notice of

Filing generated by CM/ECF upon the following:

| | |
|---|---|
| Justin A. Nelson, Esq. | Jamie Z. Isani, Esq. |
| Drew D. Hansen, Esq. | Shannon Shaw, Esq. |
| Patrick C. Bageant, Esq. | *Co-counsel for Defendant* |
| *Co-counsel for Defendant* | Hunton & Williams LLP |
| Susman Godfrey L.L.P. | 1111 Brickell Avenue |
| 1201 Third Avenue | Suite 2500 |
| Suite 3800 | Miami, FL 33131 |
| Seattle, WA 98101 | Tel. 305-810-2500 |
| Tel. 206-516-3880 | Fax 305-810-2460 |
| Fax 206-516-3883 | jisani@hunton.com |
| jnelson@susmangodfrey.com | sshaw@hunton.com |
| dhansen@susmangodfrey.com | |
| pbageant@susmangodfrey.com | |

/s/      John Marfoe_____

16