REDACTED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:14-cv-21385-JAL

| | |
|---|---|
| WREAL, LLC, a Florida Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware corporation, <br><br> Defendant. | |

# AMAZON'S MOTION TO EXCLUDE
# CERTAIN OPINIONS OF THOMAS J. MARONICK

3930870v1/014332

**CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

III. LEGAL STANDARD ..............................................................................................................4

IV. ARGUMENT ...........................................................................................................................4

    A. Dr. Maronick's Testimony Is Unreliable under *Daubert*..........................................4

        1. Dr. Maronick Does Not Test His Theory by Replicating Dr. Sarel's Survey with Dr. Maronick's Suggested Changes. ..........................5

        2. Dr. Maronick's Specific Criticisms Are Contrary to Relevant Authority. ..................................................................................................6

    B. Dr. Maronick's Opinions Will Not Assist the Trier of Fact. ..................................9

        1. Dr. Maronick's Opinions Do Not Assist the Fact-Finder in Evaluating Dr. Sarel's Survey..................................................................10

        2. Dr. Maronick's Criticisms Are Irrelevant Because Dr. Maronick Believes No Survey is Appropriate in This Case. .....................11

    C. WREAL Should be Judicially Estopped from Relying on Dr. Maronick's Critiques of Dr. Sarel Given its Representation that Dr. Maronick Would not Testify at Trial. .................................................................12

V. CONCLUSION.......................................................................................................................14

VI. REQUEST FOR HEARING...................................................................................................14

# AUTHORITIES

**Cases**

*Allison v. McGhan Med. Corp.*,
　184 F.3d 1300 (11th Cir. 1999) ................................................................................................ 4

*Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*,
　710 F.2d 1528, 1536 (11th Cir. 1983) .................................................................................... 12

*Burnes v. Pemco Aeroplex, Inc.*,
　291 F.3d 1282 (11th Cir. 2002) .............................................................................................. 12

*City of Tuscaloosa v. Harcros Chems., Inc.*,
　158 F.3d 548 (11th Cir. 1998) .................................................................................................. 4

*Daubert v. Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993) .......................................................................................................... 1, 4, 5

*Denimafia Inc. v. New Balance Athletic Shoe, Inc.*,
　2014 U.S. Dist. LEXIS 27541 (S.D.N.Y. Mar. 3, 2014) ......................................................... 7

*Guinn v. AstraZeneca Pharm. LP*,
　602 F.3d 1245 (11th Cir. 2010) ................................................................................................ 4

*Integrity Inc. v. Integrity Online Int'l Holdings*,
　No. 1:00-cv-1291-WCO, ECF No. 152 at 1-2 (N.D. Ga. Oct. 22, 2002) ................. 2, 6, 10

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*,
　2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ........................................................................... 7

*McDowell v. Brown*,
　392 F.3d 1283 (11th Cir. 2004) ................................................................................................ 5

*New Hampshire v. Maine*,
　532 U.S. 742 (2001) ........................................................................................................... 12, 13

*Pods Enters., Inc. v. U-Haul Int'l, Inc.*,
　2014 WL 2625297 (M.D. Fla. Jun. 12, 2014) ....................................................................... 10

*R & R Int'l, Inc. v. Manzen, LLC*,
　2010 WL 3605234 (S.D. Fla. Sept. 12, 2010) ......................................................................... 5

*Sara Lee Corp. v. Goldstone Hosiery Co.*,
　2001 TTAB LEXIS 204 (TTAB Mar. 7, 2001) ........................................................................ 5

*Whelan v. Royal Caribbean Cruises Ltd.*,
 2013 WL 5595938, (S.D. Fla. Aug. 12, 2013) .................................................................. 5

*Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc.*,
 2006 U.S. Dist. LEXIS 1378 (W.D. Mich. Jan. 10, 2006) ............................................ 6, 9

**Other Authorities**

Jacob Jacoby, "Are Closed-Ended Questions Leading Questions,"
 *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
 (Shari Seidman Diamond & Jerre B. Swann, eds., 2012) ................................................... 8

William G. Barber, "The Universe,"
 *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
 (Shari Seidman Diamond & Jerre B. Swann, eds., 2012) ................................................... 9

**Rules**

Fed. R. Evid. 702 ............................................................................................................. 1, 4

**Treatises**

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
 § 32:174 (2014) .............................................................................................................. 1, 6

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
 § 32:178 (2014) ................................................................................................................. 6

3930870v1/014332

*-iii-*

I.     INTRODUCTION

Both Amazon.com, Inc. ("Amazon") and plaintiff WREAL, LLC ("WREAL") conducted consumer surveys in this case. Both parties retained qualified survey experts. Both those experts used the commonly accepted *Eveready* survey method.[1] And both sets of surveys demonstrated what has been clear from the outset of this case: consumer confusion between Amazon's mainstream-focused Amazon Fire TV and WREAL's hardcore-pornography-streaming FyreTV ranges from "extremely low" (according to WREAL's expert Dr. Thomas Maronick) to "statistically nonexistent" (according to Amazon's expert Dr. Dan Sarel).

Amazon does not move to exclude Dr. Maronick's April 2014 surveys showing "extremely low" confusion. Nor does Amazon move to exclude Dr. Maronick's remarkable explanation for that finding: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, an assertion which – if true – would be fatal to WREAL's reverse confusion claim. *See* Maronick Dep. 13:9-10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ However, Amazon does move to exclude Dr. Maronick's various critiques of Dr. Sarel's survey, which are improper for three reasons. First, they are unreliable under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Dr. Maronick's criticisms are untested: he has made no effort re-run Dr. Sarel's survey after adjusting for the criticisms to see if the results differ. Also, many of Dr. Maronick's specific criticisms are contrary to the authority in his field, and Dr. Maronick cites no authority to support his novel views.

Second, Dr. Maronick's opinions are irrelevant. Dr. Maronick's various criticisms go to the weight to be given to Dr. Sarel's testimony and may be brought out on cross-examination and

---

[1] An *Eveready* survey shows respondents an example of the senior user's mark as used in commerce (for a reverse confusion case) and then asks respondents a series of open-ended questions designed to test whether respondents believe the junior user is the source, affiliate, or sponsor of the senior user's mark. *See generally* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:174 (2014) (hereinafter "McCarthy on Trademarks") (*Eveready* survey is a "standard and widely accepted format to prove the likelihood or non-likelihood of confusion.").

weighed by the fact-finder without the need for Dr. Maronick's testimony. *See Integrity Inc. v. Integrity Online Int'l Holdings*, No. 1:00-cv-1291-WCO, at 1-2 (N.D. Ga. Oct. 22, 2002) (attached as Hansen Dec. Ex. 1) (excluding rebuttal survey expert who did not conduct his own survey). Dr. Maronick's opinions criticizing Dr. Sarel's survey are also irrelevant because Dr. Maronick has opined that <u>no</u> survey would show confusion as, in Dr. Maronick's view, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Dr. Maronick's individual critiques of Dr. Sarel's survey questions, universe, and so on have no relevance, as Dr. Maronick apparently believes no possible survey design would show actionable reverse confusion.

Third, the Court should exclude Dr. Maronick's opinions critiquing Dr. Sarel on grounds of judicial estoppel. WREAL successfully prevented Amazon from seeing the documents associated with Dr. Maronick's April 2014 surveys by representing to Magistrate Judge Goodman that Dr. Maronick had not been designated as a testifying expert at trial. WREAL then did not designate Dr. Maronick at the expert disclosure deadline, only disclosing him as a purported "rebuttal" expert on the last day of expert discovery, and producing the documents related to his surveys some weeks after the close of expert discovery. This gamesmanship prevented Amazon's expert, Dr. Sarel, from reviewing and opining on the documents from Dr. Maronick's prior surveys – which would have demonstrated the absurdity of many of Dr. Maronick's critiques, because Dr. Maronick did many of the same things he now criticizes Dr. Sarel for doing. Judicial estoppel exists to prevent such gamesmanship.

Dr. Maronick's criticisms of Dr. Sarel are methodologically improper and irrelevant. This should not be surprising: many other courts have previously excluded or given little weight to Dr. Maronick's testimony. *See* ECF No. 130 at 39 n.18 (collecting cases). Amazon respectfully asks that this Court do the same.

II.   BACKGROUND

The Amazon Fire TV launched April 2, 2014. Around the same time, WREAL retained Dr. Maronick to conduct consumer surveys measuring possible confusion between WREAL's FyreTV mark and the Amazon Fire TV. Hansen Dec. Ex. 2 at 34:18; 36:3-12. Dr. Maronick's

-3-

surveys found that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 36:5-9.

Presumably because Dr. Maronick's surveys showed confusion among consumers was "extremely low," WREAL did not disclose Dr. Maronick's survey results with Dr. Maronick's declaration submitted with WREAL's reply brief in support of its motion for a preliminary injunction. Nor did Dr. Maronick himself disclose the results on direct examination at the preliminary injunction hearing. On cross-examination, however, Dr. Maronick was forced to admit he had conducted a consumer survey that showed "very low" confusion. Hansen Dec. Ex. 3 at 378:9-22.

Dr. Maronick also testified at the preliminary injunction hearing about various criticisms of Dr. Sarel's survey. Magistrate Judge Goodman appropriately "g[ave] no weight to Dr. Maronick's various criticisms," finding Dr. Maronick's previously undisclosed survey results "actually tend to support Dr. Sarel's finding." ECF No. 130 at 39.

After the hearing, Amazon subpoenaed all documents related to Dr. Maronick's prior surveys. WREAL successfully moved to quash this subpoena, arguing that Dr. Maronick had not been disclosed "as an expert witness that may testify at trial." ECF No. 139 at 1. WREAL did not disclose Dr. Maronick as a testifying expert on its expert disclosure deadline of June 26, 2015. On Amazon's expert disclosure deadline of August 11, 2015, Amazon disclosed Dr. Sarel, whose August 2015 declaration reiterates his survey findings and responds to the unsupported criticisms that Dr. Maronick offered at the preliminary injunction hearing. Dr. Sarel did not, however, have an opportunity to examine Dr. Maronick's documents from his April 2014 surveys, as WREAL had successfully shielded these documents from discovery.

On August 20, 2015, WREAL filed a motion requesting the opportunity to serve a rebuttal expert report from a "financial expert." ECF No. 174. The motion did not indicate WREAL would be serving a rebuttal report from any survey expert, much less a survey expert whose studies WREAL had successfully withheld expressly because that expert was not

designated to testify at trial. Then, on the last day of expert discovery, WREAL disclosed Dr. Maronick as a purported "rebuttal witness," offering many of the same criticisms of Dr. Sarel's December 2014 survey that Dr. Maronick offered at the preliminary injunction hearing, plus – for the first time – a theory that no survey could show consumer confusion because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Hansen Dec. Ex. 4 at ¶¶ 67, 74. Several weeks later – long after the close of expert discovery – WREAL finally produced documents related to Dr. Maronick's April 2014 surveys, demonstrating beyond doubt that those surveys indeed showed extremely low confusion levels.

### III. LEGAL STANDARD

WREAL bears the burden of showing that Dr. Maronick's testimony is admissible. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10). Federal Rule of Evidence 702 governs the admissibility standard, and the Eleventh Circuit "applies a three-part inquiry to determine whether an expert has met the requirements of Rule 702." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1252 (11th Cir. 2010). Courts must consider whether: "(1) the expert is sufficiently qualified to testify on the issues he intends to address; (2) the expert's methodology is 'sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Id*. (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).

### IV. ARGUMENT

**A. Dr. Maronick's Testimony Is Unreliable under *Daubert*.**

Dr. Maronick's purported expert testimony is unreliable for two reasons. First, Dr. Maronick criticizes Dr. Sarel's survey without testing his criticisms by conducting a survey of his own to show that changing Dr. Sarel's survey would affect the results. This is, by definition, an improper untested methodology under *Daubert*. Second, many of Dr. Maronick's specific criticisms are contrary to the relevant authority in the survey field (and in some cases Dr.

Maronick's own previous practice). Dr. Maronick cites no authority to defend why he departed from the authoritative guidance in his field, rendering his novel proposals unreliable.

> 1. Dr. Maronick Does Not Test His Theory by Replicating Dr. Sarel's Survey with Dr. Maronick's Suggested Changes.

Dr. Maronick's critiques of Dr. Sarel fail one of *Daubert*'s fundamental requirements because they have not been tested: Dr. Maronick has made no attempt to show that re-running Dr. Sarel's survey with the supposed "errors" corrected would make any difference in the results. As the Supreme Court stated in *Daubert*, "[o]rdinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. As the Court further explained, "[s]cientific methodology today is based on generating hypotheses and testing them to see if they can be falsified." *Id.* (citation omitted). Accordingly, the Eleventh Circuit and other courts in this district have rejected expert opinions when experts did not test their theories. *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (upholding exclusion of plaintiff's expert who had "not tested his own theory"); *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5595938, at *5 (S.D. Fla. Aug. 12, 2013) (striking expert that did not test his own hypotheses); *R & R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234, at *12 (S.D. Fla. Sept. 12, 2010) (rejecting expert's "sampling" method because it "does not constitute scientific testing that can be duplicated by another researcher").

This principle holds true in survey research as well: "As the ABA's treatise on survey evidence notes, courts do and should ignore or give little weight to survey criticisms absent a showing that using the approach the critiquing expert believes to be correct would lead to a different result." ECF No. 130 at 38-39.[2] Courts reject such criticisms because "it is notoriously easy for one survey expert to appear to tear apart the methodology of a survey taken by another." *Sara Lee Corp. v. Goldstone Hosiery Co.*, 2001 TTAB LEXIS 204, at *26 (TTAB Mar. 7, 2001)

---

[2] ███████████████ Hansen Dec. Ex. 2 at 76:22-77:8.

(citing McCarthy on Trademarks § 32:178) . For example, in *Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 1378, at \*11-12 (W.D. Mich. Jan. 10, 2006), the defendant presented consumer surveys showing a lack of confusion. The plaintiffs presented no contrary survey, relying instead on a rebuttal expert to "review and offer an opinion" regarding the defendant's survey. *Id.* at \*11. The court roundly criticized this approach: "[plaintiffs' expert] did not conduct any survey demonstrating that her suggested modifications to [defendant's expert's] survey would produce different or more accurate results." *Id.* at \*18-19; *see also id.* at \*11-12, \*21, \*24. The court recognized that the plaintiffs' expert's opinion was unpersuasive because "the absence of competing survey evidence from [plaintiffs' expert] showing divergent survey results significantly undermines the efficacy of plaintiffs' arguments that defendants' evidence is so unreliable that it must be excluded." *Id.* at \*11-12. *See also Integrity*, No. 1:00-cv-1291-WCO, at 1-2 (striking expert who did not offer his own survey) (attached as Hansen Dec. Ex. 1). This is exactly the situation here: without any survey from Dr. Maronick demonstrating that changing Dr. Sarel's survey in the way Dr. Maronick proposes would make any difference, the Court is left with an untested opinion that is unreliable under *Daubert*.

        2.        Dr. Maronick's Specific Criticisms Are Contrary to Relevant Authority.

One of the centerpieces of Dr. Maronick's September 2015 report was his opinion that the *Eveready* survey design – the design used by Dr. Sarel – was inappropriate in this case. However, the leading trademark treatise states that the *Eveready* method is "standard and widely accepted":

> A <u>now-standard survey format</u> used to prove likely confusion in cases where plaintiff makes some products which defendant does not is the *Eveready* format. This has become <u>a standard and widely accepted format</u> to prove the likelihood confusion or non-likelihood of confusion.

McCarthy on Trademarks § 32:174 (emphasis added).

Dr. Maronick confirmed that the *Eveready* format ■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■ Hansen Dec. Ex. 2 at 9:1-2. More specifically, courts have confirmed the *Eveready* format is especially useful in reverse-confusion cases such as this one. *See Denimafia*

*Inc. v. New Balance Athletic Shoe, Inc.*, 2014 U.S. Dist. LEXIS 27541, at *97 (S.D.N.Y. Mar. 3, 2014) ("The Court is satisfied that [defendant's expert] had good reason for employing the *Eveready* format for reverse confusion analysis."); *Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, 2007 WL 2258688, at *8 (S.D.N.Y. Aug. 6, 2007) (striking survey expert who did not conduct *Eveready* survey in reverse-confusion case).

Remarkably, Dr. Maronick has admitted that – contrary to the opinions in his report – the *Eveready* format is the best format to use here. During the preliminary injunction hearing, Dr. Maronick conceded that in a likelihood of confusion case such as this one, "the correct format is what's called the *Eveready* format." Hansen Dec. Ex. 3 at 373:15; *see also id*. Ex. 2 at 49:19-20 (confirming his belief at the preliminary injunction hearing that "[a]t that time, yes, [*Eveready*] would have been appropriate."). Not only did Dr. Maronick agree that Dr. Sarel's use of an *Eveready* study was appropriate at that time, but Maronick himself utilized the *Eveready* format for his April 2014 surveys in this case. *See id*. Ex. 2 at 159:20-23 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Maronick also confirmed that, in his experience conducting surveys, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. at 11:10-11.

Against this weight of authority from the field, relevant case law, and Dr. Maronick's own experience and prior endorsement of the *Eveready* format, Dr. Maronick opines for the first time in his rebuttal report that "Dr. Sarel's use of an *Eveready* survey was inappropriate." Hansen Decl. Ex. 4 at ¶ 10. Dr. Maronick's report states that "[a]n *Eveready* survey can only be used to test confusion ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *id.* at ¶ 12, and, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at ¶ 15. That is, Dr. Maronick's sole criticism of the *Eveready* format is that it allegedly understates confusion because, in Dr. Maronick's view, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ *Id*. at ¶¶ 10-26.

However, this criticism has nothing to do with the <u>format</u> of Dr. Sarel's survey; rather, it is an argument that <u>any</u> survey is impossible. Dr. Maronick confirmed at his deposition that his complaints about Dr. Sarel's survey are not directed to use of the *Eveready* format but rather the use of <u>any</u> survey to measure for confusion in this case.

[REDACTED]

Hansen Dec. Ex. 2 at 160:11-17. It is thus apparent that Dr. Maronick does not believe Dr. Sarel's survey is inappropriate because of its *Eveready* format. Instead, Dr. Maronick appears to believe that the *Eveready* format is likely the best possible format for use in this case. This accords with the relevant authority, and Dr. Maronick's belated attempt to argue to the contrary should be excluded as unreliable.

Many of Dr. Maronick's other specific criticisms are similarly contrary to the relevant authority, and Dr. Maronick cites no contrary authority for his departure from professional standards. For example:

- Dr. Maronick asserted without citation that an open-ended question in Dr. Sarel's survey – "Who do you think puts out or offers the adult video on demand service or product you just saw on these web pages?" – was a leading question. Hansen Dec. Ex. 4 at ¶¶ 54-60. And yet, as the ABA's survey evidence treatise properly notes, an open-ended question that "directs attention only to the topic of the question" (here, the service or product at issue) is not a leading question.[3]

- Dr. Maronick opined that Dr. Sarel should have counted certain respondents as confused who did not mention Amazon or give any indication they were thinking about Amazon – and yet Dr. Maronick was forced to concede on cross-examination at the preliminary injunction hearing that he was aware of no academic literature that supported such a methodology. Hansen Decl. Ex. 3 at 386:2-13.

---

[3] Jacob Jacoby, "Are Closed-Ended Questions Leading Questions," 262, *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design* (Shari Seidman Diamond & Jerre B. Swann, eds., 2012).

3930870v1/014332

-8-

- Dr. Maronick criticized Dr. Sarel for defining his survey universe as including persons who visited or plan to visit adult websites that require payment for full access to adult content (instead of persons who actually paid for adult content) (Hansen Decl. Ex. 4 at ¶¶ 27-40) and for not attempting to match the demographics of his survey sample to an (old) informal survey at WREAL of its customers (*id.* ¶ 41). However, as the ABA's survey treatise notes, "in cases alleging reverse confusion . . . the relevant universe is the senior user's potential customers."[4] Dr. Sarel noted that WREAL itself advertised on websites that showed adult content for free but required payment for full access to adult content (Hansen Decl. Ex. 5 at ¶ 29); Dr. Maronick cites no authority for the proposition that it is inappropriate to select a survey universe that matches the plaintiff's actual target audience for advertising.[5]

Dr. Maronick's unsupported *ipse dixit* opinions are not reliable under *Daubert*. *See Whirlpool*, 2006 U.S. Dist. LEXIS 1378, at *10 (criticizing plaintiffs' expert because the "opinions in her declarations are generally not supported by citation to authorities relied on by survey experts."). Dr. Maronick should not be permitted to offer novel methodological criticisms, unsupported by any authority, when they are directly contrary to the authority in his field.

**B.    Dr. Maronick's Opinions Will Not Assist the Trier of Fact.**

Dr. Maronick's proposed testimony fails the "helpfulness" prong of the Eleventh Circuit's inquiry under Rule 702 for two reasons. First, Dr. Maronick's criticisms of Dr. Sarel's survey may be brought out on cross-examination and weighed by the fact-finder without the need for Dr. Maronick's testimony. Second, Dr. Maronick's opinion that no survey could be used in this case renders his specific complaints about Dr. Sarel's survey irrelevant.

---

[4] William G. Barber, "The Universe," 31, *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design* (Shari Seidman Diamond & Jerre B. Swann, eds., 2012).

[5] In fact, when Dr. Maronick conducted surveys for this case, he did exactly what he criticizes Dr. Sarel for doing: he asked only whether persons had streamed adult content rather than limiting his audience more narrowly to persons who paid for adult content. Hansen Decl. Ex. 2 at 134:9-15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    1.  Dr. Maronick's Opinions Do Not Assist the Fact-Finder in Evaluating Dr. Sarel's Survey.

In *Integrity Inc.*, No. 1:00-cv-1291-WCO, at 1-2 (Hansen Decl. Ex. 1), the court considered a motion to exclude an expert whose testimony was to be used "for the purpose of criticizing the consumer confusion survey conducted by [the opposing party's] expert witness," even though the expert had "not conducted a survey on this issue himself." The court recognized that it is uncommon to see a rebuttal expert present no survey of his own and instead rely on criticism of an opposing expert, "because such testimony is <u>not necessary</u> for a jury to be able to determine how much weight to assign to the survey evidence." *Id.* at 4 (emphasis added). Instead, the court emphasized, any supposed flaws in the survey are "capable of being brought out through cross-examination." *Id.* at 5.

This Court should exclude Dr. Maronick's testimony on the same grounds. Dr. Maronick's various criticisms of supposed technical deficiencies in Dr. Sarel's survey go to the weight the fact-finder should accord to Dr. Sarel's survey. *See, e.g.*, *Pods Enters., Inc. v. U-Haul Int'l, Inc.*, 2014 WL 2625297, at *3 (M.D. Fla. Jun. 12, 2014) (collecting cases holding that "technical deficiencies go to the weight of [expert's] opinions, not their admissibility."). Such criticisms may be the subject of cross-examination; it is not necessary or helpful to have an expert testify about them. *See Integrity*, No. 1:00-cv-1291-WCO, at 3-5. Nor would Dr. Maronick's testimony be admissible if WREAL were to contend (wrongly) that Dr. Maronick's critiques of Dr. Sarel go not to the weight to be accorded to Dr. Sarel's testimony but to the foundational question of whether Dr. Sarel's survey should be admitted at all. If that were in fact correct, then Dr. Maronick's testimony would be inadmissible for a different reason, also noted by the court in *Integrity*: WREAL would be seeking to admit testimony that goes to a purely legal determination of threshold admissibility that is the province of the Court, not the fact-finder, to determine. *Id.* at 5-6. Either way, Dr. Maronick's criticisms are irrelevant and unhelpful to the fact-finder.

      2.      **Dr. Maronick's Criticisms Are Irrelevant Because Dr. Maronick Believes No Survey is Appropriate in This Case.**

Dr. Maronick offers a number of criticisms of Dr. Sarel's survey ranging from charges of improper survey validation to quibbles about the form of screening and survey questions. As explained above, each of these criticisms is independently subject to exclusion as unreliable because Dr. Maronick did not conduct his own rebuttal survey to test his hypotheses and because many of his specific criticisms are directly contrary to relevant authority. But the Court should also exclude Dr. Maronick's criticisms for another reason: they are irrelevant in light of Dr. Maronick's ultimate conclusion that no survey would show a likelihood of confusion in this case.

The final section of Dr. Maronick's report falls under a header that asks, "What survey, if any, can be used in this case to measure the likelihood of confusion?" Hansen Decl. Ex. 4 at ¶ 67. After walking through numerous possible survey methods, including the now-standard *Eveready* method and other possible methods, Dr. Maronick concludes <u>no</u> survey would show a likelihood of confusion because ███████████████████████████████. *Id*. at ¶ 74. He repeated this conclusion throughout his deposition. *See* Hansen Decl. Ex. 2 at 13:9-10 ███ ███████████████████████████ 53:17-20 ████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████.

As explained in more detail in Amazon's motion for summary judgment, this remarkable argument not only contradicts WREAL's allegations about ███████████████████ ████████████████████████ but – if taken seriously – is fatal to WREAL's case: if ████████████████████████████████████████ and the case must be dismissed. For *Daubert* purposes, this concession also makes Dr. Maronick's criticisms irrelevant. If <u>no</u> survey would show confusion, then it matters little whether Dr. Sarel asked his questions using certain words rather than others, or defined his universe in one way versus another, or coded his responses in one way instead of another, and so on. Dr. Maronick's criticisms about individual "flaws" in Dr. Sarel's survey cannot assist the fact-finder because –

by Dr. Maronick's own admission – Dr. Sarel's survey would not be any more or less reliable with or without those "flaws." The Court should thus prohibit Dr. Maronick from offering his criticisms of Dr. Sarel. Instead, Dr. Maronick should be limited to his (case-dispositive) concession that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 13:9-10.

### C. WREAL Should be Judicially Estopped from Relying on Dr. Maronick's Critiques of Dr. Sarel Given its Representation that Dr. Maronick Would not Testify at Trial.

As summarized above and explained in Amazon's Appeal and Objection to the Non-Dispositive Ruling of Magistrate Judge Goodman, ECF No. 201, the plain language of the Court's scheduling order required WREAL to disclose all its testifying experts in June 2015 and said that "[o]nly those experts shall be permitted to testify." ECF No. 49. WREAL violated the order's plain language by belatedly disclosing Dr. Maronick on the final day of expert discovery. WREAL should be judicially estopped from relying on Dr. Maronick's critiques of Dr. Sarel because WREAL represented – up until the last day of expert discovery – that Dr. Maronick was <u>not</u> a trial witness, depriving Amazon of any opportunity to have its own expert, Dr. Sarel, review Dr. Maronick's April 2014 surveys showing no confusion before Dr. Sarel submitted his expert report.

Judicial estoppel is an equitable doctrine that "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citations omitted). "Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice <u>by inconsistent pleadings</u>." *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528 (11th Cir. 1983) (emphasis added) (internal citation omitted).

Courts in the Eleventh Circuit have traditionally considered two factors when applying judicial estoppel: (1) whether the inconsistent positions were made under oath in a prior proceeding; and (2) whether such inconsistences were calculated "to make a mockery of the judicial system." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).

Following the Supreme Court's decision in *New Hampshire*, the Eleventh Circuit has recognized three similar factors that may be considered, including "(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position . . . and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." *Id.* (citing *New Hampshire*, 532 U.S. at 750-51). WREAL plainly meets these factors in this case.

First, in order to avoid producing Dr. Maronick's April 2014 survey results in response to Amazon's subpoena, WREAL argued that "[t]he Court should quash the subpoena <u>because Dr. Maronick has not been designated as a testifying witness</u>." ECF No. 139 at 1 (emphasis added). WREAL devoted an entire section of its brief to this argument. *Id.* at 2-3. In fact, WREAL emphasized it was not required to disclose Dr. Maronick until the disclosure deadline in the scheduling order, which WREAL later ignored. *Id.* at 1.

Second, WREAL succeeded in persuading Magistrate Judge Goodman to accept this position. Based on WREAL's representation, Judge Goodman shielded Dr. Maronick's survey from production because "Wreal <u>has not</u> designated Dr. Maronick as a testifying expert for use <u>at trial</u> in this case." ECF No. 141 at 4 (emphasis in original). Judge Goodman recognized that the disclosure of Dr. Maronick or other WREAL experts "are not due until June 15, 2015," a deadline WREAL ultimately ignored. *Id.*

Third, WREAL disclosed Dr. Maronick as a testifying expert for trial not on WREAL's actual expert disclosure deadline but on the last day of expert discovery as a purported "rebuttal" witness. WREAL then produced the documents related to Dr. Maronick's April 2014 surveys some weeks after the close of expert discovery. WREAL's belated disclosure of Dr. Maronick – after WREAL managed to shield Dr. Maronick's survey documents from discovery by not designating him as an expert on its disclosure deadline – has prejudiced Amazon. Amazon did not receive Dr. Maronick's documents before Amazon's expert disclosures were due, preventing Amazon's expert Dr. Sarel from addressing the documents in his expert report. Dr. Sarel could have made use of these documents in any number of ways: for example, Dr. Maronick's own

screening questions in his surveys asked about streaming adult content, which is exactly the type of question Dr. Maronick criticized Dr. Sarel for asking. *See* Maronick Dep. 134:9-15. Even a supplement to Dr. Sarel's report here would not cure the prejudice because Amazon was unable to decide at the time how to make use of the information and how (if at all) to adjust its litigation strategy in response.

WREAL's conduct is of the exact type that the doctrine of judicial estoppel is meant to curtail: inconsistent representations – relied upon by the Court – that have prejudiced Amazon. WREAL represented to Magistrate Judge Goodman that it had not designated Dr. Maronick as a trial witness, refused to disclose him during the required time to disclose experts, and instead disclosed him as a rebuttal expert on the last day of expert discovery with "new" opinions on the same surveys from Dr. Sarel that Dr. Maronick had in his possession since late 2014 – and, on top of all this, successfully shielded Dr. Maronick's April 2014 survey documents from any expert review until long after expert discovery was closed. This is exactly the type of gamesmanship that the doctrine of judicial estoppel prohibits.

## V.   CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the expert testimony of Dr. Maronick critiquing Dr. Sarel's survey be excluded and Dr. Maronick's testimony be limited to his April 2014 surveys showing "extremely low" confusion and his explanation that surveys show no confusion because ████████████████████.

## VI.   REQUEST FOR HEARING

Amazon respectfully requests oral argument, without an evidentiary hearing, on this motion, not to exceed one hour. The questions related to the admissibility of Dr. Maronick's testimony relate to the academic literature and judicial decisions on trademark surveys, an area that may benefit from additional explanation at oral argument.

Dated: October 13, 2015    Respectfully submitted,

By:   */s/ Jamie Zysk Isani*

    Jamie Zysk Isani (Florida Bar No. 728861)
    HUNTON & WILLIAMS LLP
    1111 Brickell Avenue, Suite 2500
    Miami, Florida 33131
    Telephone: (305) 810-2500
    Facsimile: (305) 810-1675
    jisani@hunton.com

    Justin A. Nelson *(pro hac vice)*
    SUSMAN GODFREY L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Fax: (713) 654-6666
    jnelson@susmangodfrey.com

    Drew D. Hansen *(pro hac vice)*
    Edgar Sargent *(pro hac vice)*
    Patrick C. Bageant *(pro hac vice)*
    SUSMAN GODFREY L.L.P.
    1201 Third Ave, Suite 3800
    Seattle, Washington 98101
    Telephone: (206) 516-3880
    Facsimile: (206) 516-3883
    dhansen@susmangodfrey.com
    esargent@susmangodfrey.com
    pbageant@susmangodfrey.com

    *Counsel for Defendant Amazon.com*

## CERTIFICATE OF SERVICE

**I CERTIFY** that on October 13, 2015, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.



                                                /s/Jamie Z. Isani
                                                Jamie Zysk Isani

## SERVICE LIST

Carlos Nunez-Vivas
can@wnflaw.com
Daniel Foodman
df@wnflaw.com
Dennis J. Wouters
djw@wnflaw.com
John G. Marfoe
jgm@wnflaw.com
WNF Law, P.L. - Waserstein Nunez & Foodman
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Tel.: (305) 760-8500
Fax: (305) 760-8510

*Attorneys for Plaintiff WREAL, LLC*