UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-CV-21385-LENARD/GOODMAN

WREAL, LLC, a Florida Limited
Liability Company,

      Plaintiff,

vs.

AMAZON.COM, INC., a Delaware
Corporation,

      Defendant.

_____/

**WREAL'S RESPONSE IN OPPOSITION TO
<u>AMAZON'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………… i

TABLE OF AUTHORITIES ………………………………………………………... ii

I.   INTRODUCTION ………………………………………………………………… 1

II.  ARGUMENT ……………………………………………………………………… 2

   A. LEGAL STANDARD ………………………………………………………… 2

      1.  Summary Judgment Standard.    ……………………………………………… 2

      2.  Trademark Infringement Standard …………………………………………… 3

   B.  THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO CONCLUDE THAT
       CONFUSION IS LIKELY. ……………………………………………………… 5

      1.  FyreTV is a Strong Mark. …………………………………………….......... 5

      2.  The Marks are Sufficiently Similar for a Jury to Determine
          that Confusion Exists. ……………………………………………………… 7

      3.  Wreal's FyreTV and Amazon's Fire TV are Both Used to Stream Video,
          and Their Respective Content is Complementary………………………….…... 9

      4.  Confusion is Likely Because the Parties Share Customers. ……………………… 13

      5.  There is Sufficient Overlap in the Parties' Advertising for a Jury to Find That
          Confusion is Likely…………………………………………………………... 15

      6.  Amazon Ignored Wreal's Senior Rights to the Mark and Tried to
          Push Wreal Out of the Market………………………………………….…… 16

      7.  There is Evidence of Actual Confusion……………………………………… 17

          a.  Though difficult to marshal, Wreal has put forth
              evidence of actual confusion…………………………………………… 17

          b.  Amazon cannot rely on a fundamentally flawed consumer survey
              from its expert Dr. Sarel to disprove actual confusion………………… 19

          c.  Amazon cannot rely on irrelevant and inadmissible pilot studies
              conducted by Dr. Maronick to disprove actual confusion……………….….. 19

   C.  THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO AWARD WREAL'S
       DAMAGES OR AMAZON'S PROFITS…………………………………………... 20

III.  THE COURT SHOULD DENY AMAZON'S MOTION FOR SUMMARY
      JUDGMENT………………………………………………………………….…... 20

## **TABLE OF AUTHORITIES**

### Cases

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000) ......... 6, 7, 17

*Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320 (11th Cir. 1993) ................................... 2

*Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895 (11th Cir. 2000) ................ 4

*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980) .................................... 10, 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................... 2

*Application of W. Point-Pepperell, Inc.*, 468 F.2d 200 (C.C.P.A. 1972) ……………….….…8

*Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229 (11th Cir. 2008) ............................................ 20

*Attrezzi v. Maytag Corp.*, 436 F.3d 32 (1ˢᵗ Cir. 2006) ...................................................... 7

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler Jeep, Dodge,* LLC,
605 F.3d 931 (11th Cir. 2010) .................................................................................... 17

*Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*,
139 F.3d 1396 (11th Cir. 1998) .................................................................................. 2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 2

*Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002). ...................................................... 6

*Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir. 1984) ................................................ 4

*Custom Mfg. and Engineering, Imc.v. Midway Services, Inc.*,
508 F.3d 641 (11th Cir. 2007) .................................................................................... 4

*Dreamwerks Production Group, Inc. v. SKG Studio,*
142 F.3d 1127 (9th Cir. 1998) ............................................................................. passim

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) .................................. 10

*E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*,
756 F.2d 1525 (11th Cir. 1985) ............................................................................. 11, 13

*Freedom Card Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005) ............................. 16

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir.1999) ............... passim

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*,
420 F.3d 1317 (11th Cir. 2005) .................................................................................. 2

*Imperial Toy Corp. v. Ty, Inc.*, No. 97-C-8895, No. 97 C 8895,
1998 WL 601875 (N.D. Ill. 1998) ............................................................................... 16

*Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833 (11th Cir. 1983) .............................. 4

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188 (11th Cir. 2001) ................. 9, 10, 12

*Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07–80185,
2008 WL 926777 (S.D. Fla. April 4, 2008) ................................................................ 4

*Rexall Sundown Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 25 (E.D.N.Y. 2009) ............................. 19

*Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. 1985) ...................................... 9

*Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*, No. 13–61466–CIV,
2013 WL 3873231 (S.D. Fla. July 25, 2013) ............................................................... 18

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160 (11th Cir.1982)...........18

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ........................... 6

*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964 (10th Cir. 2002)…………………………9

*Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976)................................. 12

*Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*,
8:13–CV–461–T–33EAJ, 2013 WL 6154166 (M.D. Fla. Sept. 4, 2013) ...................................... 6

*Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010) ...................................................... 5

*TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220 (S.D. Fla. 2012) ............................ 17

*Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MCX,
2000 WL 709149 (C.D. Cal. May 24, 2000) ............................................................... 17

*TV Land, L.P. v. Viacom Intern.*, 908 F. Supp. 543 (N.D. Ill. 1995)........................................... 17

*Welding Services, Inc. v. Forman,* 509 F.3d 1351 (11th Cir. 2007) ................................................ 4

**Statutes**

15 U.S.C. § 1114(1) ....................................................................................................... 3

**Treatises**

4 McCarthy, supra, § 24:52, at 24–74–75.................................................................... 15

## I. INTRODUCTION

Wreal, LLC ("Wreal") has used the federally registered marks FyreTV® and FyreTV.com® to market an online adults-only streaming video service since 2007. In April 2014, Amazon.com, Inc. ("Amazon") released Fire TV, a device that offers online streaming video services (including adults-only content), and since then has saturated the market with advertising.

On Oct. 13, 2015, Amazon moved for summary judgment. Amazon relies on (i) a year-old flawed, irrelevant[1] survey run by its expert, Dr. Dan Sarel, (ii) inadmissible and unreliable **pilot** studies conducted by Wreal's consulting and rebuttal expert, Dr. Thomas Maronick, and (iii) findings of fact made by the Court at the preliminary injunction phase (which applies a radically different standard to the one applied at summary judgment – indeed, this Court was well aware of the standard it applied for the preliminary injunction when it rightly clarified that "[t]his is not to

---

[1] Among the many reasons that Dr. Sarel's survey is irrelevant is that he inappropriately chose a year ago an *Eveready* design before there was sufficient ▮▮▮▮▮▮▮▮▮▮ of Amazon's Fire TV. (See ECF No. 211). An *Eveready* survey can only test for likelihood of confusion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Amazon must not have actually saturated the market with advertising. ECF No. 205 at 2. This argument is based on the mistaken assumption that saturation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such that an *Eveready* survey can reliably measure confusion means that "confusion is impossible and this case must be dismissed." This, too, is nonsense. Clearly, Amazon is saturating the market with advertising. (Amazon's SOF ¶ 38). And as it has done so, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Statement of Facts in Dispute ("SFD") ¶ 64. Thus, confusion is likely, and the mere fact that an *Eveready* survey could not measure it just a few months after launch does not mean that confusion does not exist. The fact that something cannot be measured using one type of survey cannot be evidence that it exists or does not exist. Following Amazon's logic, if one were to attempt to measure the weight of an object with a ruler, it would conclude that the thing is weightless when in reality the ruler proved useless.

say that Wreal <u>cannot</u> succeed ultimately.")  ECF 177 at 17 (emphasis in the original).

Wreal can succeed ultimately because a reasonable jury could find that the relevant marks are likely to cause confusion. Accordingly, Amazon has not met its burden to show that there is no genuine issue of material fact such that it is entitled to judgment as a matter of law.

## II. ARGUMENT

### A. LEGAL STANDARD

#### 1. **Summary Judgment Standard.**

It is well-established that the trial court may only grant summary judgment "if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 (11th Cir. 2005). The moving party bears the initial burden of showing that there is an absence of a genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the non-moving party must show that there is a genuine issue of material fact that remains to be resolved at trial. *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1323 (11th Cir. 1993). "A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the party against whom summary judgment is sought." *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1400 (11th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). At this stage, the Court "must review the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion." *Id.* (citation omitted).

Obviously, the trial court must now view the evidence in the light most favorable to Wreal, which is a different standard than the one the Court applied at the preliminary injunction stage where the Court stressed that a preliminary injunction is an "extraordinary remedy." ECF No. 177

2

at 6. Because a preliminary injunction is extraordinary, Wreal had to demonstrate a "substantial likelihood of success on the merits." *Id.* Now, Wreal must show that there is sufficient evidence for a jury to find in its favor. In other words, the question now is whether Wreal *can* succeed on the merits when all of the evidence and all reasonable factual inferences are viewed in the light most favorable to it, not whether there is a substantial likelihood that it in fact will succeed. Indeed, as mentioned, the Court explained that its preliminary injunction ruling does not mean "that Wreal <u>cannot</u> succeed ultimately." ECF No. 177 at 17 (emphasis in original).

For the reasons explained below, there is sufficient evidence, when viewed in the light most favorable for Wreal, for the jury to conclude that there is a likelihood of confusion. Accordingly, summary judgment must be denied.

### 2.   Trademark Infringement Standard

To prevail on its trademark infringement claim, Wreal must demonstrate (1) that its mark has priority and (2) that Amazon's mark is likely to cause consumers confusion. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir. 1999); *see also* 15 U.S.C. § 1114(1). Only the second element, likelihood of confusion, is in dispute. Trial courts in this Circuit consider seven factors in determining whether there is a likelihood of confusion: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets (trade channels) and customers, (5) similarity of advertising media, (6) defendant's intent, and (7) actual confusion. *Frehling* 192 F.3d at 1335.

Likelihood of confusion is a question of fact that ordinarily cannot be resolved on summary judgment.[2] Indeed, summary judgment is rarely granted and only in cases where the totality of the

---

[2] *See Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000) (stating that the likelihood of confusion test used to determine trademark infringement is generally a question of fact) (citing *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1514–15 (11th Cir. 1984));

facts is such that no reasonable jury could find that there is a likelihood of confusion as a matter of law. And the cases identified by Amazon where the Eleventh Circuit upheld summary judgment perfectly illustrate how obvious it must be that confusion is unlikely in order for the trial court to make that determination.

In *Welding Services, Inc. v. Forman,* 509 F.3d 1351 (11th Cir. 2007), the only issue was whether a pair of marks[3] consisting of three letters were sufficiently close stylistically so as to have secondary meaning, a requirement for trademark protection to begin with, let alone a likelihood of confusion. *Id.* at 1360-61. They looked nothing alike, and the Eleventh Circuit concluded that the mark at issue was weak and "entitled to very little protection (if any)." *Id.* at 1361. Accordingly, the Eleventh Circuit affirmed the district court's decision to grant summary judgment in favor of the defendant. *Id.*

In *Custom Mfg. and Engineering*, *Inc.v. Midway Services, Inc.,* 508 F.3d 641, 644-45 (11th Cir. 2007), the plaintiff alleged consumers would be confused because it's mark was left on a printed circuit board used inside electric meters. However, there was no evidence that any relevant consumer would ever *see* the mark. The court explained: "Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of confusion." *Id.* at 652. Thus, the Eleventh Circuit affirmed summary judgment.

---

*see also Jellibeans, Inc. v. Skating Clubs of Ga., Inc.,* 716 F.2d 833, 840 n. 16 (11th Cir. 1983) (clarifying that the likelihood of confusion test is a question of fact in the Eleventh Circuit); *Provide Commerce, Inc. v. Preferred Commerce, Inc*., No. 07–80185, 2008 WL 926777, at *3 (S.D. Fla. April 4, 2008) (denying defendant's motion for summary judgment on trademark infringement and common law trademark infringement claims because there were issues of fact that required a jury's determination).

[3] In fact, at the time of the trial court's decision, the USPTO had refused to register the plaintiff's mark. *Welding Services, Inc.*, 509 F.3d at 1356-57.

And in *Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010), the Eleventh Circuit affirmed summary judgment in favor of an Atlanta-based sports bar that was sued for trademark infringement by an owner-operated Hollywood, California, Italian restaurant. *Id.* at 771 & 780. Their geographic disparity (situated in the opposite coasts of the United States) made it unlikely that anyone would encounter both. Neither advertised nationally. *Id.* at 776. And the plaintiff's Dan Tana mark was the restaurants' founders name. *Id.* at 774. Proper names are weak marks that receive little trademark protection. *Id.* (citations omitted).

Wreal's case against Amazon is nothing like those cases. The evidence, especially when viewed in the light most favorable to Wreal, shows that confusion is likely. A reasonable jury could find that there is a likelihood of confusion.

## B. THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO CONCLUDE THAT CONFUSION IS LIKELY.

### 1. FyreTV® is a Strong Mark.

The first step is to determine whether the mark "is strong or weak." *Frehling Enterprises, Inc.,* 192 F.3d at 1335. In reverse confusion cases like this one, trial courts pay special attention to the junior user's – Amazon's – mark. *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n. 5 (9th Cir. 1998) ("In a reverse confusion case, however, we must focus on the strength of the junior user's mark.") (emphasis in original). Strong marks deserve greater trademark protection, and a strong mark is more likely to cause confusion. *Id.* at 1130 n. 6. That is because a strong mark is more likely to be identified with a product. *Id.*

The *Frehling* court explained that marks range from generic (which will not cause confusion) to arbitrary (which are strongest). *Frehling Enterprises, Inc.,* 192 F.3d at 1335. There is no dispute in this case that both parties' use of the mark is arbitrary and therefore distinct, and

is classified as strong.[4] ECF No. 130. Further, there is no third party use, and Wreal's mark is incontestable. These facts alone are sufficient for a jury to find that this factor favors Wreal. *See Frehling*, 192 F.3d at 1336-37 (explaining that the lower court erred in classifying an incontestable, suggestive mark as not strong when there was no evidence of third party use, and finding that the factor weighed in favor of confusion).

Accordingly, based on these facts alone, there is sufficient evidence for a jury to find that the marks in question are strong, and that this factor favors Wreal.

Even more, because this is a reverse confusion case and the focus is on Amazon's mark, a jury may conclude that Amazon's use of its housemark aggravates confusion.[5] This makes perfect sense given that in a reverse confusion case the harm flows from consumers' likely association of the mark with the junior user (Amazon) at the expense of the senior user (Wreal). *Sands, Taylor & Wood*, 978 F.2d at 960. Thus, while this factor should favor Wreal based on the strength of the marks alone, Amazon's use of its housemark aggravates confusion.

To be sure, some courts have found the opposite in reverse confusion cases where both litigants used their respective housemarks.[6] This too makes sense – if both users of a mark prominently identify their respective source, consumers are unlikely to be confused. However, this case is unlike those, as Wreal never puts "Wreal" before FyreTV®.[7] SFD ¶ 54.

---

[4] Courts also look to whether there is third party use and whether a mark has been declared incontestable by the USPTO. *Frehling*, 192 F.3d at 1336-37.

[5] *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (in a reverse confusion case, the junior user's practice of linking the mark with the junior user's house mark "is an aggravation, not a justification"); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 230 (3d Cir. 2000) (same).

[6] *See, e.g. Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*, 8:13–CV–461–T–33EAJ, 2013 WL 6154166 (M.D. Fla. Sept. 4, 2013); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

[7] And Amazon does **not** consistently use its housemark. Thus, it has no evidence that consumers *expect* to see Amazon's housemark on an advertisement for its products. SFD ¶ 24.

Accordingly, a jury could find this factor, one of the two that the Eleventh Circuit in *Frehling* held was "most important,"[8] weights in favors of Wreal.

## 2. The Marks are Sufficiently Similar for a Jury to Determine that Confusion Exists.

"Here, the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337 (citing *John H. Harland Co.,* 711 F.2d at 975–76). The more similarities the marks share, the more consumers are likely to be confused. *See id.* at 1337 (The underlying purpose in considering the similarity of marks as an indicator of likelihood of confusion is that the closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents.).

In that regard, the Court has already found a number of similarities. Magistrate Judge Goodman explained that the marks share visual similarities: "They both use the same word with a slightly different spelling, and use colors associated with fire – red for Wreal, orange for Amazon, though Amazon occasionally uses red as well." ECF No. 130 at 21. Judge Goodman also noted that the marks "FyreTV®" and "Fire TV" share the same meaning in that "[n]either literally means anything…," apart from the shared use of 'TV.'" ECF No. 130 at 20-21 (citing *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1131). And nobody disputes that the marks sound the same, or that there is "perfect similarity of sound." ECF No. 177 at 10 (citations omitted).

---

[8] *Frehling*, 192 F.3d at 1335. In its preliminary injunction order, the Court ruled that *Quaker Oats* and *Attrezzi v. Maytag Corp.,* 436 F.3d 32, 39 (1st Cir. 2006), are distinguishable from this case because the marks in those cases were *identical*, whereas here they are confusingly similar (although *identical* in sound and meaning). ECF 177 at 9-10. But neither court made that point, and other courts have said that a housemark can aggravate the likelihood of reverse confusion even when the marks are confusingly similar. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 230 (3d Cir. 2000) ("Victoria's Secret's Miracle Bra" and "Miracle Suit").

The law does not require the marks to be identical, and even marks that consumers can readily distinguish can cause confusion if, like here, the similarities are sufficient to cause confusion.[9] A reasonable jury could find that these similarities outweigh any differences that may exist. Indeed, a reasonable jury could find that a perceptive consumer who does notice the "y" instead of the "i" "might shrug off the difference as an intentional modification identifying an ancillary division of the same company." *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1131 (holding that as to the identically-sounding marks "Dreamwerks" and "DreamWorks," "[w]hile we recognize that spelling matters, we're not sure that substituting one vowel for another and capitalizing a middle consonant dispels the similarity between the marks.").

Amazon blows past these substantial similarities and focuses on the fact that Wreal's mark, at least as it appears on Wreal's website,[10] appears alongside pornography. But there is evidence that Amazon's mark, to the relevant consumers, also appears alongside pornography. SFD ¶ 34. Thus, in sum:

| Appearance | Sound | Meaning | Manner in which mark is displayed |
|---|---|---|---|
| Both use the same words with a slightly different spelling. Both use colors associated with fire – red for Wreal, orange or red for Amazon. | Identical | Identical – neither literally means anything. | Significant variance in how Amazon presents the mark. Appears on Amazon's website, which is presented differently to different customers. One that is interested in purchasing pornography, and thus is likely a part of Wreal's target market, may be exposed to Amazon's Fire TV mark alongside pornographic magazines and other adult items. |

---

[9] The test "is not whether people will confuse the marks but whether the marks will confuse people." *Application of W. Point-Pepperell, Inc.*, 468 F.2d 200, 201 (C.C.P.A. 1972)

[10] Amazon ignores Wreal's mark as it appears in other contexts, such as advertisements, as well as the overall impression when the mark spoken. This is a critical omission, as Wreal relies on word-of-mouth to make consumers aware of its service. SFD ¶ 14.

Accordingly, a reasonable factfinder can find that every aspect of this analysis favors a finding that confusion is likely. Moreover, Amazon's focus on differences misses the mark. No one disputes that the marks are somewhat different, but similarities carry more weight than differences.[11] Here, the similarities are numerous, and a reasonable jury can give these similarities far more weight than the few differences Amazon identifies. Accordingly, a reasonable jury could conclude that this factor favors Wreal.

### 3. Wreal's FYRE TV and Amazon's FIRE TV are Both Used to Stream Video, and Their Respective Content is Complementary.

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, <u>not whether or not the purchasing public can readily distinguish between the products of the respective parties</u>." *Frehling*, 192 F.3d at 1338 (citing *E. Remy Martin*, 756 F.2d at 1530) (emphasis added).[12] "For our Court, the test [is] not whether the goods could be distinguished… but whether the goods ***are so related*** in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Id.* (emphasis added). "For goods or

---

[11] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) ("similarities are weighed more heavily than differences").

[12] Amazon relies heavily on *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. 1985), a case decided 14 years before *Frehling*. In that case, the Eleventh Circuit affirmed the finding of the district court, following a bench trial, that there is no likelihood of confusion. *Id.* at 1503-04. The court did not perform its own review of the district court's analysis of the individual factors. *Id.* Amazon argues that *Ross Bicycles* stands for the proposition that the court should look only at the differences between the products. But that is not the law, and the Eleventh Circuit has consistently held since the *Ross Bicycles* decision that the relevant inquiry is not whether consumers can readily distinguish the products, but rather whether they are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods. *See, e.g. Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1202 (11th Cir. 2001); *Frehling*, 192 F.3d at 1338.

Likewise, Amazon's reliance on *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980) is misplaced because the court there found that, due to extensive third-party use, the plaintiff's trademark protection was limited to where it had already put its mark. Amazon has not identified any extensive third party use of the marks at issue here that would require the Court to limit Wreal's trademark protection.

services to be 'related,' they need not have exactly the same customer base or be in direct competition with one another." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1202 n. 26 (11th Cir. 2001); *E. Remy Martin,* 756 F.2d at 1530 (finding that wine and brandy, though easily distinguishable, are nevertheless sufficiently similar because they are of the type that can be attributed to a common source).

Complementary goods and services, as in this case, are the types of goods and services that "are so related" that consumers can attribute them to the same source.[13]  Indeed, complementary goods are so related that when paired, they enhance the value of the products by increasing the offering.  That is the case here.

In this case, the products share a large number of similarities, and, more importantly, are complementary products that are typically put out by the same company. A reasonable jury could conclude that consumers may think that Amazon is the source of FyreTV® even though the consumers know that it is not the ***same*** as "Fire TV". And, while FyreTV® and FIRE TV are not identical, they are very similar. Amazon and Wreal both use the mark to identify a streaming video service. SFD ¶ 63. Both use a set-top box to deliver streaming video over the internet to consumers. *Id.* Each offers subscription-based services and a la carte offerings. SFD ¶ 63. In fact, the *only* reason that consumers may not assume that they are ***identical*** is that they offer different content.[14]

But, Amazon's sole focus on the difference in content is misplaced, much like the focus on what is inside the bottle in *E. Remy Martin* was misplaced. *Id.*, 756 F.2d at 1530. As the

---

[13] *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened."); *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1131 (relatedness of goods extends to goods that are complementary).

[14] Any adult that watches pornography can tell the difference between it and a summer blockbuster, just like any drinker can distinguish brandy from wine. *See Frehling*, 192 F.3d at 1338 (citing *E. Remy Martin,* 756 F.2d at 1530)

*Dreamwerks* court explained, "the relatedness of each company's prime directive isn't relevant." 142 F.3d at 1131. Rather, the focus is on Wreal's potential customers and whether they are likely to associate Wreal's adult streaming service with Amazon, the online retailer that sells just about *everything*, including Fire TV.[15] *See id.* A reasonable jury could conclude that consumers may assume that Amazon has put out two related (complementary) products, one to stream mostly mainstream movies, and the other to stream mostly hardcore pornography, just making insignificant changes to the names. *See Dreamwerks*, 142 F.3d at 1131 & n. 10 (holding that a consumer may shrug off the difference between "Dreamwerks" and "DreamWorks" and find that the junior user may have made the modifications in the spelling on purpose to denote an ancillary division of the ***same*** company.).

Indeed, a reasonable jury can conclude that the products are of the type that come from the same source because their content – the one differentiating feature – in fact *is* commonly available from the same source in the marketplace. Mainstream companies like Comcast and major hotel chains stream both mainstream and adult content. SFD ¶ 55. Magistrate Judge Goodman, in his Report and Recommendations on Plaintiff's Motion for Preliminary Injunction, noted that Amazon did not dispute this point – "[i]n fact, its expert on pornography, Dr. Peter Lehman, testified that hardcore pornography can be rented from large hotel chains that also offer mainstream and kids movies." ECF 130 at 24 n. 9. Accordingly, a reasonable jury could conclude that the similarities, coupled with the complementary nature of the offerings, weigh in favor of a finding in favor of Wreal of the similarities-of-products factor.

---

[15] Amazon disingenuously claims that it does not sell pornography. The evidence conclusively shows otherwise. SFD ¶ 33-34. In fact, while Wreal was prohibited from obtaining discovery from Amazon on the extent of its pornography sales, it was able to identify several pornographic DVDs, books, and magazines available for purchase on Amazon's website. *Id.* In addition, consumers can stream pornography on Amazon's Fire TV through apps like HBO Go and Showtime. *Id.*

Amazon claims that it is irrelevant that Comcast and other mainstream content providers provide both mainstream and pornographic on-demand content. The problem for Amazon is that the law says otherwise. In *Planetary Motion*, the Eleventh Circuit analyzed whether UNIX-based email notification software and a service that allows users to check their email by dialing a telephone number were sufficiently related to support a finding of a likelihood of confusion. 261 F.3d at 1202. It determined that they were, in part because "major firms in this field sell e-mail software as well as provide e-mail service." *Id.* (citing *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1174-75 (2d Cir. 1976) (finding use of a mark on cosmetics to infringe on use on apparel and household linens because fashion designers were commonly involved in both markets)); *see also Dreamwerks*, 142 F.3d at 1131.

Faced with these facts, Amazon tries to raise Wreal's burden of proof. Amazon's attorneys suggest (without authority) that Wreal must put forth an "expert in consumer psychology or marketing," "focus group results," or a "survey of consumer attitudes" to show that a "substantial number of consumers in fact believe…" that mainstream and adult content are related. Incredibly, this is despite the fact that its own expert agreed with the fact that in the marketplace, the same companies offer mainstream movies and pornographic movies as complementary goods. ECF No. 205 at 15 (emphasis added). The Court should decline Amazon's invitation to raise Wreal's burden of proof with respect to this factor.[16]

In fact, Amazon is demanding evidence of actual consumer confusion here, but the relevant question is whether there is a *likelihood* of confusion by analyzing all of the factors. The fact is that the products are the same except for their complementary content. Amazon's Fire TV offers

---

[16] The *E. Remy Martin* court did not need the help of an expert in liquor and consumers' drinking habits. Nor did it need an expert to tell it that brandy, a hard liquor, tastes different than wine, which has a much lower alcohol content.  Nor was this required in *Dreamwerks*.

mainstream action movies, comedies, television shows, documentaries, and pornography. SFD ¶ 32. Wreal's FyreTV® offers pornographic content, both "hard core" and "soft core," sex-related instructional videos, and stimulating reality-type content. SFD ¶ 56. Accordingly, a reasonable jury could conclude that this factor favors Wreal.

### 4. Confusion is Likely Because the Parties Share Customers.

The fourth *Frehling* factor is whether the parties share retail outlets and customers. 192 F.3d at 1339. If the same people are likely to be exposed to the mark, either because they are sold at the same place or for another reason, then confusion is more likely. *See id.; Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 at 262. The key is overlap; direct competition is unnecessary and customer bases' do not need to be identical. *Frehling*, 192 F.3d at 1339.

Amazon argues that there is no overlap because: (1) The products are not sold at the same sales outlets; and (2) the Court was not persuaded at the preliminary injunction phase that the target audiences are similar because Wreal attempts to target the type of people likely to pay to stream pornography, and people that shop for pornographic DVDs and sex toys on Amazon's website are likely to also pay to stream pornography.[17]

Amazon's argument is flawed for two reasons. *First*, that the products are not sold at the same stores does not, on its own, mean that they do not share customers. *Second*, while this is not the only evidence that supports this factor, a reasonable jury could conclude that because Wreal

---

[17] In that regard, while Dr. Sarel did not screen for those likely to pay for pornography, a significant number of respondents to Dr. Sarel's survey indicated that a pornographic website could also be in the sex toy business in response to an open-ended question. Marfoe Decl. Ex. 28 at 184:15 to 186:8.

targets people that it hopes are likely to pay for pornography, those that buy pornography or sex toys on Amazon's website are also potential FyreTV® customers.[18]

Amazon also focuses on the fact that it does not target people that stream pornography. ECF 205 at 18. But that does not mean that people that stream pornography do not also stream mainstream content or are not part of Amazon's target market for its Fire TV. In *Frehling*, the trial court found that the parties do not share customers because one targets "affluent" shoppers and the other targets "less affluent" ones. 192 F.3d at 1339. The Eleventh Circuit found that the district court "clearly erred" when weighing this factor, and held that it was "troubled by the court's methodology of dividing the world up into distinct segments…," as "such a categorical distinction is tenuous." *Id.* (citing 4 McCarthy, supra, § 24:52, at 24–74–75 ("[I]t may be difficult to draw a line between those consumers who shop at 'class' retailers and those who shop at 'mass' retailers because of those consumers who 'cross-shop' and frequent both types of retailers.").

Amazon's analysis is even more troubling. In order for the jury to accept Amazon's position, it would have to believe that people that watch streaming online pornography do not also watch streaming mainstream content. That is absurd, and the evidence shows otherwise. Wreal targets all adults over 20 with disposable income that are likely to pay for streaming online pornography. SFD ¶ 12. And Wreal's FyreTV® is available on Roku, one of Amazon's top competitors, and yet another product that offers both mainstream and adult content, including Wreal's. SFD ¶ 11, 30.

---

[18] The Court prohibited Wreal from obtaining discovery from Amazon related to its sales of sex toys and pornographic DVDs, including the number of those that purchased both pornography and a Fire TV from Amazon's website. Thus, Wreal has no way of knowing the extent of the overlap from this cause, though that information is readily available in Amazon's files.

Accordingly, a reasonable jury can easily conclude that the parties share customers and that this factor favors a finding of a likelihood of confusion.

### 5. There is Sufficient Overlap in the Parties' Advertising for a Jury to Find That Confusion is Likely.

Courts also look at the parties' respective advertising for overlap, also to determine whether the same potential customers are likely to see both marks, and thus likely to be confused. *Frehling*, 192 F.3d at 1340. The parties' advertising does not have to be identical, and Wreal only needs to show that overlap exists. *Id*. Put another way, there can be overlap physically (if the advertisements appear in the same publication or website), or temporally (if the same people are likely to see both, albeit at different times). *See id.* Amazon merely parrots the Court's finding of fact at the preliminary injunction hearing that "Amazon uses its homepage, national television, and print; whereas, Wreal advertises on adult oriented websites." ECF No. 205 at 18 (*quoting* ECF No. 177 at 13).

Amazon disregards the fact that Wreal, in the past, advertised on many of the same national television channels as Amazon and also advertised in mainstream print magazines. SFD ¶ 14. And while Wreal advertised primarily on adult websites during the preliminary injunction phase of this case, its advertising methods are constantly evolving. *Id*. Currently, Wreal advertises through social media sites like Facebook, through word-of-mouth, via email, and through search engines by optimizing its website to make sure that people looking for FyreTV® are able to find it. SFD ¶ 15. Amazon too advertises through social media, email, and search engines, and almost certainly gains publicity through word-of-mouth. SFD ¶ 37. Accordingly, a reasonable jury can find that this factor favors Wreal.

15

6.     **Amazon Ignored Wreal's Senior Rights to the Mark and Tried to Push Wreal Out of the Market.**

Courts are divided on how to apply the defendants' intent in a reverse confusion case, with some applying a "careless" standard, and others requiring intent to push the junior user out of the market.[19] And while the Eleventh Circuit has not determined which standard applies, a reasonable jury could find that this factor favors Wreal under either standard.

As to the "careless" standard, it is undisputed that Amazon knew of Wreal's senior rights to the marks, but nevertheless decided to take the Fire TV name for itself. SFD ¶ 31, 64. And there is evidence that Amazon deliberately chose the mark because it was one that it could ███████ ████ SFD ¶ 58. The only way it could do this, of course, would be to push Wreal out of the market. Indeed, Neil Lindsay, Amazon's Vice President of Marketing, ███████████████ ███████████████████████████████████████████████████████████████████ ██████ SFD ¶¶ 31. He succeeded. *Id.* Thus, a reasonable jury could find that under either standard, this factor favors Wreal.

7.   **There is evidence of actual confusion.**

   a.   ***Though difficult to marshall, Wreal has put forth evidence of actual confusion.***

Though it can be elusive to find evidence of actual confusion, particularly in a reverse confusion case, when it can be found it is strong evidence of a likelihood of confusion. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 223 (3d Cir. 2000). Evidence of actual confusion is especially difficult to find in reverse confusion cases because a confused

---

[19] *See Freedom Card Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 479 (3d Cir. 2005) (focusing on intent of junior user to push senior user out of market); *Imperial Toy Corp. v. Ty, Inc.*, No. 97-C-8895, 1998 WL 601875 at *6 (N.D. Ill. 1998) (finding that the intent factor weighed in favor of the plaintiff when the defendant acted carelessly and ignored the plaintiff's senior rights to the mark).

consumer will think that they are doing business with the junior user (Amazon) and not the senior user (Wreal). *Dreamwerks*, 142 F.3d at 1130. This means that any confused customers would contact Amazon, not Wreal.[20] Thus, "[t]he law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion." *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1226 (S.D. Fla. 2012) (Lenard, J.); *see also TV Land, L.P. v. Viacom Intern*., 908 F. Supp. 543, 553 (N.D. Ill. 1995) (issuing an injunction in a reverse confusion case despite an absence of actual confusion in the marketplace).

Moreover, the Eleventh Circuit has explained that "the quantum of evidence needed to show actual confusion is relatively small." *Caliber Automotive Liquidators, Inc. v. Premier Chrysler Jeep, Dodge,* LLC, 605 F.3d 931, 937 (11th Cir. 2010). When it denied Wreal's request for a preliminary injunction, the Court focused on the word "relatively," and analyzed the evidence in light of Amazon's "very large customer base." ECF No. 177 at 16. Respectfully, this was error, as the relevant consumers are ***not*** the tens of millions of Amazon customers, but rather Wreal's market, which of course is dwarfed by Amazon's. And while a handful of instances of actual confusion may be insignificant next to Amazon's customer base, the jury will likely reach a different conclusion when viewing the evidence in light of Wreal's customer base.

Despite the challenge in finding evidence of actual confused consumers, Wreal put forth several instances of customers that contacted it expressing an association between Amazon and

---

[20] *See Trovan, Ltd. v. Pfizer, Inc*., No. CV-98-00094 LGB MCX, 2000 WL 709149 at *20 (C.D. Cal. May 24, 2000) (in a reverse confusion case, confused consumers would likely contact the junior user, not the senior user). Accordingly, it is improper for Amazon to rely on the Court's factual finding that none of Wreal's customers have contacted Wreal about confusion with Amazon's Fire TV. ECF No. 177 at 16.

FyreTV®. SFD ¶ 40. Taking all inferences in Wreal's favor, a reasonable jury could determine that this is evidence of actual confusion.

And there was also evidence of actual confusion from Amazon's own files. SFD ¶ 44. Amazon produced an audio recording of a caller that contacted Amazon thinking he could access FyreTV®'s content on Fire TV. And while the Court questioned whether this caller was actually confused, a reasonable jury can conclude that he was. After all, he contacted Amazon to ask about Wreal's FyreTV®. That almost certainly would not have happened if Amazon chose a different name for its product. Thus, this single phone call is strong evidence of actual confusion. And "[a]ctual confusion by a few is evidence of likelihood of confusion by many." *Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*, No. 13–61466–CIV, 2013 WL 3873231 *6 (S.D. Fla. July 25, 2013). Accordingly, a reasonable jury could conclude that there is evidence of actual confusion, and this factor favors Wreal.

> b. *Amazon cannot rely on a fundamentally flawed consumer survey from its expert, Dr. Sarel to disprove actual confusion.*

Dr. Sarel's survey, which purports to show no confusion, is so fundamentally flawed that it cannot be used to disprove a likelihood of confusion in this case.[21] Indeed, Dr. Sarel's survey is so flawed as to be irrelevant and inadmissible under Rules 401, 403, 702, and 703, and thus the Court need not consider it at this stage.[22] And, even if the Court were to consider the flawed and

---

[21] Amazon's decision to submit a consumer survey that lacks any semblance of objectivity underscores why the Eleventh Circuit "has moved away from relying on survey evidence." *Frehling*, 192 F.3d at 1341, n.5 (citing S*afeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 n.10 (11th Cir.1982))

[22] "[I]f the expert testimony is excluded as inadmissible under the Rule 702 framework articulated in *Daubert* and its progeny, the summary judgment determination is made by the district court on a record that does not contain that evidence." *Rexall Sundown Inc. v. Perrigo Co.,* 651 F. Supp. 2d 9, 25 (E.D.N.Y. 2009) (citation omitted). Accordingly, the Court should determine Amazon's summary judgment motion without considering Dr. Sarel's survey.

irrelevant survey, a reasonable jury would not give Dr. Sarel's survey any weight for a host of reasons identified by Dr. Maronick, including: (1) Dr. Sarel's *Eveready* design choice was incorrect for the reasons explained in footnote 1 to this brief (*see supra* at 1-2), (2) the universe is overbroad to the point that it is unlikely that it includes any people in the target market Dr. Sarel identified, (3) it fails to simulate market conditions by omitting key information, namely the URL, from the stimulus, and (4) had Dr. Sarel followed his own methodology in counting respondents as confused, the actual confusion rate would have reached, at minimum, the threshold for a finding of actual confusion. And these are just some of the flaws Dr. Maronick identified. *See* Marfoe Decl. Ex. 19.

### c. Amazon Cannot Rely on Irrelevant and Inadmissible Pilot Studies Conducted by Dr. Maronick to Disprove Actual Confusion.

Amazon also relies heavily on pilot studies conducted by Wreal's rebuttal survey expert, Dr. Maronick, while he was serving as a consultant for Wreal in April 2014. Amazon's reliance on these studies is improper because (1) the surveys were not conducted to test whether there is a likelihood of confusion and as a result do not use the proper methodology,[23] and (2) Amazon has not disclosed Dr. Maronick as an expert witness in this case, and thus even if the pilot studies had any relevance, and they do not, Amazon nevertheless cannot call him at trial. Accordingly, this irrelevant and ultimately inadmissible information cannot be used to support Amazon's motion for summary judgment.

Thus, given that Wreal has put forth evidence of actual confusion, a reasonable jury can conclude that this factor weighs in Wreal's favor.

---

[23] For further discussion on this point, see Wreal's Response in Opposition to Amazon's Motion to Exclude Dr. Maronick. ECF No. 252.

## C. THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO AWARD WREAL'S DAMAGES OR AMAZON'S PROFITS

While proof of damages it not an element of a trademark infringement claim, the Lanham Act authorizes the Court to award the plaintiff's actual damages. Indeed, the Lanham Act includes all elements of injury to the business of the trademark owner proximately resulting from the infringer's unlawful acts. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008). And Wreal has put forth evidence that it has been harmed. SFD ¶ 18.[24]

Amazon complains that Wreal did not put forth evidence that would allow the fact-finder to calculate damages. ECF No. 205 at 19. This misstates Wreal's burden. "Lanham Act damages may be awarded even when they are not susceptible to precise calculations." *Id.* at 1241. The damages incurred by Wreal, including damage to its goodwill and brand identity, are precisely those types of damages that are not easily calculated. Thus, Amazon's argument is misplaced, and there is sufficient evidence for the jury to award Wreal damages.

## III.    THE COURT SHOULD DENY AMAZON'S MOTION FOR SUMMARY JUDGMENT.

For the reasons explained above, Wreal has put forth sufficient evidence to create a genuine issue of material fact as to whether there is a likelihood of confusion. Accordingly, Amazon's motion for summary judgment must be denied.

---

[24] Wreal also seeks a permanent injunction.

Respectfully submitted,

WNF LAW, P.L.
*Attorneys for WREAL, LLC*
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Phone: (305) 760-8500
Fax: (305) 760-8510


By:   */s/   John Marfoe*
    Carlos Nunez-Vivas
    Florida Bar No. 128181
    can@wnflaw.com
    Daniel Foodman
    Florida Bar No. 337160
    df@wnflaw.com
    Dennis J. Wouters
    Florida Bar No. 28692
    djw@wnflaw.com
    John G. Marfoe
    Florida Bar No. 101535
    jgm@wnflaw.com


## CERTIFICATE OF SERVICE

I certify that on November 6, 2015, this document was served by the Court's ECF filing system on all counsel of record on the Service List below.


By:   /s/ John Marfoe

21

## SERVICE LIST

Justin A. Nelson, Esq.
Drew D. Hansen, Esq.
Patrick C. Bageant, Esq.
*Co-counsel for Defendant*
Susman Godfrey L.L.P.
1201 Third Avenue
Suite 3800
Seattle, WA 98101
Tel. 206-516-3880
Fax 206-516-3883
jnelson@susmangodfrey.com
dhansen@susmangodfrey.com
pbageant@susmangodfrey.com

Jamie Z. Isani, Esq.
Shannon Shaw, Esq.
*Co-counsel for Defendant*
Hunton & Williams LLP
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
Tel. 305-810-2500
Fax 305-810-2460
jisani@hunton.com
sshaw@hunton.com

22