**[REDACTED]**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:14-cv-21385-JAL

WREAL, LLC, a Florida Limited Liability
Company,

      Plaintiff,

v.

AMAZON.COM, INC., a Delaware
corporation,

      Defendant.

**AMAZON'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**CONTENTS**

I.  INTRODUCTION ....................................................................................................1

II.  ARGUMENT...........................................................................................................2

     A.  No Reasonable Fact-Finder Could Find Likelihood of Confusion. ........................2

          1.  Distinctiveness of Marks..............................................................................2

          2.  Similarity of Marks. ....................................................................................3

          3.  Similarity of Products. ................................................................................4

          4.  Similarity of Sales Outlets and Customer Base. .........................................6

          5.  Similarity of Advertising. ...........................................................................6

          6.  Intent. ..........................................................................................................7

          7.  Actual Confusion. .......................................................................................8

     B.  No Reasonable Fact-Finder Could Find Damages ████████ ████ ....................................................................................................10

III.  CONCLUSION.......................................................................................................10

**AUTHORITIES**

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3rd Cir. 2000) ........................................................................... 3

*Alliance Metals, Inc. of Atlanta v. Hinely Indus. Inc.*,
   222 F.3d 895 (11th Cir. 2000) ......................................................................... 2

*Amstar Corp. v. Domino's Pizza*,
   615 F.2d 252 (5th Cir. 1980) ........................................................................... 6

*Aronowitz v. Health-Chem Corp.*,
   513 F.3d 1229 (11th Cir. 2008) ..................................................................... 10

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge LLC*,
   605 F.3d 931 (11th Cir. 2010) ......................................................................... 8

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
   508 F.3d 641 (11th Cir. 2007) ......................................................................... 1

*Denimafia Inc. v. New Balance Athletic Shoe, Inc.*,
   No. 12-4112, 2014 WL 814532 (S.D.N.Y. Mar. 3, 2014) ............................... 9

*Discovery Sun P'Ship, Ltd. v. Kapsomenakis*,
   No. 95-1068, 2000 WL 1881203 (S.D. Fla. June 21, 2000) .......................... 10

*Fancaster, Inc. v. Comcast Corp.*,
   832 F. Supp. 2d 380 (D.N.J. 2011) ............................................................... 10

*Frehling Enterprises, Inc. v. International Select Group, Inc.*,
   192 F.3d 1330 (11th Cir. 1999) ....................................................................... 6

*In re Complaint of Boston Boat III*,
   No. 13-62116, 2015 WL 5444162 (S.D. Fla. Sept. 16, 2015) ......................... 9

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*,
   No. 06-550, 2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ............................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................... 2

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
   261 F.3d 1188 (11th Cir. 2001) ....................................................................... 5

*Ross Bicycles v. Cycles USA, Inc.*,
   765 F.2d 1502 (11th Cir. 1985) ....................................................................... 4

*Ryder System, Inc. v. Storage & Moving Solutions, Inc.*,
    No. 13-61466, 2013 WL 3873231 (S.D. Fla. July 25, 2013)............................................. 8

*Sally Beauty Co., Inc. v. Beautyco, Inc.*,
    304 F.3d 964 (10th Cir. 2002) ...................................................................................... 3

*Sunenblick v. Harrell*,
    895 F. Supp. 616 (S.D.N.Y. 1995).................................................................................. 5

*Tiger Direct, Inc. v. Apple Computer, Inc.*,
    No. 05-21136, 2005 WL 1458046 (S.D. Fla. May 11, 2005)....................................... 1, 4

*World Triathlon Corp., Inc. v. Dawn Syndicated Productions*,
    No. 05-983, 2007 WL 2875456 (M.D. Fla. Sept. 28, 2007)........................................... 3

**Other Authorities**

Jerre B. Swann, "Likelihood of Confusion,"
    *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
    (Shari Seidman Diamond & Jerre B. Swann, eds., 2012)...................................................... 8

Thomas McCarthy,
    *McCarthy on Trademarks and Unfair Competition*,
    § 23:10 (2014)................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................................................... 9

## I.   INTRODUCTION

WREAL's theory that an appreciable number of consumers will believe Amazon is responsible for the FyreTV streaming pornography service has always been far-fetched. Discovery has now made clear this theory is unsupportable. There is no evidence of actual confusion. There is no real dispute the marks' retail outlets, advertising media, target audiences, and presentations in commerce are very different.[1] WREAL's own experts have conceded key elements of its case. WREAL's Dr. Linda Williams testified consumers "would not confuse" FyreTV.com with a mainstream website that does not sell hardcore pornography.[2] WREAL's Dr. Thomas Maronick conducted surveys, which WREAL tried desperately and unsuccessfully to shield from discovery, which showed "very low" confusion. Mot. at 7.

WREAL has now apparently retreated to the theory that surveys show no evidence of confusion because ███████████████████████████████.[3] WREAL claims ████████ █ "likely to happen in the near future." Resp. at 1 n.1. But the Lanham Act does not create a cause of action for hypothetical and speculative future confusion. "[R]ecovery under the Lanham Act requires, at a minimum, 'that confusion, mistake, or deception be 'likely,' not merely 'possible.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651 (11th Cir. 2007) (citation omitted); *see* ECF No. 130 at 17. WREAL cannot now reverse course and claim it is too soon for confusion to be evident given its allegations that the Amazon Fire TV launch was "covered extensively by the press," and backed by a "massive national television campaign" (ECF No. 1 at 30, 32). *See Tiger Direct, Inc. v. Apple Computer, Inc.*, No. 05-21136, 2005 WL 1458046, at *21 (S.D. Fla. May 11, 2005). ("Given the substantial press garnered by Apple's

---

[1] *See* Amazon's Statement of Undisputed Facts (ECF No. 206) ("SUF"); WREAL's Response to Defendant Amazon's Statement of Undisputed Facts and Statement of Facts in Dispute (ECF No. 263) ("RSUF") ¶¶ 2, 4-6, 12, 14-15, 26-27, 37, 39, 41-42. WREAL claims to dispute some of these facts; however, as explained in more detail below, WREAL's "disputes" typically just insert additional facts that do not contradict Amazon's factual assertions. This is insufficient to avoid summary judgment. Fed. R. Civ. P. 56(c)(1).

[2] Amazon's Motion for Summary Judgment and Supporting Memorandum of Law (ECF No. 205) ("Mot.") at 15-16.

[3] WREAL's Response in Opposition to Amazon's Motion for Summary Judgment (ECF No. 261) ("Resp.") at 1 n.1.

Tiger, the Court does not credit TigerDirect's argument that it is too early to assess whether there is actual confusion in the marketplace . . . .").

The Court's findings at the preliminary injunction stage rested on evidence that was not truly disputed even then, nor has that evidence changed. For example, Amazon has not suddenly decided to advertise on adult websites, permit pornographic apps, or repeal the content policy that prohibits pornography on Amazon Instant Video (AIV), which streams to the Amazon Fire TV. *See* ECF No. 177 at 11-13. A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Yet "metaphysical doubt" is all WREAL offers: no evidence of actual confusion, no survey evidence in its favor, no evidence that Amazon markets the Amazon Fire TV to customers interested in streaming hardcore pornography. With no true dispute as to the material facts, this Court should grant summary judgment.[4]

## II.  ARGUMENT

### A.  No Reasonable Fact-Finder Could Find Likelihood of Confusion.

1. Distinctiveness of Marks.

The parties agree "Amazon," "FyreTV," and "Amazon Fire TV" are strong and distinctive. *See* ECF 130 at 17. There is no factual dispute Amazon typically (though not invariably) uses "Amazon" next to its products' brand names (such as "Echo," "Fire Phone," and "Fire TV").[5] Even when Amazon does not use "Amazon" next to "Fire TV," the product still "appears on Amazon's website, an Amazon-branded marketplace with other Amazon-branded products" (SUF ¶ 34). The Court's previous observation that the "Amazon" mark "could help

---

[4] WREAL claims likelihood of confusion "ordinarily cannot be resolved on summary judgment" (Resp. at 3), but its case in fact held: "Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law." *Alliance Metals, Inc. of Atlanta v. Hinely Indus. Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (cited in Resp. at 3 n.2). *See* Mot. at 6-7.

[5] *See* SUF ¶ 24 (Amazon "often" uses housemark next to product name); RSUF ¶ 24 (Amazon "does not consistently" use its housemark).

distinguish the products" (ECF No. 177 at 10) is consistent with the Eleventh Circuit's observation in a forward confusion case that a housemark can make confusion less likely. *Custom Mfg.*, 508 F.3d at 652 n.10. WREAL provides no authority for a different rule here.[6]

2.      Similarity of Marks.

WREAL's proposed rule is that marks that share some similarities create a fact issue because "similarities carry more weight than differences." Resp. at 9. This is not the law.[7] Also, as WREAL concedes people can <u>only</u> become FyreTV customers by signing up on WREAL's FyreTV.com website,[8] its argument that Amazon "ignores Wreal's mark as it appears in other contexts" (Resp. at 8) is irrelevant: a customer opening a FyreTV account will <u>always</u> encounter the (undisputed) features that distinguish WREAL's site from a general consumer website such as Amazon's: (1) a warning screen requiring users to confirm they are over 18 and willing to view adult content, and (2) an immediate barrage of pornography – several rows of highly explicit pornographic images on the homepage and many different lurid pornographic genres on the "categories" page. SUF/RSUF ¶¶ 2-6.

WREAL argues "there is evidence that Amazon's mark, to the relevant consumers, also appears alongside pornography," (Resp. at 8), citing RSUF ¶ 34, which cites an unauthenticated printout of what appears to be Amazon's website from a customer named "Paul" who had

---

[6] The Court previously distinguished contrary authority because the marks were identical in those cases and are not here. ECF No. 177 at 9-10. In *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000) (cited in Resp. at 6 n.5 & 7 n.4), the court specifically did not determine which way the housemark weighed. *Id.* at 230.

[7] Mot. at 12-13 & n.17; *see World Triathlon Corp., Inc. v. Dawn Syndicated Productions*, No. 05-983, 2007 WL 2875456, at *5 (M.D. Fla. Sept. 28, 2007) (granting summary judgment to defendant; "[t]he mere fact that both marks" incorporate a form of the same word "does not render the marks sufficiently similar to establish likelihood of confusion") (collecting cases); ECF No. 177 at 11 ("The fact that there are <u>some</u> similarities does not raise the issue to one of substantial confusion."). WREAL's case agrees; it held the <u>differences</u> in the marks meant this factor weighed in <u>defendant's</u> favor: "Although similarities are to be weighed more heavily than differences, the differences in this case are significant enough to lead us to conclude that this factor weighs in favor of [defendant]." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002) (cited in Resp. at 9 n.11).

[8] "[A] customer must sign up for an account on Wreal's fyretv.com website" (RSUF ¶ 3).

apparently previously searched for pornographic magazines. *Id.* (citing Marfoe Decl. Ex. 15). Yet WREAL's lone example still has plenty of mainstream consumer content, such as "Black Friday" promotions and ads for running shoes (*id.*), easily distinguishing it from the row upon row of pornography at FyreTV.com. SUF/RSUF ¶¶ 5-6; *see* Mot. at 13.

  3.  <u>Similarity of Products.</u>

  WREAL argues the products are similar at some general level because both "identify a streaming video service." Resp. at 10. However, the Eleventh Circuit has rejected the idea that general similarities (both products are food, both are bicycles, both are restaurants) make products so similar that consumers are likely to confuse them. Mot. at 14.[9] WREAL also argues the clear differences between mainstream content and hardcore pornography have no legal relevance because the products are "complementary" – a term WREAL defines as goods that are "so related that when paired, they enhance the value of the products by increasing the offering," giving examples such as French brandy and French wine, movies and conventions selling movie memorabilia, and email notification software and a service allowing email to be checked from a phone. Resp. at 9-13. But here, mainstream content and hardcore pornography are kept <u>separate</u> in ways WREAL's examples are not: with over-18 opt-in screens that warn about adult content (SUF/RSUF ¶ 4), separate advertising channels (adults-only websites (SUF/RSUF¶ 15) versus national broadcast television (SUF/RSUF ¶ 37)), content policies that police the boundaries between hardcore pornography and mainstream content (SUF/RSUF ¶ 33),[10] parental controls to keep adults-only content away from children (SUF/RSUF ¶ 27), and an outright ban on pornographic apps for the Amazon Fire TV (SUF/RSUF ¶ 32). The simplest way to see the

_____

[9] WREAL attempts to discredit *Ross Bicycles v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. 1985) as superseded by later cases (Resp. at 9 n.12). However, the Eleventh Circuit has never overruled *Ross*, and trial courts have repeatedly relied on it, including for its analysis of similarity of products. *See, e.g.*, *Tiger Direct*, 2005 WL 1458046, at *17.

[10] WREAL asserts Amazon's pornography policy allows some older explicit movies. RSUF ¶ 33. However, WREAL cites the wrong policy. The Amazon Instant Video (AIV) content policy governing Amazon Fire TV content bars <u>all</u> "pornography." Bageant Decl. Ex. 22. The Court has already excluded WREAL's other examples (sex toys and DVDs on Amazon's website) (Resp. at 11 n.15) as irrelevant (ECF No. 176 at 2).

difference is to compare Amazon's AIV anti-pornography policy (ECF No. 206-1 (hereinafter "Bageant Decl.") Ex. 22) with the FyreTV.com homepage (Bageant Decl. Ex. 1): ███████ ████████████████████████████ is graphically present on FyreTV.com. WREAL's use of "Netflix" demonstrates the point: WREAL calls itself the "Netflix of Porn" to illustrate it is in a _different_ market than a mainstream media company like Netflix. SUF/RSUF ¶ 13.[11] This is why _Sunenblick v. Harrell_, 895 F. Supp. 616 (S.D.N.Y. 1995) – which Amazon discussed extensively (Mot. 14-15) but WREAL does not even mention – is particularly instructive: it emphasizes (consistent with Eleventh Circuit law) that products are not "similar" if _consumers_ do not perceive them as related because they are kept separate in the marketplace.[12] And here, WREAL's expert Dr. Linda Williams conceded – in a passage WREAL does not contest – that consumers do _not_ perceive mainstream websites as similar to hardcore pornography websites. Mot. at 16 (citing Williams Dep. at 164:9-14).

WREAL then asserts the Amazon Fire TV "offers . . . pornography" (Resp. at 12-13), citing the "Showtime" channel app (RSUF ¶ 32) and a video purporting to show an unidentified person accessing an explicit movie on "Showtime" (ECF No. 260). However, the presence of _one_ adult-oriented movie – not even available through AIV but through a separately branded third-party cable channel app – hardly shows the total AIV content is so similar to FyreTV's content to create a fact issue as to confusion, particularly where the video is so-called "soft-core" pornography very unlike the hardcore material that makes up most of WREAL's offerings. SUF/RSUF ¶¶ 2, 45.[13]

---

[11] WREAL claims it "disputes" this fact, but it merely cites the same testimony Amazon cites, in which WREAL's Rodrigo Franco does _not_ claim WREAL and Netflix operate in the same market: "Q. You call yourself the Netflix of porn because you are in a different market than Netflix, but both you and Netflix offer streaming video? A. Right. . . . Q. Netflix isn't your competitor, is it? A. No, not at the time.") (Tr. 120:12-15, 19-20, cited in SUF/RSUF ¶ 13).

[12] WREAL asserts it is significant that "Comcast" and "major hotel chains" stream mainstream and adult content, relying on _Planetary Motion, Inc. v. Techsplosion, Inc._, 261 F.3d 1188 (11th Cir. 2001). Resp. at 11-12. However, in _Planetary Motion_, e-mail notification software and a service that allows users to check e-mail through a telephone line were not kept clearly separate in the marketplace, as are the products here.

[13] WREAL's claimed "dispute" as to this fact (SUF/RSUF ¶ 45) only cites its expert Dr. Linda

4.      Similarity of Sales Outlets and Customer Base.

WREAL does not dispute FyreTV and Amazon Fire TV are not sold in the same retail outlets (SUF/RSUF ¶¶ 41-42). WREAL argues Amazon's Fire TV customer base should be considered "similar" to WREAL's pornography customer base because "people that watch streaming online pornography" also "watch streaming mainstream content." Resp. at 14. This argument would mean nearly any customer bases would be "similar" – for example, consumers who buy sugar might also buy pizza, and thus pizza customers and sugar customers would be "similar." *But see Amstar Corp. v. Domino's Pizza*, 615 F.2d 252, 262 (5th Cir. 1980); ECF No. 177 at 12 (rejecting "expansive interpretation" that "the parties share the same customer base of internet shoppers and humans over eighteen years of age"). Here, as the Court previously noted, the key inquiry is whether Amazon markets the Amazon Fire TV to customers specifically in the market for streaming pornography (ECF No. 177 at 12). No reasonable fact-finder could draw this conclusion. SUF/RSUF ¶¶ 30-33.[14]

5.      Similarity of Advertising.

There is no dispute WREAL does not use Amazon's advertising channels: the Amazon.com homepage, television, print media, and in-store displays. SUF/RSUF ¶ 37. WREAL claims its advertising is "constantly evolving" (Resp. at 15), but does not dispute it stopped advertising in channels Amazon uses such as print and TV no later than 2012 (SUF ¶ 14). Nor does WREAL dispute it advertises on adult websites, which Amazon does not. SUF/RSUF ¶ 15. WREAL claims the advertising is similar because both parties use "social

---

Williams, who opined "softcore" pornography is related to "hardcore pornography" in that it provides "erotic stimulation" – a plainly overbroad test that (by Dr. Williams's own admission) would also make bicycles, Greek statutes, and G-rated movies "related to" hardcore pornography (ECF No. 210 at 4-8; Bageant Decl. Ex. 34 (Williams Dep.) at 93:6-10; 114:7-20; 116:7-117:12) and has nothing to do with whether consumers perceive the content as related. ECF No. 210 at 11-14. Dr. Williams separately confirmed the various features that separate hardcore pornography from so-called "soft-core" pornography. SUF ¶ 45.

[14] This is very different from *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999) (cited in Resp. at 14), where the Eleventh Circuit rightly noted the audiences were similar in that they were shopping for furniture "marketed as having an Italian design," advertised in "similar types of magazines." *Id.* at 1338-39.

media, email, and search engines" and "word of mouth" (Resp. at 15) but these methods are so broad as to make the advertising factor useless, as nearly every mark in commerce uses these channels.[15]

6.  Intent.

There is no dispute Amazon selected the "Fire" brand for the Amazon Fire TV not out of some nefarious desire to confuse WREAL's customers but as a logical extension of its previous use of "Fire" on streaming media products such as its tablets. SUF/RSUF ¶ 23. There is nothing "careless" (Resp. at 16) about knowing about WREAL's mark but moving forward with a different product that targets a different market, especially as pornography is so far from what Amazon does as a company. Bageant Decl. Ex. 2 at 211:6-212:3; *see* ECF No. 177 at 14. WREAL argues Amazon wanted to "push Wreal out of the market," (Resp. 16) but the undisputed facts show the opposite: ████████████████████████████████

██████████████████████████████████████████████████        Rather –

as the material WREAL cites makes clear (RSUF ¶ 31) – Amazon's ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ [16]

---

[15] In *Frehling*, by contrast, both parties advertised in interior design magazines – *Design Times* and *House Beautiful* for one and *Interior Design* and *Architectural Digest* for the other. *Frehling*, 192 F.3d at 1339-40. Here, it is not the case that Amazon advertises in *People* and WREAL in *Us Weekly*; rather, WREAL does not advertise in magazines at all.

[16] Specifically: ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Marfoe Decl. Ex. 9 (Lindsay Dep. 158:11-16) (emphasis added), cited in RSUF ¶ 31. Nor is there anything inappropriate about wanting to "own and define" a non-trademarked name such as "Amazon Fire TV" (Resp. 16) or using the "Amazon" housemark next to "Fire TV" because—in WREAL's version of the facts, which hardly helps WREAL – Amazon wanted to distinguish its product from WREAL's (RSUF ¶57). In fact, though this fact is not necessary for this factor to weigh in Amazon's favor, Amazon used its housemark next to "Fire TV" for the same reason it used it next to "Echo" and "Fire Phone": ███████████████████████████████

█████████████████████████        Amazon's Response to Plaintiff WREAL's Additional Facts Which WREAL Contends Are Material (filed herewith) ¶57.

7.      Actual Confusion.

No reasonable fact-finder could conclude WREAL has shown actual confusion. WREAL's customers contacted it not, as WREAL falsely claims, "expressing an association" between Amazon and WREAL (Resp. at 17) but rather simply asking if WREAL's FyreTV app would be available on the Amazon Fire TV (and other platforms such as Google TV). SUF/RSUF ¶ 40; Mot. 10-11. The single inquiry to Amazon is similar; even if it were stretched as evidence of actual confusion, it is *de minimis* in light of the tens of thousands of customer service inquiries (or, in WREAL's preferred formulation, in light of WREAL's 51,000 customers) (Resp. at 17; SUF/RSUF ¶ 40). ECF No. 177 at 14-16; Mot. at 10 & n.13.[17]

WREAL also does not dispute that two separate sets of surveys, conducted at two different times, found consumer confusion to be "very low" (WREAL's Dr. Thomas Maronick) or "statistically insignificant" (Amazon's Dr. Dan Sarel). SUF/RSUF ¶¶ 47-48. Instead, WREAL claims the surveys are unreliable (*id.*) because the *Eveready* format requires a certain threshold level of "unaided"[18] awareness. Resp. at 1 n.1. However, WREAL cites no authority for this proposition (*id.*) and the leading authority disagrees *Eveready* requires a certain level of "unaided" awareness.[19] *See* Mot. at 8-9, ECF No. 250 at 5-12. Courts have stated *Eveready* is proper in reverse confusion cases without imposing a separate "unaided" awareness requirement or even requiring that the junior mark be heavily advertised or particularly well-known: in one

---

[17] Both *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge LLC*, 605 F.3d 931 (11th Cir. 2010) and *Ryder System, Inc. v. Storage & Moving Solutions, Inc.*, No. 13-61466, 2013 WL 3873231 (S.D. Fla. July 25, 2013) (cited in Resp. at 17-18) had substantial actual confusion: car dealerships representing "a large portion of [plaintiff's] Georgia business" in *Caliber* (605 F.3d at 938 n.29), and several customers contacting the plaintiff to complain about the defendant's service in *Ryder*. 2013 WL 3873231, at *3.

[18] "Unaided" awareness is measured by open-ended questions that do not cue the respondent in any way that would suggest the name of the brand.

[19] *See* Jerre B. Swann, "Likelihood of Confusion," 62 n.62 *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design* (Shari Seidman Diamond & Jerre B. Swann, eds., 2012) (*Eveready* "more closely resembles a <u>partially aided</u> awareness test: it assesses whether the junior user's mark and product cues are similar enough to those of an accessible senior brand to trigger the latter's schema in response to a source (or sponsorship or affiliation) confusion question") (emphasis added).

8

case, the junior mark was used on a short-lived "men's shopping magazine" that ran for only 20 issues.[20] WREAL's contention that consumers are not aware of the Amazon Fire TV contradicts not just WREAL's allegations that Amazon "saturate[d]the market and the evidence about Amazon's advertising spending (Mot. at 8) but the near-universal recognition of the "Amazon" brand and the ███████████████████████████ of the Amazon Fire TV.[21] Neither Dr. Maronick nor WREAL cites <u>any</u> authority for the proposition that an *Eveready* survey is inappropriate when the tested mark has been promoted by tens of millions of advertising dollars, sponsored by one of the world's most recognized brands, resulting in ███████████████.[22]

Also, if WREAL is correct that consumers are not aware of the Amazon Fire TV, then confusion is impossible.[23] WREAL claims it disputes Dr. Maronick's admission that ████████ ██████████████████████ (SUF/RSUF ¶ 49), but its additional cited testimony makes Amazon's point: ███████████████ confusion cannot be measured (*id.*) because it does not exist. Neither WREAL nor Dr. Maronick provides any explanation for how it is even logically possible for consumers to be confused by a mark ███████████████ This is

---

[20] *See Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06-550, 2007 WL 2258688, at **1, 8 (S.D.N.Y. Aug. 6, 2007); *Denimafia Inc. v. New Balance Athletic Shoe, Inc.*, No. 12-4112, 2014 WL 814532, at *20 (S.D.N.Y. Mar. 3, 2014).

[21] *See* ECF No. 214-4 (Sarel Dep. 195:7-9); Bageant Decl. Ex. 36 (Maronick Dep. at 70:17-20) (recognition of "Amazon" name); (Maronick Dep. 99:11-100:9) (total awareness of Amazon Fire TV). Amazon's internal measurements of brand awareness are highly sensitive and confidential; Amazon respectfully requests the Court redact any information about specific awareness levels in any publicly filed order.

[22] WREAL argues Dr. Maronick's surveys showing no confusion are "inadmissible" because (1) they were "not conducted to test whether there is a likelihood of confusion" and (2) Amazon cannot (for some unexplained reason) rely on WREAL's own expert's admissions. Resp. at 19. The first point is contrary to Dr. Maronick's sworn testimony. Bageant Decl. Ex. 36 (Maronick Dep. 43:12-17)████████████████████████████████ ██████████████████ (emphasis added). The second is contrary to law. Fed. R. Civ. P. 56(c)(1)(A); *In re Complaint of Boston Boat III*, No. 13-62116, 2015 WL 5444162, at *8 (S.D. Fla. Sept. 16, 2015) (relying on opposing experts' admissions in granting summary judgment).

[23] Mot. at 8-9; *see* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:10 (2014) ("When few of the senior user's customers will be exposed to or familiar with the junior user's mark, there will be no 'overwhelming' or 'swamping' effect on the senior user's mark and good will. <u>In that case, reverse confusion will be unlikely</u>.") (emphasis added).

why other courts have rejected arguments similar to WREAL's – arguing a survey is unreliable because ███████████████████████████████████ "is to argue against the theory of reverse confusion itself." *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 407 (D.N.J. 2011).[24]

**B.      No Reasonable Fact-Finder Could Find Damages** ███████████████

WREAL does not even attempt to rebut Amazon's argument that ███████████████ ███████████████████ Mot. at 20.[25] WREAL asserts it has damages to "goodwill and brand identity," (Resp. at 20) but these damages rest only on the self-serving and conclusory statements of WREAL's Rodrigo Franco, which do not create a fact dispute.[26] WREAL concedes it has lost money every year since its founding in 2007 and its revenues started declining in 2012, before Amazon launched the Amazon Fire TV. SUF/RSUF ¶¶ 16-17. WREAL does not offer any expert testimony to contradict the analysis of its financials by Amazon's expert Pat Gannon, which demonstrates WREAL has sustained no damages. SUF/RSUF ¶ 17. A reasonable fact-finder could not award damages on this record. Mot. at 19-20.

### III.      CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant summary judgment in its favor.

---

[24] WREAL also claims Dr. Sarel's survey had various technical flaws (Resp. at 19), which Amazon already refuted (Mot. at 7-8).

[25] As Amazon noted in its Motion (Mot. at 2 n.1), information about Amazon's profits on the Amazon Fire TV is highly confidential; Amazon respectfully asks the Court redact that information in any publicly filed opinion.

[26] Mr. Franco's statements cited in RSUF ¶ 18 cannot supersede his sworn and unrebutted testimony that he could identify <u>no</u> actual damage WREAL has suffered. SUF ¶ 18; *see Discovery Sun P'Ship, Ltd. v. Kapsomenakis*, No. 95-1068, 2000 WL 1881203, at *4 (S.D. Fla. June 21, 2000) (non-movant's "self-serving affidavit is insufficient to defeat a motion for summary judgment."). In *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229 (11th Cir. 2008) (cited in Resp. at 20), there was testimony as to the specific cost of particular damages items (*id.* at 1241), a far cry from Mr. Franco's conclusory assertions.

Dated: November 20, 2015          Respectfully submitted,

By:    s/Jamie Zysk Isani           

Jamie Zysk Isani (Florida Bar No. 728861)
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-1675
jisani@hunton.com

Justin A. Nelson *(pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
jnelson@susmangodfrey.com

Drew D. Hansen *(pro hac vice)*
Edgar Sargent *(pro hac vice)*
Patrick C. Bageant *(pro hac vice)*
SUSMAN GODFREY L.L.P.
1201 Third Ave, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
dhansen@susmangodfrey.com
esargent@susmangodfrey.com
pbageant@susmangodfrey.com

*Counsel for Defendant Amazon.com*

11

## CERTIFICATE OF SERVICE

**I CERTIFY** that on November 20, 2015, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/Jamie Zysk Isani

Jamie Zysk Isani

## SERVICE LIST

Carlos Nunez-Vivas
can@wnflaw.com
Daniel Foodman
df@wnflaw.com
Dennis J. Wouters
djw@wnflaw.com
John G. Marfoe
jgm@wnflaw.com
WNF Law, P.L. - Waserstein Nunez & Foodman
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Tel.: (305) 760-8500
Fax: (305) 760-8510

*Attorneys for Plaintiff WREAL, LLC*

12