**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:14-CV-21385-JAL**

WREAL, LLC, a Florida Limited Liability
Company,

      Plaintiff,

v.

AMAZON.COM, INC., a Delaware
corporation,

      Defendant.

**AMAZON'S OBJECTIONS TO OMNIBUS REPORT AND**
**RECOMMENDATIONS CONCERNING VARIOUS *DAUBERT* MOTIONS**

4064403_1

# CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................4

ARGUMENT ......................................................................................................................6

    1.    Dr. Maronick's Opinion that the *Eveready* Format Requires a Certain
    "Unaided" Awareness Level Has No Methodological Basis..................................6

        A.    Treatise Authority Rejects Dr. Maronick's View. ......................................6

        B.    Case Law is Contrary to Dr. Maronick's Opinion. ....................................9

        C.    Dr. Maronick's Own Practice and Testimony Demonstrate His
        View Has No Reliable Methodological Basis. ...........................................11

    2.    Dr. Maronick's Technical Criticisms of Dr. Sarel's Survey Have No
    Methodological Basis and Are Irrelevant. ..............................................................12

        A.    Dr. Maronick's Technical Criticisms Should Be Excluded as
        Irrelevant Because Dr. Maronick's Concession that No Survey
        Would Show Confusion Demonstrates that Addressing the
        Technical Criticisms Would Not Change the Survey Results. ...................13

        B.    Dr. Maronick's Technical Critiques Are Dr. Maronick's Own
        *Ipse Dixit* Contrary to Relevant Authority.................................................16

    CONCLUSION....................................................................................................18

# AUTHORITIES

**Cases**

*Akiro LLC v. House of Cheatam, Inc.*,
  946 F. Supp. 2d 324 (S.D.N.Y. 2013) ................................................................. 10

*Amer. Nat'l Ins. Co. v. Amer. Nat'l Inv. Advisors*,
  No. 11-cv-4016, 2014 WL 6613342 (N.D. Ill. Nov. 21, 2014) ........................... 4

*Bruce v. Teleflora*,
  No. 2:13-cv-03279, 2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) ..................... 4

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................... 3, 12, 14, 15

*Denimafia Inc. v. New Balance Athletic Shoe, Inc.*,
  No. 12-civ-4112, 2014 WL 814532 (S.D.N.Y. Mar. 3, 2014) ......................... 6, 9

*E & J Gallo Winery v. Proximo Spirits, Inc.*,
  No. 1:10-cv-00411, 2011 WL 5922090 (E.D. Cal. Nov. 28, 2011) ................... 10

*Fancaster, Inc. v. Comcast Corp.*,
  832 F. Supp. 2d 380 (D.N.J. 2011) ........................................................ 2, 10, 11

*FTC v. Washington Data Resources*,
  No. 8:09-cv-2309-T-23, 2011 WL 2669661 (M.D. Fla. July 7, 2011) ............... 4

*In re Front Loading Washing Machine Class Action Litig.*,
  No. 08-51, 2013 WL 3466821 (D. N.J. July 10, 2013) ..................................... 4

*Integrity Inc. v. Integrity Online Int'l Holdings*,
  No. 1:00-cv-1291 (N.D. Ga. Oct. 22, 2002) ....................................... 15, 16, 17

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*,
  2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ................................................. 6, 9

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) ............................................................... 14, 17

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
  970 F. Supp. 279 (S.D.N.Y. 1997) ................................................................ 10

*Smith v. Wal-Mart Stores*,
  537 F. Supp. 2d 1302 (N.D. Ga. 2008) .......................................................... 15

*Wreal, LLC v. Amazon.com, Inc.*,
  No. 15-14390 (11th Cir., Nov. 23, 2015) ......................................................... 8

**Other Authorities**

G. Kip Edwards, "The *Daubert* Revolution,"
*Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
(Shari Seidman Diamond & Jerre B. Swann, eds., 2012).................................................. 15

Jacob Jacoby, "Are Closed-Ended Questions Leading Questions,"
*Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
(Shari Seidman Diamond & Jerre B. Swann, eds., 2012).................................................. 16

Jerre B. Swann, "Likelihood of Confusion,"
*Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
(Shari Seidman Diamond & Jerre B. Swann, eds., 2012)......................................... 7, 8, 15

William G. Barber, " The Universe,"
*Trademark and Deceptive Advertising Surveys: Law, Science, and Design*
(Shari Seidman Diamond & Jerre B. Swann, eds., 2012).................................................. 17

**Rules**

Fed. R. Civ. P. 72(a) ................................................................................................................ 3

Fed. R. Evid. 702 ............................................................................................................... 4, 12

**Treatises**

J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition*
§ 23:10 (2014)................................................................................................................ 2, 8

J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition*
§ 32:174 (2014).............................................................................................................. 4, 6

## INTRODUCTION

The Court referred the parties' *Daubert* motions to Magistrate Judge Jonathan Goodman, (ECF No. 238) who issued a Report and Recommendations on December 29, 2015. ECF No. 316.[1] Magistrate Judge Goodman recommended that this Court (1) deny Wreal's motions to exclude all or part of the expert testimony of Amazon's experts Dr. Peter Lehman and Dr. Dan Sarel, (2) grant in part and deny in part Amazon's motions to exclude testimony by Wreal's experts Jesse David and Dr. Linda Williams, and (3) deny Amazon's motion to exclude certain testimony by Wreal's expert Dr. Thomas Maronick. *Id.* at 2.

Amazon objects only to the third recommendation, related to Wreal's Dr. Maronick. As this Court may recall from the preliminary injunction proceedings, Dr. Maronick is Wreal's survey expert. He conducted likelihood of confusion surveys using the well-known *Eveready* survey format in April 2014 – after Wreal had alleged, subject to Rule 11 penalties, that Amazon had saturated the marketplace with advertising for the Amazon Fire TV. *See* ECF No. 1 at ¶¶33-34 (Amazon "saturate[d] the marketplace" through an "immersive advertising campaign" for the Amazon Fire TV); ¶ 59 (referring to Amazon's "massive, national advertising campaign, encompassing print, television, and internet advertising."). One would think, given Wreal's allegations of market saturation, that Dr. Maronick's April 2014 surveys would have found confusion if any existed. Yet they did not: Dr. Maronick memorably testified at the preliminary injunction hearing, over Wreal's objection, that his surveys found "very low" consumer confusion. ECF No. 206-1 Ex. 2 (hereinafter, "PI Tr.") at 378:9-22.

About nine months later, Dr. Maronick disclosed his expert report in this case. ECF No. 212-2 Ex. 4 (hereinafter, "Maronick Rep"). Even later, after the close of expert discovery, he finally produced the survey documents from his April 2014 survey, which show beyond a doubt – as Dr. Maronick conceded – that consumers did not mistakenly believe Amazon was responsible for Wreal's pornographic FyreTV streaming pornography service or Fyre BoXXX

---

[1] ECF No. 316 is sealed. Judge Goodman issued an unsealed version of the Report and Recommendations, with minor redactions, on January 7, 2016. ECF No. 318.

pornographic set-top box. *See* ECF No. 212-1 Ex. 2 (hereinafter, "Maronick Dep.") at 35:25-36:12. Dr. Maronick offered the opinion that his surveys had not shown confusion because consumers were not aware of the Amazon Fire TV (Maronick Rep. at ¶7(i)) – an admission that, as Amazon noted in its briefing on the Motion for Summary Judgment currently pending before this Court, is not only inconsistent with the allegations in Wreal's Complaint but "is to argue against the theory of reverse confusion itself." *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 407 (D.N.J. 2011); ECF No. 205 at 2, 9; ECF No. 288 at 1-2, 9-10.[2] As this Court has already held, reverse confusion requires a claim that the defendant junior user has saturated the market with advertising that makes consumers aware of its mark. ECF No. 177 at 8. If, as Dr. Maronick now claims, consumers are <u>not</u> aware of the mark, then reverse confusion cannot exist. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (2014) (hereinafter "McCarthy on Trademarks") ("When few of the senior user's customers will be exposed to or familiar with the junior user's mark, there will be no 'overwhelming' or 'swamping' effect on the senior user's mark and good will. <u>In that case, reverse confusion will be unlikely</u>.") (emphasis added).

Amazon does not seek to exclude Dr. Maronick's April 2014 surveys and his explanation that those surveys do not show confusion because consumers are not aware of the Amazon Fire TV; this evidence is fatal to Wreal's reverse confusion claim. *See* ECF No. 212 at 1; ECF No. 308-1 at 24 n.16. However, Dr. Maronick offered two additional opinions in his declaration that Amazon does move to exclude. First, Dr. Maronick opined that an *Eveready* survey is only appropriate where a certain level of so-called "unaided" awareness exists. Maronick Rep. at ¶7(i). Second, Dr. Maronick opined that Dr. Sarel's survey had several technical errors affecting its validity. *Id.* at ¶¶7-8.

---

[2] This Court need not rule on Amazon's objections should the Court grant summary judgment to Amazon. As Amazon lays out in detail in its Motion for Summary Judgment, no reasonable juror could find a likelihood of confusion here. Even if admissible, Dr. Maronick's testimony not only fails to create a factual issue but Wreal has designated Dr. Maronick solely as a rebuttal expert in any event and thus cannot rely on Dr. Maronick to create an issue of fact.

Neither opinion is admissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The first opinion is contrary to the law and the relevant authority, most notably the very ABA survey evidence treatise that Dr. Maronick regards as authoritative. Dr. Maronick cites <u>no</u> authority for the proposition that an *Eveready* survey is improper without a preliminary showing that "unaided" awareness reaches a certain level, and in fact the ABA survey evidence treatise says in so many words that *Eveready* is a partially aided awareness test, as opposed to an "unaided" awareness test. Dr. Maronick's opinion on this point is incoherent. Because Dr. Maronick is simply making up a new standard, he has no consistent methodology to apply. Dr. Maronick cannot even define what an appropriate level of "unaided" awareness would be. Indeed, Dr. Maronick has never conducted a pre-test of awareness before running an *Eveready* survey, which undermines the validity of his methodology – Dr. Maronick himself has never actually followed it. Nor does any case support Dr. Maronick's approach: cases do not require a preliminary showing of "unaided" awareness before permitting an *Eveready* survey.

The second opinion is also unreliable and irrelevant. Dr. Maronick's claims of technical errors in Dr. Sarel's survey are based on Dr. Maronick's own say-so contrary to authority. For example, Dr. Maronick opines that an open-ended question asking "Who puts out or offers the adult video on demand service or product you just saw on these web pages?" is a leading question. *See* Maronick Rep. at 19. Yet this opinion is not only contrary to the ABA survey treatise guidance; it is contrary to the form of the survey questions in the original *Eveready* case. Dr. Maronick's claim of technical flaws is also irrelevant. As Dr. Maronick believes no survey will show confusion, then it cannot possibly matter that Dr. Sarel used certain words rather than others in his questions, showed one image rather than another to his respondents and so on: even if Dr. Sarel had redesigned the survey in exactly the way Dr. Maronick claims is proper, the result would be the same: no confusion.

The Court must modify or set aside any part of a magistrate judge's order on a non-dispositive matter that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Amazon respectfully submits that the Magistrate Judge's recommendations on the Dr. Maronick motion

3

are contrary to law; Amazon therefore requests that the Court not adopt the Magistrate Judge's recommendations on the Dr. Maronick motion and instead grant Amazon's motion, excluding Dr. Maronick's opinions except for (1) his April 2014 surveys showing no confusion, and (2) his explanation that surveys do not show confusion because consumers are unaware of the Amazon Fire TV.

Many courts have excluded or criticized Dr. Maronick's testimony on survey matters in recent years. *See, e.g.*, *Amer. Nat'l Ins. Co. v. Amer. Nat'l Inv. Advisors*, No. 11-cv-4016, 2014 WL 6613342, at *17 (N.D. Ill. Nov. 21, 2014) (giving "little weight" to Dr. Maronick's likelihood of confusion survey); *In re Front Loading Washing Machine Class Action Litig.*, No. 08-51, 2013 WL 3466821, at *7 (D.N.J. July 10, 2013) (excluding Dr. Maronick's internet-based consumer survey because it "does not satisfy Fed. R. Evid. 702"); *Bruce v. Teleflora*, No. 2:13-cv-03279, 2013 WL 6709939, at *7 (C.D. Cal. Dec. 18, 2013) (noting "manifold" problems with damages model based on Dr. Maronick's consumer survey, including that Dr. Maronick did not survey proper audience because the "survey respondents were not necessarily actual putative class members"); *FTC v. Washington Data Resources*, No. 8:09-cv-2309-T-23, 2011 WL 2669661, at *2 (M.D. Fla. July 7, 2011) (describing Dr. Maronick's expert testimony about consumer perceptions as "deriv[ing] from an incomplete review of pertinent evidence," "purely speculative," and "incomplete, unreliable, and unhelpful"). This Court should do the same and refuse to permit Dr. Maronick's unfounded and irrelevant testimony to go before the fact-finder.

## FACTUAL AND PROCEDURAL BACKGROUND

Amazon's survey expert is Dr. Dan Sarel, a tenured professor of marketing at the University of Miami, with B.A. and M.B.A. degrees from the Hebrew University of Jerusalem and a doctorate specializing in marketing from the Harvard Business School. ECF No. 130 at 37 (citing PI Tr. 322:16-25). Dr. Sarel conducted a consumer survey using the *Eveready* format,[3]

---

[3] An *Eveready* survey shows respondents an example of the senior user's mark as used in commerce (for a reverse confusion case) and then asks respondents a series of open-ended questions designed to test whether respondents believe the junior user is the source, affiliate, or sponsor of the senior user's mark. *See* McCarthy on Trademarks § 32:174.

which he testified was the "most commonly used" type of likelihood-of-confusion survey. ECF No. 130 at 37 (citing PI Tr. 323:23-324:8). As is appropriate when testing reverse confusion, Dr. Sarel surveyed Wreal's potential customers rather than Amazon's. *Id*. at 37 (citing PI Tr. 361:24-363:13). Dr. Sarel showed respondents several pages from the FyreTV.com website, representing how consumers in the marketplace would likely encounter the FyreTV and FyreTV.com marks. *Id*. (citing Def's Ex. Sarel 2, PI Tr. 353:6-15, 354:3-8). The survey then asked a series of questions to test whether respondents associated the marks with Amazon. *Id*. at 38 (citing Tr. 332:4-16, Def's Ex. Sarel 1; Def's Ex. Sarel 4). Dr. Sarel's survey showed a confusion rate of one percent, which he described as "statistically insignificant" and "nonexistent." *Id*. (citing Tr. 332:17-25); ECF No. 206-1 Ex. 37 (hereinafter, "Sarel Rep.") at ¶¶1-3, 36-40, Ex. 1 ¶¶46-55.

Wreal's survey expert, Dr. Thomas Maronick, is a professor at Towson University. In April 2014, after Amazon released the Amazon Fire TV, Dr. Maronick himself conducted *Eveready* surveys that showed "very low" consumer confusion. PI Tr. 378:9-22; Maronick Dep. at 35:25-36:12 ("extremely low"); *id*. at 157:16-21. Dr. Maronick testified that, in his opinion, surveys would show no confusion in situations where there is low awareness of the product. *Id*. at 13:6-11 ("If there is no awareness, there can't be confusion.").

Notwithstanding Dr. Maronick's prior opinion at the preliminary injunction hearing that an *Eveready* survey was appropriate in this case, Dr. Maronick changed his tune in his rebuttal expert report. Dr. Maronick criticized Dr. Sarel's survey for two reasons. First, Dr. Maronick claimed, the *Eveready* survey format is only proper where there is a certain (undefined) threshold level of so-called "unaided"[4] awareness, which Dr. Maronick claims the Amazon Fire TV had not reached when Dr. Sarel conducted his surveys in October-November 2014. Maronick Rep. at ¶10-26. Second, Dr. Maronick repeated his opinion from the preliminary injunction stage regarding alleged technical deficiencies in Dr. Sarel's survey. *Id*. at ¶¶27-66.

---

[4] As Amazon will explain in more detail later in this Motion, "unaided" awareness is awareness measured by open-ended questions with no stimulus or other cue suggesting the name of the brand tested.

Amazon moved to exclude these two opinions. ECF No. 212. The Magistrate Judge rejected Amazon's arguments and recommended that Dr. Maronick be allowed to testify as to the two opinions Amazon moved to exclude. ECF No. 316.

## ARGUMENT

### 1. Dr. Maronick's Opinion that the *Eveready* Format Requires a Certain "Unaided" Awareness Level Has No Methodological Basis

There is no disagreement that the *Eveready* survey format is the proper way to test for reverse confusion in this case. ECF No. 252 at 10 (Wreal admits, "[Dr. Maronick] did not criticize the *Eveready* format in general. In fact, he explained that an *Eveready* survey would be the most reliable survey methodology to test for confusion in this case.").[5] Dr. Maronick himself previously conducted an *Eveready* survey in this case and testified at the preliminary injunction hearing that such a survey was appropriate. PI Tr. at 373:15-16 ("the correct format is what's called the Eveready format"). Dr. Maronick now claims, however, that an *Eveready* survey can only be run when there is a certain threshold level of "unaided" awareness. Maronick Rep. at ¶7(i). Dr. Maronick is constructing this "expert" opinion out of nothing: no authority supporting this view exists and in fact the relevant authority is directly contrary to this view.

#### A. Treatise Authority Rejects Dr. Maronick's View.

The authoritative survey guidance – the ABA survey evidence treatise, which Dr. Maronick agrees is authoritative (Maronick Dep. at 77:5-8) – disagrees with Dr. Maronick's view that *Eveready* requires a certain level of "unaided" awareness. First, the treatise states that *Eveready* itself partially aids the respondent. Second, the treatise states that – regardless of the level of awareness – *Eveready* is appropriate as the only marketplace-replicating survey format

---

[5] This accords with the relevant authority. *See* McCarthy on Trademarks § 32:174 (*Eveready* is "a standard and widely-accepted format to prove the likelihood or non-likelihood of confusion"). Courts have confirmed *Eveready* is especially useful in reverse-confusion cases such as this one. *See Denimafia Inc. v. New Balance Athletic Shoe, Inc.*, No. 12-civ-4112, 2014 WL 814532, at *20 (S.D.N.Y. Mar. 3, 2014) ("The Court is satisfied that [defendant's expert] had good reason for employing the *Eveready* format for reverse confusion analysis."); *Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, 2007 WL 2258688, at *8 (S.D.N.Y. Aug. 6, 2007) (striking survey expert who did not conduct *Eveready* survey in reverse-confusion case).

in situations where the two products do not appear side by side. In addition, Dr. Maronick's position is inconsistent with another treatise: the McCarthy treatise on trademarks specifically states that a survey is appropriate in a reverse confusion case after the market is saturated, which Wreal alleged in its Complaint had happened before both Dr. Maronick and Dr. Sarel ran their surveys.

First, the ABA survey evidence treatise does not impose a preliminary unaided awareness requirement before endorsing *Eveready*. To the contrary, it states *Eveready* "more closely resembles a <u>partially aided</u> awareness test: it assesses whether the junior user's mark and product cues are similar enough to those of an accessible senior brand to trigger the latter's schema in response to a source (or sponsorship or affiliation) confusion question." (emphasis added). Jerre B. Swann, "Likelihood of Confusion," 62 n.62 *in Trademark and Deceptive Advertising Surveys: Law, Science, and Design* (Shari Seidman Diamond & Jerre B. Swann, eds., 2012) (hereinafter "ABA Survey Evidence Treatise"). As the treatise explains, *Eveready* does not require some unspecified level of <u>unaided</u> awareness; the *Eveready* format itself actually "aids" respondents by presenting them with a stimulus that is somewhat close to the brand tested to see if that stimulus "cues" or "aids" the respondent to think about the brand.[6] As a partially aided awareness test, *Eveready* is thus appropriate for testing alleged infringement by a "top of mind" mark: one that is "highly accessible (<u>internally available</u>) in memory, enhancing the likelihood that it will be cognitively cued by a similar junior use." *Id.* at 53. "Top of mind" and "highly accessible" are synonyms for <u>all</u> awareness, not just "unaided" awareness – as the treatise says, a "top-of-mind" or "highly accessible" brand is one that can be "cued" (or, in aided awareness language, "aided") with a stimulus. And as Dr. Maronick does not contest that total awareness

---

[6] As Dr. Sarel explained: "[I]f I am presenting like in our study a product that has a similar name, by doing that I am reminding them of that specific product. So, if they thought since we are aiding them, quote, unquote, by mentioning FyreTV.com, and using the data we just described or discussed, when the name was mentioned many of them could recall it, then there is no reason why they couldn't make that association at that time." ECF No. 214-4 (hereinafter, "Sarel Dep.") at 219:15-25.

(including cued or aided awareness of the Amazon Fire TV) is high (Maronick Dep. at 94:17-24, 100:6-13), he has no basis for contesting that *Eveready* is a perfectly appropriate format to use here.

Second, the ABA survey evidence treatise provides an additional reason for rejecting the opinion that *Eveready* is appropriate only where there is certain "unaided" awareness. The treatise notes that *Eveready* is the proper format for testing infringement where two marks "do not appear proximately or otherwise overlap in the marketplace and can thus be compared, if at all, only in the mind." Swann, "Likelihood of Confusion," at 77, *in* ABA Survey Evidence Treatise; *see also* ECF No. 214-2 Ex. 1 (hereinafter, "Sarel Aug. 2015 Decl.") at ¶28 ("The EVEREADY format is especially appropriate when the two marks are generally not available and/or not evaluated side-by-side by consumers."). This is the situation here: Amazon Fire TV and Wreal's FyreTV do not appear next to one another in the marketplace like two brands of orange juice on a grocery store shelf – to the contrary, the parties agree they are <u>never</u> sold in the same retail outlets. ECF No. 206 at ¶¶41-42. This means, according to the principles in the ABA survey evidence treatise, *Eveready* would be appropriate even if the Court were to conclude consumers were unaware of the Amazon Fire TV: *Eveready* is appropriate as the "only marketplace-replicating standard." Swann, Likelihood of Confusion, at 62 n.65.[7]

Third, Dr. Maronick's opinion also contradicts the McCarthy treatise. McCarthy on Trademarks specifically states that surveys are appropriate after "the junior user's saturation of the market with its mark." McCarthy on Trademarks § 23:10 Here, Wreal itself has alleged saturation of the market, pleading in its complaint that "Amazon has leveraged its massive size, marketing dollars, and household name to saturate the marketplace." ECF No. 1 at ¶33. Indeed, it repeats those arguments in its brief appealing this Court's denial of the preliminary injunction

---

[7] *Eveready* will then show no confusion because confusion does not exist: "This leaves, of course, a question as to how likelihood of confusion can be tested when a weak mark does not appear in proximity to or otherwise overlap a similar junior use. As may be gleaned from the foregoing, the answer is that confusion cannot be assessed and, under such circumstances, <u>likely cannot exist</u>." Swann, Likelihood of Confusion, at 78 (emphasis added).

motion. *Wreal, LLC v. Amazon.com, Inc.*, No. 15-14390 (11th Cir., Nov. 23, 2015) (Brief for Appellant) at 7. Thus, this situation is literally a textbook case for using a survey, and indeed Dr. Maronick himself used the same Eveready survey format. Dr. Maronick's new opinion to the contrary does not square with the relevant treatises or with Wreal's own theory of the case.

The Magistrate Judge agreed with many of these principles – specifically, that *Eveready* is a "partially aided" awareness test and that the ABA treatise's use of "top of mind" and "highly accessible" refer to <u>aided</u> rather than unaided measures of awareness. *See* ECF No. 316 at 29. The Magistrate Judge also correctly noted that Wreal has alleged market saturation here. *Id*. at 29 ("Indeed, Wreal emphasized in its complaint that Amazon saturated the market through an immersive advertising campaign, and it later argued in its motion for preliminary injunction that the product launch for Fire TV was 'extensively covered by the press' and included a 'massive' and 'highly memorable' TV campaign."). However, the Magistrate Judge did not follow these principles through to their logical conclusion: Dr. Maronick's opinion that *Eveready* requires a certain "unaided" awareness level is contrary to the relevant authority, and thus should be excluded.

**B.     Case Law is Contrary to Dr. Maronick's Opinion.**

Dr. Maronick's opinion finds no support in case law: no case has <u>ever</u> imposed a threshold "unaided" awareness requirement before permitting an *Eveready* survey. Courts in reverse confusion cases have affirmed the *Eveready* format without requiring any specific level of unaided awareness of the junior mark. *See Denimafia*, 2014 WL 814532, at *20 (rejecting argument that *Eveready* "only is appropriate in cases of forward confusion involving a senior user with a strong mark" and finding survey expert had "good reason for employing the Eveready format for reverse confusion analysis"); *Kargo Global*, 2007 WL 2258688, at *8 (*Eveready* format "far more replicative of actual marketplace conditions" in reverse confusion case than survey presenting marks side-by-side). These courts did not impose any threshold awareness requirement – aided or unaided – nor do the facts of these cases suggest any particularly high awareness of the junior mark. In *Kargo Global*, for example, the junior mark

9

was used on a short-lived "men's shopping magazine" that ran for only 20 issues (*Kargo Global*, 2007 WL 2258668, at *1); in *Denimafia*, the junior user was a running shoe company that used a particular mark with its "Minimus" shoe brand (*Denimafia*, 2014 WL 814532, at **3-4).

On the relatively few occasions when courts have considered what type of awareness is required for an *Eveready* survey, they have taken a holistic approach, looking at multiple indicia of awareness rather than requiring a specific numerical threshold of one particular kind of awareness. For example, in *E & J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-cv-00411, 2011 WL 5922090 (E.D. Cal. Nov. 28, 2011), the plaintiff sought to exclude an *Eveready* survey on the ground "that the Eveready methodology is appropriate only where participants in the survey have an immediate recall or unaided awareness of the senior trademark." *Id.* at *2 (internal quotation omitted). The court rejected this argument, finding that the survey was "conducted according to accepted principles," (*id.* at *7), particularly noting the inconsistency between the argument that survey respondents were not aware of the tested mark and the plaintiff's own allegations in the complaint's allegations that "substantial sums have been expended in promotion and advertising. . . ." *Id.* at *6.

The court took the same approach in *Fancaster*. The *Fancaster* court did not require some preliminary showing of "unaided" awareness but rather held *Eveready* was appropriate in light of the "substantial nationwide advertising campaign" Comcast used to promote its mark. 832 F. Supp. 2d at 406.[8] (Of course, Wreal alleged, and the evidence demonstrates, that Amazon

---

[8] The cases Wreal has cited do not require a certain threshold level of unaided awareness as a prerequisite to *Eveready* admissibility. The court in *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279 (S.D.N.Y. 1997), a forward confusion case, observed that the *Eveready* design might underestimate likelihood of confusion "where the survey respondents are not familiar with the senior user's product," *id.* at 291, but did not attempt to quantify what level of awareness (aided or unaided) would count as sufficient "familiar[ity]" for *Eveready* to be appropriate. Even so, the *Simon & Schuster* court did not hold the survey was unreliable as a matter of law; rather, after a bench trial, it simply assigned it "reduced evidentiary significance." *Id.* at 299. *Akiro LLC v. House of Cheatam, Inc.*, 946 F. Supp. 2d 324 (S.D.N.Y. 2013), another forward confusion case, simply repeats the formulation that *Eveready* is appropriate for marks "highly accessible in a consumer's memory" (*id.* at 339), without attempting to quantify what level of awareness and what type of awareness would be required. *Akiro* held this awareness argument meant the jury

has engaged in substantial nationwide advertising for the Amazon Fire TV.) Contrary to Wreal's argument before the Magistrate Judge, the *Fancaster* court did <u>not</u> exclude one of the surveys (a March 2009 survey) because awareness of the junior mark was not sufficiently high. Rather, the court excluded the March 2009 survey because it did not replicate market conditions, presenting respondents with a printout (not an image on a computer) of one site and a static image of the other. *Id*. at 405-06. The exclusion of the March 2009 survey had <u>nothing</u> to do with awareness, much less providing support for the specific "unaided" awareness test Dr. Maronick urges here.

### C.   Dr. Maronick's Own Practice and Testimony Demonstrate His View Has No Reliable Methodological Basis.

Even assuming incorrectly that Dr. Maronick's opinion is legally correct, his testimony on this point still fails because it lacks a reliable methodological basis. Dr. Maronick's own practice and testimony shows his "unaided" awareness opinion is unreliable. As Dr. Maronick opines that *Eveready* is <u>only</u> appropriate where there is a preliminary showing that the mark to be tested has high "unaided" awareness in the marketplace, one would think that Dr. Maronick would have followed this methodology in other cases, conducting a preliminary test to make sure that there is sufficiently high "unaided" awareness before conducting an *Eveready* survey. And yet, when Dr. Maronick has conducted *Eveready* surveys for litigation in his work prior to this case, he has <u>never</u> conducted a separate study first to determine whether awareness is sufficiently high for him to feel comfortable, according to his now-avowed methodology, using the *Eveready* format. Maronick Dep. at 113:4-6. Indeed, he did not follow his methodology <u>in this very case</u>. Even though Dr. Maronick's own April 2014 surveys followed the *Eveready* format (*id*. at 159:20-23), he did <u>not</u> first attempt to measure the "unaided" awareness of the Amazon Fire TV. This failure to follow his own methodology demonstrates <u>Dr. Maronick himself</u> does not actually

---

could weigh the survey evidence in different ways: a reasonable juror could find no actual confusion because the survey "follows a standard, generally accepted survey format and presents a definitive finding that a negligible number of consumers were confused;" on the other hand, "a reasonable juror could conclude that the mark is weak enough to diminish somewhat the evidentiary weight of the . . . survey." *Id*. This provides no support for Dr. Maronick's argument that *Eveready* is proper only with a certain threshold of unaided awareness.

believe his own theory, as he has never followed this supposed methodology in the past.

Dr. Maronick cannot even articulate how his methodology should be applied. At his deposition, Dr. Maronick could not explain when "unaided" awareness reaches a level where *Eveready* is appropriate:

> Q. How do we know when we are at that point of the curve where you can measure confusion?
>
> A. I don't know that you can. It is not a magic number. . . .

*Id.* at 53:11-14. Dr. Maronick has no methodology at all for determining when *Eveready* is permissible:

> Q. Setting aside a number, is there any methodology, or technique, or set of principles you would apply to determine whether awareness is high enough to draw a conclusion?
>
> A. I don't know that there is. It is going to be a judgment call.

*Id.* at 55:22-56:3. Dr. Maronick cannot articulate a threshold level of awareness where he believes it would be appropriate to conduct an *Eveready* survey.

> Q. What level of awareness would you want to see before conducting an Eveready study in this case?
>
> A. I don't know if I thought about that. I really don't know. Clearly, it would seem to me you would have to have an awareness level of above 50 percent, but I really don't know. Clearly it would have to be some relatively – a magnitude of that type, but again, I just don't know.

*Id.* at 50:11-19. This is exactly the type of junk science that *Daubert* prohibits – a purported "scientific" opinion with no methodology and an expert who concedes that any attempt to apply the opinion's framework amounts to pure speculation. *See Daubert*, 509 U.S. at 590 (Rule 702's reference to "knowledge" "connotes more than subjective belief or unsupported speculation").

**2.    Dr. Maronick's Technical Criticisms of Dr. Sarel's Survey Have No Methodological Basis and Are Irrelevant.**

Dr. Maronick made a number of technical critiques of Dr. Sarel's survey: he argued that Dr. Sarel should have surveyed a slightly different universe, used slightly different words in asking his questions, showed a slightly different image to survey respondents before asking the

*Eveready* questions, and so on. Maronick Rep. at ¶¶27-66. Dr. Maronick's technical critiques of Dr. Sarel's survey should be excluded because they are irrelevant: as Dr. Maronick has conceded no survey would show confusion, then his technical criticisms are irrelevant because correcting them would not change the survey's result. In addition, Dr. Maronick's technical criticisms should be excluded as contrary to relevant authority.

**A. Dr. Maronick's Technical Criticisms Should Be Excluded as Irrelevant Because Dr. Maronick's Concession that No Survey Would Show Confusion Demonstrates that Addressing the Technical Criticisms Would Not Change the Survey Results.**

There is no debate that Dr. Maronick's opinion is that no survey will show confusion at present because, in Dr. Maronick's view, consumers are unaware of the Amazon Fire TV. Dr. Maronick's testimony could not be clearer:

> Q: You testified that in your view, based on the data available to you at this time, no survey would find consumer confusion, likely consumer confusion, but when that time comes, Eveready is probably the best format?
>
> A: That's correct. That's my judgment, yes.

Maronick Dep. at 160:11-17.

> Q. Would you agree that no study that you can think of now would find a likelihood of confusion at this time?
>
> A. I don't think so, but again, I don't know the level of awareness today.

*Id*. at 124:22-125:2.

Put aside for a moment the fact that – as Amazon argued in its summary judgment motion pending before this Court – this concession itself is another reason why Wreal's claims cannot survive summary judgment. ECF No. 205 at 2, 9; ECF No. 288 at 1-2, 9-10. This concession also makes Dr. Maronick's various technical criticisms irrelevant. If it is true that no survey will show confusion because consumers are not aware of the Amazon Fire TV, then how can it possibly be relevant that Dr. Sarel asked questions with some words rather than others, showed one image rather than another, and so on? Dr. Maronick has conceded that even if Dr. Sarel conducted the survey in exactly the way that Dr. Maronick thinks proper – used exactly the

13

words Dr. Maronick prefers, showed the stimulus image Dr. Maronick thinks is appropriate, and so on – the survey would <u>still</u> show no confusion. Given this concession, Dr. Maronick's technical critiques are the essence of irrelevant evidence: they are quibbles that will confuse the jury because Dr. Maronick has conceded that – even if they were addressed – the survey results would be the same.

If Dr. Maronick had not made this concession, there would have been a very easy way for Dr. Maronick to demonstrate that his technical criticisms actually had some relevance: he could have tested his hypothesis that Dr. Sarel's survey had "fatal flaws" that made in unreliable by re-running Dr. Sarel's survey with the alleged "fatal flaws" corrected to see if it affected the survey results. This is a fundamental *Daubert* principle: whether a purportedly scientific methodology "can be (and has been) tested." *Daubert*, 509 U.S. at 593. The Eleventh Circuit has applied this principle to exclude testable-but-untested expert opinions. *See, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1251 (11th Cir. 2005) ("There is no doubt that [the expert's] theory . . . can be tested, as can most theories; but, he has offered no evidence of any testing of his theory, and therefore he has shown no proof for support of his opinions by the scientific community."). Dr. Maronick, of course, did not test his hypothesis that the so-called "fatal flaws" in Dr. Maronick's survey actually affected its validity because he already knew what a test would show: the supposed "fatal flaws" did <u>not</u> affect Dr. Sarel's survey validity because Dr. Maronick believes that <u>any</u> survey at present would show no confusion.

This is where the Magistrate Judge's reasoning erred. The Magistrate Judge rejected Amazon's argument because he found "it is illogical to require an expert to conduct a survey that remedies the alleged problems in the original survey when that expert's opinion is that it is premature for any survey to be conducted at all" and because "[w]hile Amazon in its motion argued that Dr. Maronick's opinion on Dr. Sarel's survey should be excluded because he failed to conduct his own survey, it later conceded at the hearing that Dr. Maronick's omission is not actually a reason for excluding Dr. Maronick." ECF No. 316 at 38. This is incorrect.

It is true that Dr. Maronick could have offered some basis other than testing his

hypothesis for showing that the technical criticisms would have affected the survey's results. *Daubert* itself permits this: it explains that the reliability of an expert's opinion can be established not just by testing but by "peer review and publication," showing a "known or potential error rate," or by showing "general acceptance" in a relevant scientific community. *Daubert*, 509 U.S. at 593. This is why Amazon's counsel stated (accurately) that testing a theory is not the only way to show a theory's reliability. *See* ECF No. 305 at 235-36 ("THE COURT: And you are not taking the position that the expert has to run his or her own survey. Correct? MR. NELSON: Correct, your honor."). However, as Amazon's counsel also (accurately) stated, a survey expert does have an obligation to show that his or her opinion is relevant by showing that their so-called technical criticisms would have affected the survey's result – which can be accomplished by testing the hypothesis.

> THE COURT . . . What [Amazon] is saying is that that expert – let's call it the critical expert, an expert who criticizes someone else's survey – can't testify unless he or she explains how testing those criticisms would have made a difference in the result if they had been removed. That's your position, correct?
>
> MR. NELSON: Correct, your honor.

*Id*.

This is the law. "If *Daubert* and its progeny require a reliable foundation for opinions based on survey research, it hardly seems unfair to require something more than the critiquing expert's opinion that the other guy 'got it wrong.'" G. Kip Edwards, "The *Daubert* Revolution and Lanham Act Surveys," 361, in ABA Survey Evidence Treatise; Jerre B. Swann, "Survey Critiques," 375, in ABA Survey Evidence Treatise ("Critiques should receive the same analysis and be as subject to *Daubert* challenge as the surveys as to which they opine."); ECF No. 212-1 Ex. 1 (attaching *Integrity Inc. v. Integrity Online Int'l Holdings*, No. 1:00-cv-1291, at 1-2 (N.D. Ga. Oct. 22, 2002) (excluding rebuttal survey expert who did not conduct his own survey)).[9]

---

[9] Wreal cited cases to the Magistrate Judge referencing critiquing expert testimony; however, none of Wreal's cases support the admission of Dr. Maronick's particular critiques. The only case Wreal cites involving a *Daubert* challenge is *Smith v. Wal-Mart Stores*, 537 F. Supp. 2d

Here, with an admission that no survey would show confusion, which demonstrates that testing the hypothesis would not change the results, Dr. Maronick was left with <u>no basis at all</u> for the relevance of his technical critiques. *See id*. at 5 ("[Critiquing expert] has not indicated <u>how</u> the defects he claims are present in the survey adversely affected the reliability of the survey; his testimony consists solely of criticisms of the survey's alleged defects, which are capable of being brought out through cross-examination.").

The Magistrate Judge disagreed with the idea that Dr. Maronick's "critiques have no relevance as he believes there is no survey design that could show reverse confusion." ECF No. 316 at 39. He explained that Dr. Maronick's view was not that no survey could ever show confusion but that an *Eveready* survey could not show confusion as of October 2014. *Id*. This correctly states Dr. Maronick's view, but in fact it proves Amazon's point. If – as all parties seem to agree – it is Dr. Maronick's view that no *Eveready* survey could show confusion when Dr. Sarel conducted his survey, then Dr. Maronick just sows confusion by quibbling with the words, stimulus, and universe Dr. Sarel used, and these quibbles should be excluded as irrelevant.

### B.  Dr. Maronick's Technical Critiques Are Dr. Maronick's Own *Ipse Dixit* Contrary to Relevant Authority.

There is another problem with Dr. Maronick's technical criticisms: they are contrary to the authority in his field, and he cites no authority for his departure from professional standards. For example:

- Dr. Maronick asserted without citation that an open-ended question in Dr. Sarel's survey – "Who do you think puts out or offers the adult video on demand service or product you just saw on these web pages?" – was a leading question. Maronick Rep. at ¶¶54-60. And yet, as the ABA's survey evidence treatise properly notes, an open-ended question that "directs attention only to the topic of the question" (here, the service or product at issue) is not a leading question.[10]

---

1302 (N.D. Ga. 2008), but there is no suggestion in the decision that the party seeking exclusion argued the experts did not re-run the survey with the supposed flaws corrected.

[10]  Jacob Jacoby, "Are Closed-Ended Questions Leading Questions," 262, *in* ABA Survey Evidence Treatise.

- Dr. Maronick opined that Dr. Sarel should have counted certain respondents as confused who did not mention Amazon or give any indication they were thinking about Amazon – and yet Dr. Maronick was forced to concede on cross-examination at the preliminary injunction hearing that he was aware of no academic literature that supported such a methodology. Maronick Dep. at 386:2-13.

- Dr. Maronick criticized Dr. Sarel for defining his survey universe as including persons who visited or plan to visit adult websites that require payment for full access to adult content (instead of persons who actually paid for adult content) (Maronick Rep. at ¶¶27-40) and for not attempting to match the demographics of his survey sample to an (old) informal survey at Wreal of its customers (*id.* at ¶41). However, as the ABA's survey treatise notes, "in cases alleging reverse confusion . . . the relevant universe is the senior user's potential customers."[11] Dr. Sarel noted that Wreal itself advertised on websites that showed adult content for free but required payment for full access to adult content (Sarel Rep. at ¶29); Dr. Maronick cites no authority for the proposition that it is inappropriate to select a survey universe that matches the plaintiff's actual target audience for advertising, and indeed his own survey universe was <u>broader</u> than Dr. Sarel's.[12]

With opinions that are contrary to the relevant authority, Dr. Maronick's technical critiques are based only on his own *ipse dixit*, which not proper. *See McClain*, 401 F.3d at 1244 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). The Court should be doubly-skeptical about permitting critiques based only on Dr. Maronick's own say-so to go before the fact-finder, given the many courts that recently have excluded or given little weight to Dr. Maronick's opinions on survey matters. *See* ECF No. 130 at 39 n.18 (collecting cases). There is no reason to permit a frequently excluded expert to come before a fact-finder and give confusing testimony based on his own say-so, nothing more – especially where Dr. Maronick himself used many of these same alleged "flaws" in his own survey <u>in this</u>

---

[11] William G. Barber, "The Universe," 31, *in* ABA Survey Evidence Treatise.

[12] In fact, when Dr. Maronick conducted surveys for this case, he did exactly what he criticizes Dr. Sarel for doing: he asked only whether persons had streamed adult content rather than limiting his audience more narrowly to persons who paid for adult content. Maronick Dep. at 134:9-15 ("Q. You didn't ask here about people who paid for or will pay for streaming adult content, you just asked them whether they stream adult content, correct? A. That's correct, yes. Q. No additional qualification? A. That's correct.").

<u>very case</u>. As none of Dr. Maronick's technical criticisms rely on particular application of expertise, they are not so technical that they cannot be brought out on cross-examination – they do not need the aid of a sponsoring expert to give them an artificial air of credibility. *See Integrity Inc.*, at 5-6 (excluding critiquing expert who did not conduct a survey because, *inter alia*, criticisms could be brought out on cross-examination).

<u>**CONCLUSION**</u>

For the foregoing reasons, Amazon respectfully requests that the Court not adopt the Magistrate Judge's Report and Recommendations as it relates to Dr. Maronick and instead grant Amazon's motion to exclude certain opinions of Dr. Maronick.

Dated: January 12, 2016    Respectfully submitted,

By:  s/Jamie Zysk Isani

  Jamie Zysk Isani (Florida Bar No. 728861)
  HUNTON & WILLIAMS LLP
  1111 Brickell Avenue, Suite 2500
  Miami, Florida 33131
  Telephone: (305) 810-2500
  Facsimile: (305) 810-1675
  jisani@hunton.com

  Justin A. Nelson *(pro hac vice)*
  SUSMAN GODFREY L.L.P.
  1000 Louisiana Street, Suite 5100
  Houston, Texas 77002-5096
  Telephone: (713) 651-9366
  Fax: (713) 654-6666
  jnelson@susmangodfrey.com

  Drew D. Hansen *(pro hac vice)*
  Edgar Sargent *(pro hac vice)*
  Patrick C. Bageant *(pro hac vice)*
  SUSMAN GODFREY L.L.P.
  1201 Third Ave, Suite 3800
  Seattle, Washington 98101
  Telephone: (206) 516-3880
  Facsimile: (206) 516-3883
  dhansen@susmangodfrey.com
  esargent@susmangodfrey.com
  pbageant@susmangodfrey.com

  *Counsel for Defendant Amazon.com*

19

## CERTIFICATE OF SERVICE

**I CERTIFY** that on January 12, 2016, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.



/s/Jamie Z. Isani
Jamie Zysk Isani

## SERVICE LIST

Carlos Nunez-Vivas
can@wnflaw.com
Daniel Foodman
df@wnflaw.com
Dennis J. Wouters
djw@wnflaw.com
John G. Marfoe
jgm@wnflaw.com
WNF Law, P.L. - Waserstein Nunez & Foodman
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Tel.: (305) 760-8500
Fax: (305) 760-8510

*Attorneys for Plaintiff WREAL, LLC*