UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-CV-21385-LENARD/GOODMAN

WREAL, LLC, a Florida Limited
Liability Company,

       Plaintiff,

vs.

AMAZON.COM, INC., a Delaware
Corporation,

       Defendant.

_____/

**WREAL'S SUPPLEMENTAL BRIEF IN OPPOSITION TO**
**AMAZON'S MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

As a result of the recent District Court's (Hon. J. Lenard) Sealed Order Adopting Sealed Omnibus Report and Recommendations Concerning Various *Daubert* Motions ("*Daubert* Order"), and the passage of time since the parties' summary judgement briefs were filed, the Court (Hon. J. Goodman) ordered the parties to supplement their summary judgment papers. ECF 352 (Post-Hearing Administrative Order – hereinafter, the "Administrative Order").  The Court also ordered that Defendant, Amazon.com, Inc., ("Amazon") file detailed declarations on the following two specific issues: (1) Amazon's FIRE TV profits and revenues since submission of the summary judgment briefs in 2015, and (2) the different platforms Amazon's FIRE TV has been in for the last three years. ECF 352, at 1.  On October 11, 2018, Amazon filed a Notice of Filing in Compliance with Post-Hearing Administrative Order, together with the Declarations of Wynne Wong ("Wong Declaration") and Jason Gall ("Gall Declaration"). ECF 354.

In compliance with the Administrative Order, Plaintiff, Wreal, LLC, ("Wreal") hereby supplements its Response in Opposition to Amazon's Motion for Summary Judgment ("Response in Opposition"), filed on November 6, 2015. *See* ECF 261.  The *Daubert* Order, together with the declarations submitted by Amazon, crystallize that there are genuine issues of material fact, and that summary judgment should be denied.

## II.     THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO CONCLUDE THAT CONFUSION IS LIKELY.

Likelihood of confusion is a question of fact that ordinarily cannot be resolved on summary judgment.[1]  This holds true in the case *sub judice*.

---

[1] *See Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000) (stating that the likelihood of confusion test used to determine trademark infringement is generally a question of fact) (citing *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1514–15 (11th Cir. 1984)).

A.     <u>There is a Genuine Issue of Material Fact Regarding Amazon's Survey Evidence</u>

Amazon's position is that Dr. Sarel's survey evidence was unrebutted.   Amazon's fallacy was exposed by the Court in its *Daubert* Order, ████████████████████████████████ ████████████████████████████████   Amazon's argument, that the survey evidence in this case is conclusive to show no confusion, is misplaced on summary judgment, because the jury may give no weight to a flawed survey.   This, without more, demonstrates there is a genuine issue of material fact present for the jury.  In fact, the Court specifically ██████████████ ███████████████████████████████████████████████████████.  Dr. Maronick's major criticisms of Sarel's survey raise a genuine issue of material fact as to the validity of the survey, and thus, its results purportedly showing no actual confusion, one of the seven factors that the jury must consider when determining likelihood of confusion.

First, ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ ████████ ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████  Indeed, it is quite disingenuous to rely on an *Eveready* survey so early in a *reverse* confusion case.

Second, Dr. Maronick also opined that Dr. Sarel's survey contained many flaws that rendered unreliable his survey results and conclusions.  Specifically, he found flaws in Dr. Sarel's survey design.  ████████████████████ ████████████████████████████████████ █████████████████████████████████████████████████████.  ████████████,

at 24-25 (█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████   █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████   *See* Decl. of Thomas J. Maronick, at 3, attached as Exhibit 15 to

Marfoe Decl. ECF 263-1.   ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████   Thus, Dr.

Maronick's rebuttal testimony, together with Wreal's previously asserted instances of actual

confusion (which must be viewed in the light most favorable to Wreal, the non-moving party),

shows that the actual-confusion factor weighs in favor of Wreal.

      B.      <u>Further Evidence of the Similarity of the Products.</u>

████████████████████████████████████████████████████████████████

████████████████████████████████ Not only are Wreal's Fyre TV and Amazon's Fire TV complementary goods and services, and so related that when paired, they enhance the value of the products by increasing the offering, they also share a large number of similarities: Amazon and Wreal both use the mark to identify a streaming video service; both use various platforms to deliver streaming video over the internet to consumers; and each offers subscription-based services and a la carte offerings.   The fact is, and has always been, that Wreal's Fyre TV and Amazon's Fire TV services are substantially similar.   The *only* difference is the content offered by each. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ And a jury could reasonably conclude that the difference in content means the products are complementary, like wine and cognac, and thus likely come from the same source. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F. 2d 1525, 1530 (11th Cir. 1985).

In its recent filing, Amazon admits that its Fire TV is no longer just a hardware device. Indeed, the Declaration of Jason Gall, Amazon's Senior Manager of Product Management for Fire TV, reveals multiple additional platforms in which Fire TV is currently available in the market. ECF 354-1.  Specifically, Gall's Declaration reveals that Amazon's Fire TV is currently available as a Streaming Media Player, with multiple editions including, a box and pendant shape player, a Gaming edition with controller accessory, the Fire TV stick, and the Fire TV cube. ECF 354-1, Gall Decl. at 1.  Gall's Declaration also revealed that Amazon's Fire TV is also currently available as software preloaded on smart TV hardware from third party manufacturers, such as Toshiba, Element, Westinghouse, and Insignia. *See id*.  Further, Amazon's Fire TV is currently available

through Fire TV Recast, a DVR that lets one watch and record over-the-air TV at home or on-the-go with a Fire TV, Echo Show, or compatible mobile devices. *See id*.  Finally, Amazon's Fire TV is currently available as an application for mobile devices such as tablets and smartphones, and used as a remote. *See id*. at 2.  Gall's Declaration is a new admission by Amazon that its Fire TV streams videos, and now, Amazon can no longer say that the Fire TV product is only a hardware device. ECF 76, Amazon's Response in Opposition to Preliminary Injunction, at 4, 6, 12-13.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████ [2]  And whether or not this difference was sufficient for the jury to find that the products were not similar would have been a question of fact precluding summary judgment, the reality now is that Amazon cannot present its Fire TV as simply a hardware device. ECF 354-1, Gall Declaration, at 1-2.  Now, the only difference between Wreal's Fyre TV and Amazon's Fire TV is the content, which Wreal has always pointed out is complementary.

While it is clear to anyone watching that there is a difference between the content offered by Wreal's Fyre TV and Amazon's Fire TV, the latter offers mainstream action movies, including R-rated movies, comedies, television shows, documentaries, and pornography.  And Wreal's FyreTV® offers pornographic content, both "hard core" and "soft core," sex-related instructional videos, and stimulating reality-type content.  But, Wreal's Fyre TV and Amazon's Fire TV need not be identical products for a jury to find a likelihood of consumer confusion. *See E. Remy Martin*

---

[2] ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████ iven, Amazon's Gall Declaration, this is no longer true. ECF 354-1.

& *Co., S.A.*, 756 F. 2d at 1530 (finding that the rights of the owner of a registered trademark are not limited to protection with respect to the specific goods or services stated on the certificate, but extend to any goods or services related in the minds of consumers in the sense that a single producer is likely to put out both).

Indeed, the Eleventh Circuit held that the relevant question was <u>not</u> whether "the purchasing public can readily distinguish wine from cognac but whether the products are the kind the public attributes to a single source." *E. Remy Martin & Co., S.A.*, 756 F. 2d at 1530.  In *E. Remy Martin*, it was clear that the content of wine and cognac are different, and that any drinker could differentiate between the two - yet, the two products are of the kind the public can reasonably attribute to a single source. *See id*.  And thus, this factor weighs in favor of likelihood of confusion. *See id*.

Indeed, Dr. Linda Williams, Wreal's content expert, opined that a variety of material, including "soft-core" pornography, R-rated movies, and mainstream content, is related or complementary to hardcore pornography, and that mainstream content and hardcore pornography can today be considered complementary.  Dr. Williams also concluded that there are items available for streaming on Amazon's Fire TV that are pornographic or related to pornography. *See* Expert Report of Dr. Linda Williams, at 3, attached as Exhibit 16 to Marfoe Decl. ECF 263-1.

███████████████████████████████████████████

████████████████████████████  This provides additional evidence for a jury to reasonably conclude that the video-streaming services provided by Wreal through FryeTV and Amazon through Fire TV are related or complementary, and thus a consumer could attribute them to the same source.  This raises a genuine issue of material fact for the jury because a reasonable jury could conclude that consumers may assume that Amazon has put out two related

(complementary) products, one to stream mostly mainstream movies and the other to stream mostly hardcore pornography, just making insignificant changes to the names—further showing overwhelming visual similarities between the marks and their complementary nature.  And now that Amazon has its proverbial hands in everything, this consumer confusion becomes even more likely.

Accordingly, a jury could reasonably conclude that the similarity-of-product/services factor weighs in favor of Wreal.

C. ████████████████████████████████████████.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████.

████████████████████████████████████████

████████████████████████████████████████





**CONCLUSION**

For the reasons already explained in Wreal's Response in Opposition, together with the reasons provided herein, there is sufficient evidence, when viewed in the light most favorable to Wreal, for the jury to conclude that there is a likelihood of confusion, and accordingly, summary judgement must be denied.

Respectfully submitted,

WNF LAW, P.L.
*Attorneys for WREAL, LLC*
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Phone: (305) 760-8500
Fax: (305) 760-8510

By: */s  John G. Marfoe*
     Carlos Nunez-Vivas
     Florida Bar No. 128181
     can@wnflaw.com
     Daniel Foodman
     Florida Bar No. 337160
     df@wnflaw.com
     Dennis J. Wouters
     Florida Bar No. 28692
     djw@wnflaw.com
     John G. Marfoe
     Florida Bar No. 101535
     jgm@wnflaw.com

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2018, this document was served by the Court's ECF filing system on all counsel of record on the Service List below.

By: */s  John G. Marfoe*

### SERVICE LIST

Justin A. Nelson, Esq.
Drew D. Hansen, Esq.
*Co-counsel for Defendant*
Susman Godfrey L.L.P.
1201 Third Avenue
Suite 3800
Seattle, WA 98101
Tel. 206-516-3880
Fax 206-516-3883
jnelson@susmangodfrey.com
dhansen@susmangodfrey.com

Jamie Z. Isani, Esq.
*Co-counsel for Defendant*
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
Tel. 305-810-2500
Fax 305-810-2460
jisani@HuntonAK.com

# EXHIBIT "A"