UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-CV-21385-LENARD/GOODMAN

WREAL, LLC, a Florida Limited
Liability Company,

      Plaintiff,

vs.

AMAZON.COM, INC., a Delaware
Corporation,

      Defendant.

_____/

**PLAINTIFF WREAL, LLC'S OBJECTIONS TO
<u>MAGISTRATE JUDGE GOODMAN'S REPORT AND RECOMMENDATION</u>**

## <u>TABLE OF CONTENTS</u>

I.   Judge Goodman Failed to Apply the Summary Judgment Standard and Improperly Relied on Findings of Fact and Inferences Drawn from Those Facts at the Preliminary Injunction Phase.... 1

II.   Judge Goodman Misapplied the Frehling Factors, Disregarded Well-Reasoned Law on Reverse Confusion, Misconstrued Wreal's Evidentiary Burden, Ignored Relevant Evidence, and Improperly Credited Irrelevant Evidence. ................................................................... 3

  A.   The Strength of Marks Factor Favors Wreal Because the Marks Are Conceptually Strong, and Because of Amazon's Relative Commercial Strength. ...................................... 5

  B.   A Reasonable Jury Can Determine That the Similarities Between The Marks Makes Confusion Likely.................................................................................................... 7

  C.   A Reasonable Jury Can Determine That the Services are Related in the Minds of Consumers Because they are Both Streaming Video Services that Offer Different, But Complementary Content. ........................................................................................ 9

  D.   A Reasonable Jury Can Determine That There is Sufficient Overlap in the Parties Respective Sales Outlets, Customer Base, and Advertising to Find That Confusion is Likely.12

  E.   A Reasonable Jury Can Determine That Amazon Intended to Push Wreal Out of the Marketplace, or That Amazon Carelessly Chose Wreal's Mark.............................. 14

  F.   There is Evidence of Actual Reverse Confusion and a Reasonable Jury Can Infer that Evidence of Confusion by Some is Evidence of Confusion by Many. ..................... 15

  G.   A Reasonable Jury May Disregard Amazon's Survey Evidence as Premature, or Assign it Little Wait Due to its Methodological Flaws. .......................................................... 17

  H.   Applying the Proper Standard to the Facts of This Case, a Reasonable Jury May Determine That Amazon's Use of Wreal's Mark is Likely to Cause Reverse Confusion........ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F. 3d 198 (3d Cir. 2000) .................................................................................................. 5, 6, 7

*Attrezzi v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) .............................................8

*Custom Mfg. & Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 649 (11th Cir. 2007) .................................................................................................4, 16

*Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F. 3d 1127 (9th Cir. 1998) .................................................................................................. 6, 9, 11, 13

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992)..............11

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985) ................................................................................... 10, 11, 12

*Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380 (D.N.J. 2011) ..................21

*Freedom Card Inc. v. JPMorgan Chase & Co*., 432 F.3d 463 (3d Cir. 2005)........17

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F. 3d 1330 (11th Cir. 1999) .................................................................................................... passim

*Imaging Bus. Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186 (11th Cir. 2006) 2, 3

*John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983)..........9

*LG Electronics USA, Inc. v. Whirlpool Corp.*, No. 1:08-cv-00242 (Sept. 13, 2010) ....................................................................................................................21

*Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*, No. 13–61466–CIV, 2013 WL 3873231 (S.D. Fla. July 25, 2013)....................................................................19

Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160 (11th Cir.1982) ............................................................................................................14

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F. 2d 947 (7th Cir. 1992)...7, 8

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 05-21113-CIV-TORRES, 2007 WL 473273 (S.D. Fla. Feb. 8, 2007) ...................................................................3

*Sunenblick v. Harrell*, 895 F. Supp. 616 (S.D.N.Y. 1995) .....................................13

*TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220 (S.D.Fla. 2012) (Lenard, J.)............................................................................................................18

Plaintiff Wreal, LLC, ("Wreal") objects to Magistrate Judge Goodman's Report and Recommendation ("R&R") that the Court grant Amazon's motion for summary judgment. The Court should not adopt Judge Goodman's recommendations because he failed to apply the correct standard on summary judgment, improperly relied on facts determined at the preliminary injunction phase without considering that a reasonable jury may come to a different conclusion, and improperly stepped into the shoes of the jury by crediting evidence Amazon suggests makes confusion unlikely and disregarding evidence that points to a finding that confusion is likely.

Judge Goodman also misapplied the law by failing to apply well-reasoned standards in reverse confusion cases like this one, without explanation, and in misapplying the *Frehling* factors, particularly by assigning weight to evidence that the parties' services stream content that consumers can readily distinguish, and other ways in which they are not identical, while at the same time disregarding evidence that the marks are strong, similar, used on similar, complementary services, there is customer overlap, Amazon's stated intent to push Wreal out of the market, and evidence of actual consumer confusion.

As explained below, the Court should decline to adopt Judge Goodman's recommendation, and instead apply the proper standard by taking all reasonable inferences in Wreal's favor, correctly apply the law, and deny Amazon's motion for summary judgment.

I.   Judge Goodman Failed to Apply the Summary Judgment Standard and Improperly Relied on Findings of Fact and Inferences Drawn from Those Facts at the Preliminary Injunction Phase.

Judge Goodman misapplies the standard on summary judgment, principally by giving weight to the Court's findings at the preliminary-injunction phase, opining "that evidence has not materially changed….." ECF 378 at 4. But even with respect to undisputed facts that have not changed, the Court cannot rely on the inferences it made at the preliminary judgment phase when

it was undertaking a different role and applying a considerably different standard. Then, the Court had to make findings of fact, draw inferences, and determine whether Wreal had shown an overwhelming likelihood of success on the merits to warrant extraordinary relief.

Here, the Court takes on a considerably different role, determining whether Wreal *can* prevail in front of a reasonable jury, not whether it is overwhelmingly likely to succeed. This means, now, the Court must consider all evidence and take all reasonable inferences in Wreal's favor – part of the standard Judge Goodman did not mention and failed to apply.[1]

Judge Goodman and Amazon agree that the same undisputed facts the Court considered then, when it denied relief but noted Wreal could prevail, remain. Judge Goodman ignores, but the record shows, that those facts are only bolstered by additional evidence that points to a finding that confusion is likely. But Judge Goodman chose to ignore the summary judgment standard, and repeatedly credit findings at the preliminary injunction phase, ignoring that a reasonable jury could look at even the same evidence and draw a different inference.

This is contrary to the law in this circuit. In *Imaging Bus. Machines*, the Eleventh Circuit reversed the district court's grant of summary judgment because, like Judge Goodman repeatedly does here, the district court analyzed the evidence the same way it did at the preliminary injunction stage in that case. *Imaging Bus. Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006). This was because at summary judgment "the district court was required to apply a substantially different standard in reviewing the evidence and resolving contested issues." *Id.*[2]

---

[1] This Court provided all the guidance needed on the difference between the preliminary injunction standard and the one on summary judgment when it explained that its determination then that Wreal had not shown an overwhelming likelihood of success on the merits did not mean Wreal could not prevail. ECF 177.

[2] This rule applies equally in trademark infringement cases. In *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 05-21113-CIV-TORRES, 2007 WL 473273, at *9 (S.D. Fla. Feb. 8, 2007), a case involving trademark infringement, the court applied the correct standard, holding that it must draw

Thus, "[i]n considering the motion for summary judgment … the district court had a duty to construe the evidence presented to it in the light most favorable..." to the non-moving party. *Imaging Bus. Machines, LLC*, 459 F.3d at 1192. The Eleventh Circuit explicitly noted that the district court's opinion lacked any language suggesting it applied this standard, just like Judge Goodman left this standard out of his Report and Recommendation. And as explained below, Judge Goodman, like the lower court in *Imaging Bus.*, improperly weighed and largely adopted Amazon's evidence, discounted Wreal's evidence, and relied on findings at the preliminary injunction phase instead of properly resolving inferences in favor of Wreal, the non-moving party.

II.   Judge Goodman Misapplied the *Frehling* Factors, Disregarded Well-Reasoned Law on Reverse Confusion, Misconstrued Wreal's Evidentiary Burden, Ignored Relevant Evidence, and Improperly Credited Irrelevant Evidence.

Likelihood of confusion is a question of fact in the Eleventh Circuit. Like every issue, it may be resolved on summary judgment when, taking the record as a whole and all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact. *See Imaging Bus. Machines, LLC*, 459 F.3d at 1189; *Slip-N-Slide Records, Inc.*, 2007 WL 473273, at *1.

Judge Goodman acknowledges that in trademark infringement cases "a court must take into account the unique facts of each case…." ECF 378 at 25 (citing *Custom Mfg. & Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 649 (11th Cir. 2007)). This means there may be cases where some factors exist that would point toward a finding that confusion is likely, but summary judgment may be granted in favor of the defendant when the other undisputed facts make confusion extremely or overwhelmingly unlikely.

---

reasonable inferences in favor of the non-moving party at the summary judgment phase, notwithstanding the findings and conclusions made at the preliminary injunction phase.

This is consistent with the standard courts apply on summary judgment, and it simply does not follow that, as Judge Goodman suggests, courts may grant summary judgment to the defendant in cases where the facts *do not* show that confusion is unlikely. ECF 378 at 25 (rejecting the notion that summary judgment is only available to defendant when the facts of the case make confusion unlikely). Each of the Eleventh Circuit cases relied upon by Judge Goodman and Amazon presented unique, undisputed facts that made confusion obviously unlikely. ECF 261 at 3-5 (discussing cases).

In sum, there is no support for the notion that trademark infringement cases are analyzed any differently on summary judgment such that the Court, as Judge Goodman repeatedly recommends, may determine the weight or significance of evidence, or dispense with the requirement that reasonable inferences be taken in favor of the non-moving party.

Thus, the Court analyzes the seven factors put forth in *Frehling* taking all reasonable inferences in Wreal's favor: (1) strength of mark, (2) similarity of marks, (3) similarity of products, (4-5) similarity of customers, retail outlets, and advertising (collectively, the "proximity factors"), (6) the defendant's intent, and (7) actual confusion. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F. 3d 1330, 1335 (11th Cir. 1999). The most important factors are strength of mark (which is truly undisputed here and favors Wreal), and actual confusion when, like here, it is present, though evidence of actual confusion is not required. *See id*. And unlike the Eleventh Circuit cases cited by Amazon and Judge Goodman, there is no undisputed fact that makes confusion so unlikely that summary judgment may be granted.

Courts analyzing reverse confusion cases like this one have made slight modifications to the factors, assigning weight to the relative commercial strength of the junior user – Amazon's – use of the mark, and recognizing that evidence of actual confusion is especially difficult to marshal

in reverse confusion cases. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F. 3d 198, 233 (3d Cir. 2000). Inexplicably, Judge Goodman recommends that the Court disregard these well-reasoned modifications without analyzing why they are relevant or suggesting a different standard.

Judge Goodman also misapplies the standard that Wreal convince the jury that "an appreciable number" of consumers are likely to be confused as requiring evidence of some number of consumers who are *actually confused* as a result of the factors. *See* ECF 378 at 33-34 (requiring "actual evidence" that consumers consider the products related); 37 (requiring actual evidence of a consumer that believes Amazon may sell pornography).

For the reasons explained below, the Court should decline to adopt Judge Goodman's Report and Recommendations, and deny Amazon's motion for summary judgment.

A.    *The Strength of Marks Factor Favors Wreal Because the Marks Are Conceptually Strong, and Because of Amazon's Relative Commercial Strength.*

There are two facts relevant to this factor in reverse confusion cases – first, the conceptual strength of the mark, because in all trademark infringement cases, strong, distinct marks are more likely to be associated with the specific source of a product or service than weak ones, meaning confusion is more likely. *See Frehling*, 192 F. 3d at 1335. Courts have also held that the relative commercial strength of the junior user is relevant to this factor in reverse confusion cases. The parties do not dispute the conceptual strength of the mark or Amazon's relative commercial strength, and thus this prong must favor Wreal. *See A&H Sportswear, Inc.*, 237 F. 3d at 233; *see Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F. 3d 1127, 1130 (9th Cir. 1998).

Judge Goodman fails to address commercial strength at all, and dismisses the common-sense reasoning applied by other courts because they are non-binding, without analyzing why those courts found relevance in the relative commercial strength of the parties. Nor did he explain why

this Court should adopt a different standard.[3]

Judge Goodman also relies on Amazon's use of its ubiquitous housemark alongside "Fire TV" in analyzing this factor. Although this analysis really goes to the similarity of the marks, to the extent it is relevant to this factor, it is because Amazon's use of its housemark enhances the commercial strength of the mark as used by Amazon by creating an association between Amazon and Wreal's mark.

To that end, Judge Goodman misapplies the summary judgment standard in determining that Amazon's use of its housemark lessens, not aggravates, the likelihood of confusion. This is despite the fact that he recognizes that some courts have determined that when one party uses its famous housemark and the other does not, as is the case here, this serves to aggravate the likelihood of confusion. ECF 378 at 27 (citing *A&H Sportswear, Inc.*, 237 F. 3d at 233, *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F. 2d 947 (7th Cir. 1992)). Judge Goodman also acknowledges that other courts have found in cases where both parties use their respective housemarks, which is not the case here, that may serve to lessen the likelihood of confusion. *See id*.

Without analysis, Judge Goodman simply disregards the differing situations where a housemark may aggravate or mitigate confusion because he finds instances where other courts have found a dominant junior party's use of its housemark to be an aggravating factor simply "not persuasive." ECF 378 at 28. But it is up to the jury to determine the significance of these facts. A reasonable jury may determine that Amazon's use of its housemark next to Fire TV makes it more

_____

[3] Indeed, the reason commercial strength matters is in the very nature of reverse confusion, as it is the superior commercial strength of the junior users' use of the mark that causes harm. This is why courts in reverse confusion cases look to this fact in determining whether this factor leads to the conclusion that confusion is likely. And there can be no dispute as to the extent of Amazon's commercial strength compared to any company, let alone a smaller one like Wreal. Accordingly, based on the facts the law considers relevant and material to this factor, the only reasonable conclusion, and certainly one a jury could make, is that is favors Wreal.

likely that consumers will draw an association between Amazon and Wreal's mark – resulting in reverse confusion.[4]

Judge Goodman fails to consider the possibility that a reasonable jury may come to the same conclusion as other courts have, without explaining why those courts were unreasonable. Instead, Judge Goodman recommends the Court simply disregard cases explaining why in circumstances like this one the junior users' use of its ubiquitous housemark may aggravate confusion as not "on-point," even though they address inferences that may be drawn from similar facts, and not "binding," without presenting any authority, binding or otherwise, that this Court should adopt a different rule, just *ipse dixit.*

B.   *A Reasonable Jury Can Determine That the Similarities Between The Marks Makes Confusion Likely.*

The law is clear that in considering this factor, the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337 (citing *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 975–76 (11th Cir. 1983)); *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1131 (reversing summary judgment where the marks were spelled differently and presented differently

---

[4] Judge Goodman improperly relies on the Court's assessment at the preliminary injunction phase that *Quaker Oats* and *Attrezzi*, two cases where courts found the junior users' use of a housemark aggravated the likelihood of confusion, were distinguishable from this one because the marks in those cases were identical, not confusingly similar. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F. 2d 947 (7th Cir. 1992); *see Attrezzi v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006). But this Court's finding at the preliminary injunction phase does not preclude a jury from making a different inference, the Quaker Oats and *Attrezzi* courts did not say the fact the marks in those cases were identical as opposed to very similar was the reason the junior users' use of its housemark aggravates confusion, and other courts have made a similar finding with respect to confusingly similar marks. Certainly, it would be reasonable for the jury to determine that Amazon's use of its famous housemark aggravates the likelihood of confusion, even if this Court did not determine at the preliminary injunction phase that it constituted an overwhelming likelihood of success on the merits.

in commerce because a reasonable jury could find confusion due to the "perfect similarity of sound," similarity in meaning, and that a reasonable jury could find a perceptive consumer would shrug off the substituted vowel as an intentional modification identifying an ancillary division of the company). By crediting the portions of this analysis that show some differences, and ignoring the identical sound and meaning, Judge Goodman improperly weighed the evidence and failed to make the reasonable inference that, like in *Dreamwerks*, consumers could disregard the few differences and believe Amazon is the source of both.

Even with respect to the prongs Judge Goodman chose to analyze, he acknowledged that the parties dispute the "*significance* of the similarities and differences." ECF 378 at 29. Applying the proper standard on summary judgment, the Court must infer that the jury will determine that the similarities are sufficiently significant to cause confusion. In other words, Judge Goodman acknowledged that there is a genuine issue of material fact as to the significance of the similarities.

But Judge Goodman failed to apply the proper standard, and ignored that it is for the jury to weigh the significance of the visual similarities. It is also for the jury to weigh the perfect similarity of sound, particularly when Wreal relies on word-of-mouth advertising, and that the marks share the same meaning in that they have no meaning at all – the manner in which both use the marks is simply to identify the service offered (reinforcing the undisputed fact that the marks are conceptually strong as used by both parties). And it is up the jury to determine whether consumers would shrug off the slight variation in spelling, font, and other differences as modifications differentiating ancillary divisions of the same company, like in *Dreamwerks*.

Accordingly, Judge Goodman misapplied the standard and the law with respect to this factor by disregarding the perfect similarity of sound and meaning, facts made even more relevant when considering that Wreal relies on word-of-mouth advertising. And he erred by improperly

stepping into the shoes of the jury in crediting the differences in appearance while disregarding the similarities, misapplying the standard regarding overall appearance by requiring identity, something expressly not required, and which results in disregarding evidence of non-identical products that are complementary, the very type that often come from the same source.

C.   *A Reasonable Jury Can Determine That the Services are Related in the Minds of Consumers Because they are Both Streaming Video Services that Offer Different, But Complementary Content.*

Judge Goodman misapplied the law and misapplied the summary judgment standard in determining that this factor favors Amazon as a matter of law. The Eleventh Circuit explained that the analysis is whether the parties' respective services are the kind the public attributes to a single source, not whether people can readily distinguish them. *Frehling*, 192 F.3d at 1338 (citing *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)) (emphasis added). Thus, the fact that anyone can readily distinguish the only significant difference between the services – the content offered by each – is insufficient to show confusion is unlikely. This is perfectly exemplified by *E. Remy. Martin*, where the Eleventh Circuit reversed a denial of a preliminary injunction because the lower court focused on the obvious dissimilarities of the contents found in the parties' respective bottles – one wine, the other brandy – because this simply doesn't matter when the proper analysis is whether they are of the type that could be put out by the same source. *E. Remy Martin & Co., S.A.*, 756 F.2d at 1530.

Courts have made the common sense determination that goods or services that are complementary are the types that consumers attribute to the same source. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened."); *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1131 (relatedness of goods extends to goods that are complementary).

Judge Goodman improperly disregarded evidence that the parties put out services that are similar in every material aspect – they are both streaming video services – one streams primarily mainstream content, the other streams adult content. Wreal put forth evidence that these are complementary products in the marketplace, and that complementary products are often put out by the same source. A reasonable jury certainly can infer that confusion is likely based on this fact, and at summary judgment the Court assumes the jury will make that inference. Judge Goodman acknowledges the fact that both parties provide services that stream video, only with different content. But he misapplies the law and substitutes his opinion for the jury by making the factual determination based on the lack of identical content that "the two products are not similar," improperly discounting evidence that they are complementary and the obvious fact that complementary products are not identical. *See* ECF 316 at 19.

Wreal argues that the complementary nature of the products makes confusion likely because consumers may assume that Amazon, a company that sells just about everything, puts out two complementary products, one to stream mainstream content, the other to stream adult content. This is certainly a reasonable inference the jury can make from this evidence, and one the Court must assume the jury will make at this stage. Brushing aside the standard, Judge Goodman appears to require evidence of actual consumer confusion in the form of survey evidence with respect to this factor – something no court has ever done – in asking where is Wreal's evidence that an "appreciable number" of consumers would be confused. ECF 378 at 33-34.

To answer Judge Goodman's question, the evidence is in the similarity of the products, which do the same thing – stream video – albeit different types of videos. The evidence is in the complementary nature of the products. The evidence is testimony from Dr. Linda Williams, who this Court permitted to testify, that the content is complementary. ECF 130 at 24. The evidence

comes from Amazon's expert, Dr. Peter Lehman, who said that major hotel chains offer both, and in evidence that large companies like Comcast stream both mainstream and pornographic content. This is evidence that the Court must assume at this stage a reasonable jury will weigh in favor of a finding that confusion is likely.

The jury may also consider evidence that shows that pornography shows up in various ways in the marketplace and use facts about the marketplace to infer what consumers expect. *See E. Remy Martin & Co., S.A.*, 756 F. 2d 1525 (relying on consumer expectations as evidence in upholding a finding that confusion is likely); *Dreamwerks Production Group, Inc.*, 142 F. 3d 1127 (same). The fact that the content is complementary, along with evidence that consumers expect complementary products to be put out from the same source, is more than enough for a reasonable jury to infer that it would be in line with consumers' expectations for Amazon to put out pornography. The Court must assume at this stage that the jury will make that inference and that the jury will weigh it in favor of a finding that confusion is likely.

Thus, Judge Goodman's focus on the difference in the content, discounting evidence that points to a likelihood of confusion, misapplies the law and the summary judgment standard. The relevant question is whether consumers may think they come from the same source, not whether they can readily distinguish them, a standard the Judge Goodman cites but fails to apply.

Finally, Judge Goodman improperly conflates this factor with the proximity factors. He does this by relying on the application of the unique facts in *Sunenblick*, a non-binding out of circuit case, to form an unsupported general rule that products kept separate in the marketplace are not similar. *See Sunenblick v. Harrell*, 895 F. Supp. 616 (S.D.N.Y. 1995). That simply is not the law, and Judge Goodman's reliance on two leading Eleventh Circuit cases, *Frehling* and *E. Remy Martin*, is misplaced because he incorrectly said that the products in those cases were not kept

separate. ECF 378 at 38. A cursory reading of *Frehling* shows that two very different types of furniture sold by the parties were sold in different stores – separate from each other (yet the Eleventh Circuit reversed as *clearly erroneous* a finding of fact that this weighed in favor of a finding of no confusion). And in *E. Remy Martin* the products at issue were brandy, which is distilled, and wine, which is not. Those products *must* be sold in separate locations, at least under Florida law. *See* Florida Statute §565.04 (2018).

D.    *A Reasonable Jury Can Determine That There is Sufficient Overlap in the Parties Respective Sales Outlets, Customer Base, and Advertising to Find That Confusion is Likely.*

As explained in *Frehling* the key question with respect to each of these factors is overlap. *See Frehling*, 192 F.3d at 1339. At the heart of the inquiry is whether the same people will be exposed to both marks. This makes sense, because if one of Wreal's customers never encountered Amazon's use of the mark, confusion would be unlikely, as confusion only became likely when Amazon appropriated Wreal's mark. And there is ample evidence that Judge Goodman merely disregarded showing that the same relevant consumers are likely to encounter both marks. Though Judge Goodman again brings it up, the fact that the parties' content is readily distinguishable and people would not confuse one for the other is irrelevant and immaterial to these factors and the others, when the ultimate question is source confusion.

With respect to similarity of advertising, Judge Goodman applied the standard explicitly rejected by the Eleventh Circuit in *Frehling* by only considering evidence that the parties do not advertise through identical mediums, not whether there is significant overlap of the viewers of the advertisements "such that confusion could result." *Frehling*, 192 F.3d at 1339-40 (citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1166 (11th Cir.1982)). As Wreal explained, the evidence shows that both parties advertise using social media, email, search engines, and word-of-mouth. Judge Goodman simply discards this evidence, recommending without

support that the Court adopt a rule that these methods are "so broad as to make the advertising useless," and stating without evidentiary support that "nearly *every* mark in commerce uses these channels." ECF 261 at 19. Judge Goodman again misapplies the law in this Circuit that requires infringement cases to be decided on their unique facts, and improperly disregards evidence that there is bound to be significant overlap.

Wreal put forth evidence of similarity in the parties' sales methods, as they both sell streaming video over the internet. It is true that, outside of the internet (which Judge Goodman provides no reason the jury must ignore, given the importance of internet advertising, and the fact that it differs from traditional media in ways that make overlap more likely), there is not much presently in the way of direct overlap with respect to advertising. But the parties have advertised in similar mediums before, and Wreal's approach to advertising is constantly evolving. Judge Goodman does not explain why Wreal must be locked to the way it advertised when Amazon suddenly appropriated its mark. And this is evidence a reasonable jury can infer makes confusion more likely, particularly in combination with the other factors.

Wreal also put forth evidence that the parties share customers, and as explained in *Frehling*, the reason these factors are important is that they all go to whether the same people are likely to encounter the mark. Their respective target audiences are similar, and *Frehling* rejected the type of categorical distinctions amongst classes of consumers that Judge Goodman seems to apply. *See Frehling*, 192 F.3d at 1339. He may not have found "persuasive" the fact that people who watch pornography online also watch mainstream content, but a reasonable jury may infer this makes confusion likely because the same customers are likely to be exposed to both.

Judge Goodman disregards this evidence because, for some reason, it must mean that "every customer base would be similar to another customer base." Respectfully, this makes no

sense and Judge Goodman makes no effort to explain why that follows, or why it is a proper reason to disregard evidence of overlap in the factual record in this case. Indeed, earlier in his opinion, Judge Goodman correctly explained that the law in the Eleventh Circuit is that "a court must also take into account the unique facts of each case." ECF 378 at 25 (citing *Custom Mfg. & Engineering, Inc.*, 508 F.3d 649 (11th Cir. 2007)).

Thus, the Court must consider that the infringer in this case is Amazon, one of the world's most dominant retailers. This leads to the obvious inference that the parties share customers, and Wreal's customers are likely to be exposed to Amazon's infringing use of the mark. There's nothing in the law that supports the notion that Amazon gets a pass on the proximity factors because its sheer size. This does not change the relevance of these factors, which is that confusing marks will cause more confusion when the same people are exposed to both. Amazon's sheer size alone is evidence that a reasonable jury can use to find confusion is likely because Wreal probably shares most of its customers with Amazon. At the very least, there is significant evidence of overlap, and Wreal offered multiple examples of direct evidence of overlap that Judge Goodman simply ignored, such as an email to Wreal from one of its customers asking if Wreal's service is available on Amazon's Fire TV. *See* ECF 367 at 21.

Judge Goodman misapplied the standard. The "key inquiry," is overlap according to *Frehling*, not who Amazon targets, contrary to his improper reliance on findings at the preliminary injunction phase. Applying the correct standard, Wreal has put forth sufficient evidence that confusion is likely.

E.   *A Reasonable Jury Can Determine That Amazon Intended to Push Wreal Out of the Marketplace, or That Amazon Carelessly Chose Wreal's Mark.*

Judge Goodman correctly determined that courts have applied different standards to the intent factor in reverse confusion cases. Some courts have required evidence of bad faith in

selecting the mark, such as "to confuse Wreal's customers or to drive Wreal out of business." ECF 378 at 43. Others have applied a lesser carelessness standard. *See Freedom Card Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 479 (3d Cir. 2005).

With respect to bad faith, a reasonable jury may infer that Amazon took steps to purposefully drive Wreal out of the market. In fact, Judge Goodman quotes from an Amazon executive who testified that Amazon purchased search terms from Google <u>for the very purpose of making sure consumers would only encounter Amazon's Fire TV, not Wreal's Fyre TV</u>. *See* ECF 378 at 43-44. Again, stepping into the role of the jury, Judge Goodman simply assigns no weight to Amazon's stated intent, and concludes instead that it was only trying to make confusion less likely by drowning Wreal out of the marketplace. Perhaps Judge Goodman is correct in the sense that if Amazon uses its market power to completely drown out Wreal and force Wreal out of business, Wreal would eventually be forgotten and confusion would disappear. Obviously, this turns the law on its head, the reverse confusion doctrine is intended to prevent a dominant junior user like Amazon from drowning Wreal out. Forcing a smaller company to be invisible to consumers and go out of business is not an acceptable way to eliminate the likelihood of confusion.[5]

F.   *There is Evidence of Actual Reverse Confusion and a Reasonable Jury Can Infer that Evidence of Confusion by Some is Evidence of Confusion by Many.*

With respect to evidence of actual confusion, Judge Goodman misapplied the law and made decisions regarding evidence of actual confusion that must be left to the jury. *See TracFone*

---

[5] As to the careless standard, the Judge Goodman ignores evidence that Amazon knew of the mark, and that it knew it was used for a similar service. Instead, he simply believes Amazon when they say they had the best intentions and didn't think confusion is likely. And while Amazon's stated intent is more than enough for the jury to determine this factor weighs in Wreal's favor, it is also for the jury to determine whether Amazon was careless or whether it acted with the best intentions, as Judge Goodman opines.

*Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1226 (S.D.Fla. 2012) (Lenard, J.). Though the law does not require it in order to find confusion likely, a reasonable jury may give significant weight to the evidence of actual confusion in this case. Judge Goodman improperly substituted his view for that of the jury in determining that Wreal put forth no evidence of actual consumer confusion.[6]

To that end, Judge Goodman disregarded a confused caller who contacted Amazon – not Wreal – to see if FyreTV could be accessed from Amazon's Fire TV. Judge Goodman simply does not believe this caller could possibly have thought Amazon was the source of Wreal's FyreTV. But Judge Goodman does not explain why this caller contacted Amazon, not Wreal, to inquire about Wreal's service, and a reasonable jury can easily conclude that the only reason is because Amazon chose a confusingly similar name. Likewise, Judge Goodman substituted his judgment for that of the jury in determining that tweets from individuals who made the connection between Wreal's FyreTV and Amazon are not additional evidence of actual consumer confusion. It is up to the jury to decide what weight to assign this evidence.

Judge Goodman also erred in determining that, if the factual determinations he improperly made are incorrect, it is *de minimis* as a matter of law. He failed to consider testimony that while many people watch pornography, few talk about it, and failed to consider that confused consumers would contact Amazon, not Wreal, and that Amazon's ability to search its records was limited. *See* Bageant Decl. Ex. 2. But a reasonable jury can infer from this evidence that this is a case where *evidence* of actual confusion is rare, yet significant, because few of those confused leave evidence

---

[6] Judge Goodman, without explicitly saying so, treats the evidence Wreal put forth as if it were unreliable hearsay. It is not, and Amazon did not make that argument. Thus, it is admissible evidence, and it is up to the jury to decide what weight to assign it with respect to this factor, one of the most important.

that the parties can discover. In other words, it is a case where evidence of confusion by few is evidence of confusion by many. *See Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*, No. 13–61466–CIV, 2013 WL 3873231 *6 (S.D. Fla. July 25, 2013).

Thus, Judge Goodman improperly weighed evidence, failed to take reasonable inferences regarding evidence of actual confusion in the light most favorable to Wreal, and misapplied the law in determining that such evidence is de minimis.

G.     *A Reasonable Jury May Disregard Amazon's Survey Evidence as Premature, or Assign it Little Wait Due to its Methodological Flaws.*

Finally, though the Judge Goodman does not rely on the Amazon's flawed survey evidence, he nevertheless misapplies the law and improperly relies on a snippet of testimony from Wreal's rebuttal expert, Dr. Thomas Maronick, to further support his flawed conclusion that no reasonable jury could find confusion likely.

As this Court explained, the jury may assign no weight to Dr. Sarel's premature Eveready survey. ECF 349 at 24-25. The limitations of the format so early on were well-explained by Dr. Maronick. The Eveready format could not have been used at all before Amazon launched its Fire TV, and it is up to the jury to determine whether Dr. Sarel's survey conducted shortly after launch was too premature to reliably measure confusion. Dr. Maronick determined that Dr. Sarel's survey is unreliable and will explain that to the jury should it be necessary.[7]

Indeed, Dr. Maronick had already alluded to the fact that reverse confusion cannot be measured with an Eveready survey while unaided consumer awareness remains low at the preliminary injunction hearing, after he was asked about preliminary pilot studies he ran, and

---

[7] It may not be necessary if Dr. Sarel, who testified he did not consider data on consumer awareness of Amazon's Fire TV despite it presumably being available to him, concedes that an Eveready survey run so shortly after launch is not reliable to measure confusion in the marketplace now that Amazon's products are so ubiquitous.

testified exactly why few expressed confusion in those early, non-scientific studies – awareness was too low. *See* Bageant Decl. at Ex. 2. Judge Goodman and Amazon make much of this unremarkable testimony, but it is entirely consistent with his rebuttal expert opinion.

And it simply does not follow that low unaided awareness of Amazon's Fire TV shortly after launch necessarily means there can be no reverse confusion. Judge Goodman provides no authority or logical explanation for this conclusion. Reverse confusion occurs when a larger junior user saturates the market to the point that the smaller, senior user loses its brand identity, etc. The law does not require immediate consumer awareness for there to be reverse confusion, and it defies common sense. Indeed, Dr. Maronick testified that Dr. Sarel's survey was premature *at the time* it was run "because the top-of-the-mind awareness of Amazon's Fire TV [was] not yet stable, and is in fact growing. This does not mean that there is no likelihood of confusion." ECF 263 at ¶50 (citing Maronick Report ¶ 67)(emphasis added). Certainly, there are cases where a larger, senior user fails to gain the attention of the market – but there's no evidence that is the case here. *See e.g., Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380 (D.N.J. 2011). The evidence is to the contrary – Amazon's Fire TV line has expanded considerably, there are now many variations, and its new Fire TV Cube provides full access to Amazon's immensely popular Alexa voice assistant.

To the extent Amazon asks the Court to consider the results of those studies – which are not even before the Court on this motion – as evidence that confusion is unlikely, there is no basis for that. Moreover, Amazon and Judge Goodman incorrectly stated the holding in *LG*. *See LG Electronics USA, Inc. v. Whirlpool Corp.*, No. 1:08-cv-00242 (Sept. 13, 2010). In that case, while the district court judge noted that neither party disclosed the expert at issue as part of its case-in-chief, that was not the reason for her ruling. *See id.* The reason was that *LG* – the party proffering the expert – simply could not do so under Rule 26(b) because the expert had not complied with its

requirements, such as an expert report. Moreover, the expert had not completed her analysis, which would likely make the expert testimony inadmissible in any event.

Like in *LG*, Amazon has not put forth an expert report from Dr. Maronick. It cannot rely on raw answers from Dr. Maronick's incomplete, non-scientific, pilot studies as expert testimony that confusion is unlikely. It cannot comply with Rule 26(b) and certainly cannot comply with *Daubert*. Should Wreal call Dr. Maronick as a rebuttal witness to Dr. Sarel, Amazon may be able to ask him questions that fall within the scope of his opinion that Dr. Sarel's survey was premature. And Dr. Maronick's testimony at the preliminary injunction hearing is perfectly consistent with his opinion that Dr. Sarel's surey was premature and unreliable, an opinion only bolstered after Dr. Maronick learned unaided awareness of Amazon's Fire TV was still relatively low, but increasing, when Dr. Sarel conducted his survey a few short months after launch.

H.   *Applying the Proper Standard to the Facts of This Case, a Reasonable Jury May Determine That Amazon's Use of Wreal's Mark is Likely to Cause Reverse Confusion.*

As explained above, there is sufficient evidence for a reasonable jury to infer that each of the *Frehling* factors points to a finding that conclusion is likely. Starting with the two most important factors, there is no dispute regarding the conceptual strength of the mark or Amazon's commercial strength. And Wreal put forth evidence of actual confusion, particularly the confused caller, a potential customer of Wreal's FyreTV who contacted Amazon for no other conceivable reason other than the confusing similarity of the marks.

With respect to the similarity of the marks, Judge Goodman misapplied the law and the summary judgment standard by performing a partial analysis and weighing only certain visual differences, ignoring perfect similarity of sound and meaning, and rejecting the notion that the jury may determine it is likely that consumers will disregard the visual differences and assume they exist to identify an ancillary division of the same company.

Likewise, Judge Goodman erred in assessing the similarity of products, disregarding evidence that they are both streaming video services that provide different, but complementary content, the type the public often determines comes from the same source. Instead, Judge Goodman focused heavily on the irrelevant fact the content is readily distinguishable, and misapplied the law by requiring evidence of actual consumer confusion, and conflating this standard with the proximity factors, incorrectly stating that the products in the two leading cases in this circuit, *Frehling* and *E. Remy Martin*, were not kept separate, when in fact they were.

Judge Goodman also misapplied the proximity factors, which focus on whether there is overlap, or whether the same people will see both marks, and improperly dismissed evidence that relevant consumers will be exposed to both. Instead, Judge Goodman proposes without authority that a company of unprecedented size like Amazon should somehow get a pass on these factors, but this is unsupported by the law or common sense, particularly in a reverse confusion case, where the harm is that Amazon's use of the mark will drown out Wreal.

With respect to intent, Judge Goodman improperly made his own determination that Amazon's stated intent to push Wreal out of the market did not constitute bad faith, and simply took Amazon for its word that it acted with good intentions. This is for the jury to decide.

Finally, without relying on them, Judge Goodman improperly analyzed the survey evidence in this case, and illogically concluded that the absence of immediate consumer awareness of Amazon's Fire TV shortly after launch must somehow mean that there can never be a likelihood of confusion.

Applying the correct summary judgment standard and properly applying the law, there is sufficient evidence for the jury to determine that each factor favors Wreal, that an appreciable number of consumers are likely to be confused, and thus summary judgment should be denied.

Respectfully submitted,

WNF LAW, P.L.
*Attorneys for WREAL, LLC*
1111 Brickell Avenue Suite 2200
Miami, Florida 33131
Phone: (305) 760-8500 / Fax: (305) 760-8510

By: ____/s/__ John G. Marfoe _____
   Carlos Nunez-Vivas  (FL. Bar No.:128181)
   can@wnflaw.com
   Daniel Foodman (FL. Bar No.:337160)
   df@wnflaw.com
   Dennis J. Wouters (FL. Bar No.:28692)
   djw@wnflaw.com
   John G. Marfoe (FL. Bar No.:101535)
   jgm@wnflaw.com

## CERTIFICATE OF SERVICE

I certify that on May 9, 2019, this document was served by the Court's ECF filing system on all counsel of record on the Service List below.

By: /s  *John G. Marfoe* _____

## SERVICE LIST

Justin A. Nelson, Esq.
Drew D. Hansen, Esq.
*Co-counsel for Defendant*
Susman Godfrey L.L.P.
Tel. 206-516-3880
Fax 206-516-3883
jnelson@susmangodfrey.com
dhansen@susmangodfrey.com

Jamie Z. Isani, Esq.
*Co-counsel for Defendant*
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
Tel. 305-810-2500
Fax 305-810-2460
jisani@HuntonAK.com