**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:14-cv-21385-JAL

WREAL, LLC, a Florida Limited Liability
Company,

       Plaintiff,

v.

AMAZON.COM, INC., a Delaware
corporation,

       Defendant.

**AMAZON.COM, INC.'S RESPONSE TO WREAL LLC'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

**Page**

I.     Introduction.................................................................................................1

II.    Statement of Undisputed Facts ...................................................................5

III.   Standard of Review.....................................................................................5

IV.    Argument ....................................................................................................6

     A.     No reasonable fact finder could find likelihood of confusion ....................6

          1.     Distinctiveness or strength of the marks.........................................7

          2.     Similarity of the marks...................................................................9

          3.     Similarity of products ...................................................................10

          4.     Similarity of sales outlets and customer base ...............................13

          5.     Similarity of advertising ...............................................................15

          6.     Intent .............................................................................................16

          7.     Actual confusion ...........................................................................17

               a.     The summary judgment record shows no actual confusion.........................................................................17

               b.     Survey evidence shows no actual confusion.....................18

     B.     No reasonable fact-finder could find damages or recoverable profits. .......................................................................................20

V.     Conclusion ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000).................................................................................7, 8

*Amstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir. 1980) ........................................................................9, 11, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................3

*Bettis v. Toys R Us*,
    No. 06-80334-CIV, 2009 WL 995476 (S.D. Fla. Apr. 13, 2009)........................3, 12

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
    508 F.3d 641 (11th Cir. 2007) ....................................................................1, 6, 8

*E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*,
    756 F.2d 1525 (11th Cir. 1985) ................................................................12, 13

*Freedom Card Inc. v. JP Morgan Chase & Co.*,
    432 F.3d 463 (3d Cir. 2005)............................................................................16

*Frehling Enter., Inc. v. Int'l Select Grp., Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ..........................................................12, 13, 14

*Holland v. Colvin*,
    No. 4:14-CV-194, 2015 WL 1245189 (N.D. Ala. Mar. 18, 2015) ...........................5

*Imaging Bus. Mach., LLC. v. BancTec, Inc.*,
    459 F.3d 1186 (11th Cir. 2006) .......................................................................2

*Lawrence v. Courtyards at Deerwood Ass'n, Inc.*,
    318 F. Supp. 2d 1133 (S.D. Fla. 2004) ................................................................5

*LG Electronics USA, Inc. v. Whirlpool Corp.*,
    No. 1:08-cv-00242, 2010 WL 3766811 (N.D. Ill. Sept. 13, 2010)........................20

*Lombardo v. United States*,
    222 F. Supp. 2d 1367 (S.D. Fla. 2002) ..........................................................6, 13

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*,
    No. 09-60351, 2011 WL 4433570 (S.D. Fla. Sept. 21, 2011) ................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................3

*Miller v. Colvin*,
    No. 12-23971-CIV, 2015 WL 12533112 (S.D. Fla. Mar. 20, 2015) ........................................4

*Mize v. Jefferson City Bd. of Educ.*,
    93 F.3d 739 (11th Cir. 1996) ........................................................................3, 12

*Phelan Holdings v. Rare Hosp. Mgmt., Inc.*,
    No. 8:15-CV-2294, 2017 WL 1135266 (S.D. Fla. Mar. 2017)..........................................13, 16

*Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*,
    No. 13-61466, 2013 WL 3873231 (S.D. Fla. July 25, 2013).................................................18

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) .......................................................................................8

*Tana v. Dantana's*,
    611 F.3d 767 (11th Cir. 2010) ................................................................. *passim*

*The Complaint of Bos. Boat III, LLC v. Galioto*,
    No. 13-62166-CIV, 2015 WL 5444162 (S.D. Fla. Sept. 16, 2015)......................................20

*Tiger Direct v. Apple Computer, Inc.*,
    No. 05-21136, 2005 WL 1458046 (S.D. Fla. May 11, 2005) ........................................10, 19

*TracFone Wireless, Inc. v. Cabrera*,
    883 F. Supp.2d 1220 (S.D. Fla. 2012) ................................................................17, 18

*U.S. Commodity Futures Trading Comm'n v. Alcocer*,
    No. 12-23459-CIV, 2018 WL 3730218 (S.D. Fla. June 26, 2018)..........................................5

*Welding Servs., Inc. v. Forman*,
    509 F.3d 1351 (11th Cir. 2007) .......................................................................6, 9

**Statutes**

28 U.S.C. § 636(b)(1) ...........................................................................................5

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................2

Fed. R. Civ. P. 56(c)(1)(A) .....................................................................................20

Fed. R. Civ. P. 72(b) ...........................................................................................5

Local Rule 4(b) ..................................................................................................4

**Treatises**

McCarthy on Trademarks § 23:10 ................................................................................................19

I.      **Introduction**

Amazon.com, Inc. ("Amazon") files this Response to Wreal, LLC's ("Wreal") Objections (ECF No. 380) to the Report and Recommendations ("Report") by United States Magistrate Judge Jonathan Goodman (ECF No. 378) of April 9th, 2019, recommending that the Court grant Amazon's Motion for Summary Judgment (ECF No. 205). Specifically, Judge Goodman recommended the Court grant Amazon's motion because no reasonable fact-finder could find "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651 (11th Cir. 2007) (quoting *New Sensor Corp. v. CE Distrib, LLC*, 303 F. Supp. 2d 304, 310-11 (E.D.N.Y. 2004)). *See* ECF No. 378 at 22.

Wreal has alleged a reverse confusion theory: that consumers encountering Wreal's hardcore pornography streaming service will somehow believe that Amazon is its source, affiliate, or sponsor. Wreal moved for a preliminary injunction, which Judge Goodman recommended this Court deny (ECF No. 130). This Court adopted the Report and Recommendations (ECF No. 177), and the Eleventh Circuit affirmed. Now, after full discovery, Wreal has failed to set forth evidence from which a reasonable fact-finder could find in Wreal's favor. Specifically, to use the Eleventh Circuit's formulation of the relevant standard, Wreal has not set forth evidence that "confusion, mistake, or deception [is] 'likely,' not merely 'possible.'" *Custom Mfg.*, 508 F.3d at 651. Instead, in its Objections as in its summary judgment opposition, Wreal relies only on speculation: as Judge Goodman put it, "the **speculative possibility** that somehow, somewhere, some not-yet-identified group of consumers will encounter Wreal's FyreTV hardcore pornography service and think that this service must be associated with Amazon." ECF No. 378 at 22 (emphasis in original). The undisputed summary judgment evidence is the opposite. Wreal's expert Dr. Linda Williams openly

agreed that consumers "would not confuse" a hardcore pornography website with a mainstream website that does not sell hardcore pornography:

> **Question**: Do you agree that the visitor of the portal of a hardcore website like FyreTV.com is unlikely to think they are visiting a mainstream website that does not sell hardcore pornography?
>
> **Dr. Williams**: **I agree that they would not confuse the two.**

ECF No. 206 (Bageant Decl. Ex. 34 (Tr. 164:9–14) (emphasis added)).

Amazon will respond to each of Wreal's arguments in its Objections in detail, but notes three points at the outset:

First, contrary to Wreal's repeated assertion, Judge Goodman did *not* improperly apply the preliminary injunction standard on this summary judgment motion. This is not like Wreal's principal authority, *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006), where the district court "orally denied" a motion for a preliminary injunction, added a written amendment explaining the grounds, then granted the defendant's motion for summary judgment "for essentially the same reasons that it denied the preliminary injunction," (*id.* at 1188, 1191–93)—apparently without any separate, independent review of the summary judgment factual record. In fact, the *Imaging* district court's decision to grant summary judgment "lack[ed] *any* indication that the district court reconsidered the evidence pursuant to the appropriate summary judgment standard." *Id.* at 1193 (emphasis added). Judge Goodman's Report, by contrast, has a detailed discussion of the summary judgment standard, complete with citations to Fed. R. Civ. P. 56(a) and the relevant Supreme Court authority. *See* ECF No. 378 at 20–21. Also, unlike the court in *Imaging*, Judge Goodman carefully analyzed the *summary judgment* factual record, in a comprehensive, fifteen-page section of the Report with extensive pinpoint citations. *See* ECF No. 378 at 5-20. Judge Goodman repeatedly references Amazon's Statement of Undisputed Facts (ECF

No. 206) and Wreal's Response to that Statement (ECF No. 263). *See, e.g.*, ECF No. 378 at 5–19, 26–27, 29–33, 35, 37, 39–41, 43–45.

Wreal argues that Judge Goodman did not "properly resolv[e] inferences in favor of Wreal, the non-moving party." ECF No. 379 at 3. However, a court considering a summary judgment motion need not resolve every imaginable inference in the non-moving party's favor. "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are '*implausible*.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("all *justifiable* inferences are to be drawn in [the nonmoving party's] favor") (emphasis added). Inferences in favor of the party opposing summary judgment "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Bettis v. Toys R Us*, No. 06-80334-CIV, 2009 WL 995476, at *4 (S.D. Fla. Apr. 13, 2009). Put differently, a party opposing summary judgment must rely on *evidence*— not speculation or conjecture. As Judge Goodman properly concluded: "A party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); ECF No. 378 at 3. Yet 'metaphysical doubt' is all that Wreal offers . . . ." ECF No. 378 at 3.

Second, Wreal's Objection identifies no error in Judge Goodman's detailed, careful analysis as to which facts were undisputed for purposes of summary judgment. *See* ECF No. 378 at 5–20. Wreal does not, for example, identify any instance where Judge Goodman described a fact as undisputed when Wreal disputed it with record evidence. Instead, Wreal simply states that Judge Goodman "improperly stepped into the shoes of the jury," or "credit[ed] findings at the

3

preliminary injunction phase," or "analyzed the evidence in the same way it did at the preliminary injunction stage." ECF No. 379 at 1–2.

This is improper. "It is critical that the objection be sufficiently specific and not a general objection to the report." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351, 2011 WL 4433570, at *1 (S.D. Fla. Sept. 21, 2011); *see also Miller v. Colvin*, No. 12-23971-CIV, 2015 WL 12533112, at *3 (S.D. Fla. Mar. 20, 2015) (Lenard, J.) ("Where objections fail to specifically identify those findings objected to or where the objections are frivolous, conclusive, or general, the Court need not consider the objections and may proceed as if no objections have been made."). Further, Wreal's argument that Judge Goodman improperly resolved disputed facts is simply incorrect: *Wreal itself* conceded it did not dispute many of the facts Amazon asserted as undisputed. *See* ECF No. 378 at 5–8 ("Wreal concedes the following facts from Amazon's statement of undisputed facts."). Judge Goodman carefully analyzed the record evidence for the rest of the facts he took as undisputed, explaining clearly why Wreal's assertions did not demonstrate a fact dispute. *See id.* at 9–20. Wreal has no response to this detailed, careful examination of the record, relying instead on generalizations that identify no actual error.

Third, Wreal frequently fails to provide the Court with record citations for the supposed "additional evidence" (ECF No. 379 at 2) that it claims supports its position. For example, Wreal states that the Court should consider "evidence that consumers expect complementary products to be put out from the same source," (*id.* at 11)—and then cites nothing in the record. This is also improper. *See* S.D. Fla. Local Rule 4(b) ("Any party may object to a Magistrate Judge's proposed findings, recommendation or report . . . written objections . . . *shall specifically identify the portions* of the proposed findings, recommendations or report *to which objection is made, the specific basis for such objections, and supporting legal authority*.") (emphasis added). It is not the Court's

4

function to comb the voluminous factual record to identify the "additional evidence" Wreal discusses when Wreal does not identify it. *See, e.g.*, *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1148 (S.D. Fla. 2004) ("[T]hey do not expand the argument or cite to any record evidence to support this conclusion. The Court is not obligated to comb the record or fashion an argument that could be supported by the evidence."). Wreal's failure to cite record evidence for its assertions is striking: it is both procedurally improper and demonstrates the lack of evidentiary support for Wreal's position.

## II.   Statement of Undisputed Facts

As noted previously, Wreal raises no objection as to Magistrate Judge Goodman's analysis of which facts are undisputed. Nor is there any error: Wreal *conceded* that it did not dispute facts 2, 4–6, 9, 16–17, 22, 25–27, 35, 37, 41–43, and 52 from Amazon's Statement of Undisputed Facts (ECF No. 206) in its response thereto (ECF No. 263). *See* ECF No. 378 at 5–8. For the rest of the facts taken as undisputed in the Report, Judge Goodman explained in detail, with a careful assessment of the record evidence, why Wreal has not actually demonstrated the presence of a factual dispute because Wreal either "(1) adds factual assertions that do not contradict (and in some cases support) Amazon's undisputed fact or (2) does not cite to any record evidence that creates a dispute." ECF No. 378 at 9. Amazon will refer to the undisputed facts by paragraph number corresponding to the Undisputed Facts in the Report. *See id.* at 5-20.

## III.   Standard of Review

This Court must only conduct a de novo review of portions of the Report that have been "properly objected to" when the objections have been "specifically made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *U.S. Commodity Futures Trading Comm'n v. Alcocer*, No. 12-23459-CIV, 2018 WL 3730218, at *2 (S.D. Fla. June 26, 2018); *see also Holland v. Colvin*, No. 4:14-CV-194, 2015 WL 1245189, at *3 (N.D. Ala. Mar. 18, 2015) ("A general objection or one that merely

restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does *nothing more than state a disagreement* with a magistrate's suggested resolution, or *simply summarizes what has been presented before*, is not an 'objection' as that term is used in this context.") (emphasis in original). Any portions of the Report that have not been properly objected to are reviewed for clear error. *Lombardo v. United States*, 222 F. Supp. 2d 1367, 1369 (S.D. Fla. 2002).

## IV.   Argument

### A.   No reasonable fact finder could find likelihood of confusion

The central legal question in this trademark infringement case for Wreal's state and federal claims is likelihood of confusion. *See* ECF No. 378 at 23. "Although likelihood of confusion is a question of fact, it may be decided as a matter of law." *Tana v. Dantana's*, 611 F.3d 767, 775 n.7 (11th Cir. 2010). The Eleventh Circuit has repeatedly affirmed summary judgment for defendants in trademark cases where no reasonable fact-finder could conclude an appreciable number of ordinarily prudent consumers were likely to be confused. *See, e.g., id.* at 774–82; *Custom Mfg.*, 508 F.3d at 653; *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007).

Likelihood of confusion is determined by analyzing seven factors: "(1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the good or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public." *Welding Servs.*, 509 F.3d at 1360. The application of each of these seven factors is much more than a "mechanistic summation of the number of factors on each side; it involves an evaluation of the overall balance." *Custom Mfg.*, 508 F.3d at 649.

6

The Report concluded that "no reasonable fact-finder could find a likelihood of confusion. None of the likelihood of confusion factors favor Wreal; rather, all favor Amazon (or, at best, are neutral)." ECF No. 378 at 25–26. This Court should adopt the Report's recommendation granting Amazon summary judgment and dismissing Wreal's claims.

### 1.    *Distinctiveness or strength of the marks*

This factor favors Amazon. The parties do not dispute that (1) "Amazon," "FyreTV," and "Amazon Fire TV" are strong and distinctive marks (*see* ECF No. 130 at 17–19); (2) Amazon often (though not always) uses "Amazon" next to its products' brand names (such as "Echo," "Fire Phone," and "Fire TV," (Statement of Undisputed Facts ("SUF") from Report (ECF No. 378) ¶ 24); and (3) even when Amazon does not use "Amazon" next to "Fire TV," the product still appears on Amazon's website, an Amazon-branded marketplace with other Amazon-branded products (SUF ¶ 34).

Wreal raises two objections: first, that Judge Goodman "fail[ed] to address commercial strength" (as opposed to conceptual strength), and second, that Judge Goodman should have followed out-of-Circuit authority to hold that Amazon's use of the "Amazon" mark will "aggravate the likelihood of confusion." ECF No. 379 at 5–6. Wreal presented its commercial strength argument only in its proposed Report & Recommendations; it never presented it in its summary judgment opposition, which focused on where the marks fell on the generic-to-arbitrary spectrum (a test of conceptual strength) and whether Amazon's use of the "Amazon" mark made confusion more or less likely. *See* ECF No. 261 at 5–7.  Regardless, Wreal's commercial strength argument has no merit. The out-of-circuit authority Wreal cites—*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000)—says a court should evaluate commercial strength by looking at the junior and senior user's comparative commercial strength as well as "any advertising or marketing campaign by the junior user that has resulted in a saturation in the public awareness

of the junior user's mark." *Id.* at 231. Even though Wreal alleged in its Complaint that Amazon had saturated the market with advertising for the Amazon Fire TV (*see, e.g.*, ECF No. 1 ¶ 33), Wreal quickly reversed course when consumer surveys by both Wreal's expert and Amazon's expert showed no confusion. Wreal then argued that Amazon's survey—which was run several months after Amazon launched the Amazon Fire TV and Wreal filed its Complaint—showed no confusion because it was run too "early," before awareness of the Amazon Fire TV was high enough to show confusion. *See* ECF No. 356 at 3. This is a concession that the Amazon Fire TV mark did *not* have commercial strength because consumers were unaware of the mark.

Wreal now claims, however, that awareness has increased. Yet Wreal cites no actual evidence to support its position. *See* ECF No. 379 at 18 ("Certainly, there are cases where a larger, senior user fails to gain the attention of the market—but there's no evidence that this is the case here," following with factual assertions without any citation). As Judge Goodman explained in the Report, Wreal's low-awareness argument is fatal to the reverse confusion theory (ECF No. 378 at 49–51). It also demonstrates that Wreal cannot show commercial strength.

Wreal's objection that Judge Goodman did not properly assess the significance of the "Amazon" housemark is also incorrect. Wreal makes exactly the arguments here that it made in its summary judgment opposition, which Judge Goodman evaluated and rejected because: (1) Wreal's argument that a housemark aggravates confusion depends on non-binding, out-of-circuit cases such as *A&H Sportswear* and *Sands, Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947 (7th Cir. 1992); (2) this Court previously distinguished this authority by noting that in these cases (but not here) the marks were identical (*see* ECF No. 177 at 9–11); (3) by contrast, the Eleventh Circuit has observed in a forward confusion context that a housemark can make confusion *less* likely (*see Custom Mfg.*, 508 F.3d at 652 n.10), and (4) thus similarly, in this reverse confusion

8

context, Amazon's use of the housemark (either as part of the Amazon Fire TV name or when consumers encounter the product in an Amazon-branded environment with other Amazon products) makes confusion less likely because consumers will expect to see Amazon branding around the Amazon Fire TV product affiliated with Amazon. *See* ECF No. 378 at 26–29.  This factor easily favors Amazon.

### 2.    *Similarity of the marks*

Wreal does not dispute the differences between the Amazon Fire TV mark and Wreal's FyreTV marks: (a) one is red, the other yellow or orange; (b) one is two words, the other is one; (c) one includes a flame graphic, the other does not; (d) each has its own unique stylized font: one is with a "y" and the other with an "i"; and (e) one often has "Amazon" in front of it, and the other does not. SUF ¶ 39. Instead, Wreal argues that the marks' "perfect similarity of sound" and "slight variation on spelling, font, and other differences" create a fact issue. ECF No. 379 at 8.

This is inconsistent with Eleventh Circuit law and this Court's prior opinions. Wreal cites no authority for the proposition that a fact issue exists whenever there is *any* similarity between two marks. To the contrary, as this Court previously held: "Similarity of appearance is determined on the basis of the total effect of the designation, *rather than on a comparison of individual features*." ECF No. 177 at 10 (emphasis added) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260-61 (5th Cir. 1980)). The Eleventh Circuit has affirmed summary judgment for trademark defendants, specifically holding that the similarity of marks issue weighs in defendants' favor even with marks that share some similarities. *See, e.g.*, *Welding Servs.*, 509 F.3d at 1361 (no similarity between "WSI mark" and "WTI mark"); *see also Amstar*, 615 F.2d at 260-61 (trial court clearly erred in finding confusion between "Domino Sugar" and "Domino's Pizza" where "[c]onsidering the total effect of the respective marks, there is little similarity between plaintiff's and defendant's marks.").

9

Further, Wreal simply ignores Judge Goodman's conclusion that the marks' presentation in commerce is overwhelmingly dissimilar. As this Court previously held, the analysis of the marks' similarity considers not just the marks themselves but "the manner in which they are displayed." ECF No. 177 at 10 (internal quotation marks and citation omitted). *See, e.g.*, *Tiger Direct v. Apple Computer, Inc.*, No. 05-21136, 2005 WL 1458046, at *16 (S.D. Fla. May 11, 2005) (Lenard, J.) (analyzing "overall impression created by the marks, in the context of each Party's use"). Here, Wreal does not contest that a person can only become a FyreTV customer by first signing up at Wreal's hardcore pornographic website (SUF ¶ 3), which means that customers will *always* encounter several features that immediately and obviously distinguish the overall commercial impression of Wreal's mark from Amazon's: (1) exclusively pornographic content, (SUF ¶ 2), (2) a mandatory opt-in screen that requires users to confirm they are 18 years of age and willing to view adult content (SUF ¶ 4), (3) several rows of highly explicit pornographic images (SUF ¶ 5), and (4) a "Categories" page with images from many different lurid pornographic genres (SUF ¶ 6). Nor does Wreal contest—or even mention—the concession by its own expert Dr. Linda Williams:

> **Question**: Do you agree that the visitor of the portal of a hardcore website like FyreTV.com is unlikely to think they are visiting a mainstream website that does not sell hardcore pornography?
>
> **Dr. Williams**: **I agree that they would not confuse the two.**

ECF No. 206 (Bageant Decl. Ex. 34 (Tr. 164:9–14) (emphasis added)). The obvious dissimilarity of the marks' presentation in commerce causes this factor to weigh strongly in Amazon's favor.

### 3.   *Similarity of products*

Judge Goodman concluded the products were dissimilar because (1) the Amazon Fire TV is a means through which a viewer can access multiple streaming services (ESPN, Amazon Instant Video, and more) where Wreal's FyreTV is a dedicated pornographic app (ECF No. 378 at 32–

33), and (2) "the undisputed fact on *this* evidentiary record about *these* marks for these products in *these* marketplaces is that mainstream content and hardcore pornography are kept apart from each other" (ECF No. 378 at 34–35) (discussing record evidence).

The Eleventh Circuit has affirmed summary judgment holding that the similarity-of-products factor weighs in defendants' favor when there are immediate and obvious differences between products such as an "old-world-style Italian restaurant" and an "upscale sports restaurant" (*Tana*, 611 F.3d at 777–78); or two types of bicycles that "look different" and have "different riding characteristics" (*Ross Bicycles*, 765 F.2d at 1507). Similarly, the Fifth Circuit, in a still-binding decision, held that it "fail[ed] to see any great similarity between the respective parties' wares" (pizza on the one hand and "sugar, salt, mustard, ketchup, and other condiments," on the other), save that both are "edible." *Amstar Corp.*, 615 F.2d at 261 . These facts present an even stronger case for finding the products different than the restaurants in *Tana,* the bicycles in *Ross*, or the food products in *Amstar*: here, the undisputed evidence demonstrates that Amazon goes to great lengths to keep hardcore pornography away from the Amazon Fire TV (with a content policy banning pornography, with parental controls, and with advertising through mainstream channels such as television rather than adults-only websites (SUF ¶¶ 27, 33, 37)). By contrast, Wreal makes clear that FyreTV is *only* a pornography service that does not offer mainstream content (with an over-18 opt-in screen warning about adult content and more (SUF ¶ 4)). Wreal concedes that it exclusively offers pornographic content, not mainstream movies (SUF ¶ 2). Wreal's advertising slogan: "The Netflix of Porn" illustrates the point: Wreal uses this because it believes Netflix operates in a *different* market (SUF ¶ 13).

Wreal does not claim to dispute any of these facts. Rather, it re-urges its argument that the products must be considered similar because they are "complementary," relying on several

11

citation-free factual assertions. *See, e.g.*, ECF No. 379 at 11 (referring to "evidence that consumers expect complementary products to be put out from the same source" without any record citation). However, "the district [judge] is not required to comb the record to find some reason to deny a motion for summary judgment." *Bettis*, 2009 WL 995476, at *4. Wreal has failed to present evidence that the products are so similar that a jury could find in Wreal's favor: as Judge Goodman pointed out, Wreal's previous citation to testimony from its expert Dr. Williams rested on evidence this Court excluded as irrelevant (DVDs on Amazon's website) (*See* ECF No. 378 at 36). Wreal's Objection asserts that "major hotel chains" and "large companies like Comcast" offer both pornographic and mainstream content (ECF No. 379 at 11), but offers *no* evidence that consumers consider hardcore pornographic content to be so similar to mainstream content that consumers are likely to confuse the two. Instead Wreal presents speculation: "consumers may assume that Amazon, a company that sells just about everything, puts out two complementary products, one to stream mainstream content, the other to stream adult content." ECF No. 379 at 10. The Eleventh Circuit's words in *Mize* are applicable here: "Although this is not an impossible scenario, it is not one supported by the facts presented to the district court." 93 F.3d at 745. Wreal cites nothing in the record to support its assertion, and it is contrary to the voluminous factual record about Amazon's extensive efforts to keep pornography *away* from its Amazon Fire TV product and Wreal's clear efforts to notify consumers that it is a hardcore pornographic product and does *not* offer mainstream content. *See* SUF ¶¶ 2, 4, 13, 27, 33, 37. The Court need not credit such a speculative inference at summary judgment.

Wreal also contends that Judge Goodman's conclusion that "products kept separate in the marketplace are not similar" is legally incorrect, contesting Judge Goodman's interpretation of *Frehling Enter., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330 (11th Cir. 1999), and *E. Remy Martin*

*& Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985) (ECF No. 379 at 11–12).  However, neither *Frehling* nor *E. Remy Martin* had anything resembling the many clear and aggressive efforts to keep two different products away from each other that are present here: everything from explicit warnings and opt-in screens on Wreal's website to a policy against pornography on Amazon Instant Video (which streams to the Amazon Fire TV) and a ban on pornographic apps for the Amazon Fire TV. *See* ECF No. 378 at 35 (reciting facts). The concession from Wreal's expert Dr. Linda Williams that consumers "would not confuse the two" (ECF No. 206 (Bageant Decl. Ex. 34 (Tr. 164:9–14)) is fatal: Wreal's own expert has admitted consumers are not going to confuse these two very different types of products. Wreal's expert's concession is exactly the type of evidence on which courts in this District rely in granting summary judgment. *See Phelan Holdings v. Rare Hosp. Mgmt., Inc.*, No. 8:15-CV-2294, 2017 WL 1135266, at *4 (S.D. Fla. Mar. 2017) (granting summary judgment in part based on plaintiff's concession that "[n]o one confuses a LongHorn Steakhouse with a Pinchers.").[1]

### 4.    *Similarity of sales outlets and customer base*

As Judge Goodman noted, Wreal does not dispute that FyreTV and Amazon Fire TV are not sold in the same retail outlets. ECF No. 378 at 39; *see* SUF ¶ 41. Judge Goodman also found that no reasonable fact-finder could conclude that Amazon markets the Amazon Fire TV to customers specifically in the market for streaming pornography (Amazon did not buy keyword

---

[1] Wreal also did not raise any objections to the Report's analysis of Wreal's previous arguments that the products are similar because consumers "can stream pornography on Amazon's Fire TV through apps like HBO Go and Showtime." ECF No. 378 at 36; ECF No. 261 at 11 n.15. Because of Wreal's failure to make an objection to this portion of the Report, it is reviewed for clear error. *See Lombardo*, 222 F. Supp. 2d at 1369. There is no clear error in the Report's reasoning. *See* ECF No. 378 at 36–37. Wreal offered no evidence that any consumer would believe it is accessing hardcore pornography by opening the HBO Go and Showtime Apps. Moreover, the type of material that could be viewed by accessing these apps in no way resembles the hardcore pornography predominantly offered by Wreal's FyreTV. *See id.*

advertisements for anything related to pornography, Amazon does not advertise on adult websites, and so on) (ECF No. 378 at 40); where by contrast Wreal's target market is pornography consumers (SUF ¶ 12).

Rather than contesting these facts, Wreal spends most of this section on the similar advertising factor (which Amazon will discuss below), and broadly claims that the proper legal test for the similarity in customers and sales outlets is "overlap,"—that is, in Wreal's terms, "whether the same people will be exposed to both marks," citing *Frehling*. ECF No. 379 at 13–14. But *Frehling* held no such thing: rather, the Eleventh Circuit criticized the district court's distinction between "affluent" and "less affluent" customers, both shopping for "furniture pieces, designed for the home…[with] the capability to house electronic equipment," and "marketed as having an Italian design," (*Frehling*, 192 F.3d at 1338-39). The Eleventh Circuit specifically noted that the "similarity of advertising media…suggests that the parties indeed target the same types of customers, evidenced by their advertisements in similar types of magazines, like *Architectural Digest* and *House Beautiful*." *Id.* at 1339. Here, it is not the case that Wreal markets the FyreTV to "less affluent" pornography consumers and Amazon markets the Amazon Fire TV to "affluent" pornography consumers: Wreal markets exclusively to pornography consumers (SUF ¶ 12) and Amazon does not market the Amazon Fire TV to consumers interested in pornography *at all* (ECF No. 378 at 40). Wreal identifies no authority for the sweeping proposition that customer bases are similar as long as customers might be "exposed to both marks": this would mean that sugar customers would be considered similar to pizza customers because they might, at some point, be exposed to both sugar marks (as when they eat out at a restaurant) and pizza marks (as when they order a pizza). This is not the law. *See, e.g.*, *Amstar*, 615 F.2d at 262 (holding there were

"substantial dissimilarities between the predominant purchasers of plaintiffs' [sugar] and defendants' [pizza] products").

### 5.  *Similarity of advertising*

Wreal combines this factor with the previous ones, admitting that "outside of the internet . . . there is not much presently in the way of direct overlap with respect to advertising," but asking the Court to consider advertising similar because "Wreal's approach to advertising is constantly evolving." ECF No. 379 at 13. Wreal cites no authority for the proposition that advertising methods should be considered similar, even if they are concededly not similar now, because they might be at some point in the future. This is speculation the Court need not credit at summary judgment. As Judge Goodman found, Wreal does not use the same channels Amazon uses (the Amazon.com homepage, television, print media, and in-store displays); Wreal advertises instead only on other internet channels and with "word-of-mouth." ECF No. 378 at 41.

Wreal argues that "given the importance of internet advertising" the advertising channels should be considered similar because both parties use "the internet." ECF No. 379 at 13. However, the Eleventh Circuit has never held that simply using "the internet" is sufficient to find similar advertising. *See Tana*, 611 F.3d at 778 ("[T]he only similarity in the advertising channels used by the two parties is their maintenance of websites on the World Wide Web. This similarity would dispel rather than cause confusion, however, because the websites are separate and distinct, suggesting two completely unrelated business entities."). Amazon's internet advertising strategy is totally different from Wreal's: Wreal once advertised on adult websites (Amazon did not) (SUF ¶¶ 15, 37), and Amazon did not buy ads for keywords around Wreal's FyreTV name or anything related to pornography (SUF ¶ 31). This factor also favors Amazon.

15

### 6.  *Intent*

This factor weighs in Amazon's favor under any formulation of the intent standard. Amazon first started using "Fire" in 2011 to show the evolutionary progression from the "Kindle" e-reader to "Fire" tablets (SUF ¶ 20), and Amazon then continued the use of "Fire" for the "Fire TV" as well as a phone and a new generation of tablets (SUF ¶ 23). At least in a forward confusion context, this would clearly show Amazon had no ill intent. *See Tana*, 611 F.3d at 779 ("Where a story of the creation of a mark is undisputed and shows an innocent origin, we have concluded that there is no intent of misappropriation contributing to a likelihood of confusion.").

Wreal first argues under a "bad faith" standard similar to one that a district court in the Eleventh Circuit has adopted in a reverse confusion case (*see Phelan Holdings*, 2017 WL 1135266, at *7), claiming that "a reasonable jury may infer that Amazon took steps to purposefully drive Wreal out of the market." ECF No. 379 at 15. However, Wreal cites only Amazon's purchase of search terms around "Fire TV" and "Amazon Fire TV," (*id.*) which hardly show bad faith as those are the very names of Amazon's product—names in which Wreal has no trademark rights. Wreal does not mention the undisputed fact that Amazon did *not* buy search terms around Wreal's FyreTV to direct prospective Wreal customers to Amazon. ECF No. 378 at 43. Instead, Amazon bought search terms around *its own product names* to make sure that customers searching for the Amazon Fire TV in fact found the Amazon Fire TV. *Id.* at 44. This shows no ill intent.

Wreal also argues for a "carelessness" standard, citing *Freedom Card Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 479 (3d Cir. 2005). ECF No. 379 at 15. However, *Freedom Card* specifically held that it was "not willing to adopt" a carelessness standard but rather a "deliberate intent to push the senior user out of the market" standard akin to *Phelan Holdings*. *Id.* at 479-80. *See id.* Even if Wreal had authority for a "carelessness" standard, no reasonable fact-finder could conclude Amazon showed any carelessness in light of the undisputed facts outlined above: a

16

different mark for a different product sold in completely different sales channels and marketed to different target customers with a wholly different advertising strategy.

### 7.  *Actual confusion*

This factor also favors Amazon. There must be more than nominal evidence of confusion for this factor to favor the plaintiff. *See Tana*, 611 F.3d at 779.

### a.  *The summary judgment record shows no actual confusion.*

Wreal relies on two purported types of actual confusion evidence: (1) a caller Wreal describes as contacting Amazon "to see if FyreTV could be accessed from Amazon's Fire TV" (ECF No. 379 at 16) and (2) "tweets from individuals who made the connection between Wreal's FyreTV and Amazon." *Id*. For the former, the customer is simply asking, as Wreal put it, "if FyreTV could be accessed from Amazon's Fire TV,"—akin to asking Roku or AppleTV if Wreal's service would be available on those products. *Id*. The consumer is not confused about anything; the consumer is simply asking whether a particular service is available on a particular product. This has nothing to do with trademark law protections against confusion as to source, affiliation, or sponsorship. Further, this Court has already held this contact would be *de minimis* at most in light of the tens of thousands of customer service inquiries to Amazon. *See* ECF No. 177 at 16. The tweets—which Wreal does not cite in the record—are no more probative. Wreal does not explain why a reasonable fact-finder could conclude from the text of the tweets that the author was confused about source, affiliation, or sponsorship (as opposed to making a joke). And Wreal can produce no testimonial evidence that anyone was actually confused because Wreal deposed neither the allegedly confused caller to Amazon nor the authors of the tweets.

Contrary to Wreal's insinuation, this Court did not hold in *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp.2d 1220 (S.D. Fla. 2012) that "decisions regarding evidence of actual confusion…must be left to the jury." ECF No. 379 at 15–16. To the contrary, this Court entered a

default judgment against a former employee who had allegedly stolen the defendant's phones and airtime and attempted to resell them, holding actual confusion is not necessary for likelihood of confusion and noting that "[a]dopting an identical mark with the intent of deriving benefit from the reputation of [Plaintiff's mark] may alone be enough to justify the inference that there is confusing similarity." *TracFone Wireless*, 883 F. Supp.2d at 1226 (internal quotation marks and citation omitted). These facts do not exist here: Amazon did not use an identical mark and clearly had no interest in "deriving benefit from the reputation" of Wreal's mark because Wreal's business was already failing long before Amazon launched the Amazon Fire TV. SUF ¶ 17. Nor is this case akin to Wreal's other authority, *Ryder Sys., Inc. v. Storage & Moving Svcs., Inc.*, No. 13-61466, 2013 WL 3873231, at *6 (S.D. Fla. July 25, 2013) (cited in ECF No. 379 at 17), which, as Judge Goodman noted, "involved not just sworn testimony by a customer who detailed extensively how he hired the defendant while believing (incorrectly) that he had hired the plaintiff," but also "customers [who] had complaints about the *defendant*'s service, but they contacted the *plaintiff*, erroneously thinking that they had been dealing with the plaintiff." ECF No. 378 at 46.

The Eleventh Circuit has affirmed summary judgment for trademark defendants, discounting purported actual confusion instances as "nominal" even when it included affidavit testimony from a customer and two admitted incidents when customers inquired about affiliation. *Tana*, 611 F.3d at 779-80. Wreal offers not even the evidence that the Eleventh Circuit held insufficient to avoid summary judgment in *Tana*: no sworn testimony by any actual or potential customer affirming that they were in fact confused as to source, affiliation, or sponsorship.

### b.      *Survey evidence shows no actual confusion*

Judge Goodman concluded that Amazon is entitled to summary judgment regardless of the survey issues. ECF No. 378 at 46-51. However, Judge Goodman also noted that it was significant that two different surveys, run at two different times, by both Amazon's expert (Dr. Dan Sarel)

18

and Wreal's expert (Dr. Thomas Maronick), found confusion to be "very low" (Dr. Maronick) or "statistically insignificant" (Dr. Sarel). ECF No. 378 at 46–47. Wreal's Objection says that these surveys showed no confusion because they were "premature," when "awareness was too low" for the Amazon Fire TV. ECF No. 379 at 18. This contradicts Wreal's own Complaint and prior factual allegations, which—as Judge Goodman noted—"emphasized Amazon's saturation of the market immediately at the Amazon Fire TV launch, even before the surveys were conducted." ECF No. 378 at 49. *See Tiger Direct*, 2005 WL 1458046, at *21 ("Given the substantial press garnered by Apple's Tiger, the Court does not credit TigerDirect's argument that it is too early to assess whether there is actual confusion in the marketplace . . . ."). Wreal now claims that although there was no confusion when the experts conducted the surveys because (Wreal argues) consumers were not aware of the Amazon Fire TV, the situation might be different now because "Amazon's Fire TV line has expanded considerably, there are now many variations, and its new Fire TV Cube provides full access to Amazon's immensely popular Alexa voice assistant." ECF No. 379 at 18. Yet this is citation-free speculation: Wreal offers no *evidence* that awareness has grown such that surveys would show different results than they did when both experts ran them. Instead, as Judge Goodman held, Wreal is left with a survey *from its own expert* that shows no confusion; and Wreal's attempt to argue that this survey showed no confusion because consumers were unaware of the Amazon Fire TV would be an admission that Wreal cannot demonstrate reverse confusion as a matter of law. *See* ECF No. 378 at 47–51; McCarthy on Trademarks § 23:10 ("When few of the senior user's customers will be exposed to or familiar with the junior user's mark, there will be no 'overwhelming' or 'swamping' effect on the senior user's mark and good will. In that case, reverse confusion will be unlikely.").

19

Nor is Wreal correct that the Court may not rely on Wreal's own disclosed expert's survey in granting summary judgment. ECF No. 379 at 18–19. Wreal's only authority for this proposition—an out-of-circuit district court decision, *LG Electronics USA, Inc. v. Whirlpool Corp.*, No. 1:08-cv-00242, 2010 WL 3766811 (N.D. Ill. Sept. 13, 2010)—involved an expert who submitted a declaration for the defendant opposing a preliminary injunction motion but who neither the plaintiff nor the defendant disclosed as an expert for trial. *See id.* at *1. Here, however, Wreal *has* identified Maronick as an expert witness for trial. *See* ECF No. 316 at 41. Wreal offers no authority for why this Court could not consider *its own disclosed expert's admissions under oath at deposition and the preliminary injunction hearing* as evidence in support of summary judgment, which is clearly proper under Fed. R. Civ. P. 56(c)(1)(A) (parties may cite to "materials in the record," including "depositions" or "other materials"). *See, e.g.*, *The Complaint of Bos. Boat III, LLC v. Galioto*, No. 13-62166-CIV, 2015 WL 5444162, at *8 (S.D. Fla. Sept. 16, 2015) (Lenard, J.) (granting summary judgment based in part on testimony of non-moving party's own expert).

**B.     No reasonable fact-finder could find damages or recoverable profits.**

Judge Goodman did not need to consider Amazon's argument on monetary recoveries because he concluded Amazon was entitled to summary judgment on liability. ECF No. 378 at 51. Wreal does not advance any argument in its Objection on monetary recovery. As Amazon argued in its summary judgment briefing and proposed Report and Recommendations, no reasonable fact-finder could find damages or recoverable profits. *See* ECF No. 205 at 19–20; ECF No. 288 at 10; ECF No. 365 at 37–40.

**V.     Conclusion**

For the foregoing reasons, Amazon respectfully requests that this Court adopt the Report in its entirety and grant summary judgment in Amazon's favor dismissing Wreal's claims.

Dated: June 7, 2019                    Respectfully submitted,

                                       By:    s/Jamie Zysk Isani
                                          Jamie Zysk Isani (Florida Bar No. 728861)
                                          HUNTON ANDREWS KURTH LLP
                                          1111 Brickell Avenue, Suite 2500
                                          Miami, Florida 33131
                                          Telephone: (305) 810-2500
                                          Facsimile: (305) 810-1675
                                          jisani@huntonak.com

                                          Justin A. Nelson *(pro hac vice)*
                                          Armstead Lewis *(pro hac vice)*
                                          SUSMAN GODFREY L.L.P.
                                          1000 Louisiana Street, Suite 5100
                                          Houston, Texas 77002-5096
                                          Telephone:  (713) 651-9366
                                          Fax: (713) 654-6666
                                          jnelson@susmangodfrey.com
                                          alewis@susmangodfrey.com

                                          Drew D. Hansen *(pro hac vice)*
                                          Edgar Sargent *(pro hac vice)*
                                          SUSMAN GODFREY L.L.P.
                                          1201 Third Ave, Suite 3800
                                          Seattle, Washington 98101
                                          Telephone: (206) 516-3880
                                          Facsimile: (206) 516-3883
                                          dhansen@susmangodfrey.com
                                          esargent@susmangodfrey.com

                                          *Counsel for Defendant Amazon.com*

## CERTIFICATE OF SERVICE

**I CERTIFY** that on June 7, 2019, a true and correct copy of the foregoing was served by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

<u>s/Jamie Zysk Isani</u>
Jamie Zysk Isani

## SERVICE LIST

Carlos Nunez-Vivas
can@wnflaw.com
Daniel Foodman
df@wnflaw.com
Dennis J. Wouters
djw@wnflaw.com
John G. Marfoe
jgm@wnflaw.com
WNF Law, P.L. - Waserstein Nunez & Foodman
1111 Brickell Avenue, Suite 2200
Miami, Florida 33131
Tel.: (305) 760-8500
Fax: (305) 760-8510

*Attorneys for Plaintiff WREAL, LLC*