# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.: 14-CIV-21385-LENARD/GOODMAN

WREAL, LLC, a Florida Limited
Liability Company,

      Plaintiff,

vs.

AMAZON.COM, INC., a Delaware
Corporation

      Defendant.

_____/

## WREAL'S RESPONSE IN OPPOSITION TO AMAZON'S MOTION IN LIMINE TO EXLUDE EVIDENCE OR ARGUMENT OF **ACTUAL DAMAGES AND STRIKE PLAINTIFF'S JURY DEMAND**[1]

Amazon's motion is little more than a thinly disguised motion for summary judgment, and its *second* attempt to sidestep the Eleventh Circuit Court of Appeals' mandate in this case. The Court already summarily dismissed Amazon's first attempt. (D.E. 417).

Re-branded as a motion in limine, Amazon's new motion seeks to exclude "evidence *or* argument of actual damages." (D.E. 422 at 1). But Amazon only can seek to exclude hypothetical late-disclosed evidence, and the problem for Amazon is that there is no such evidence to exclude – Wreal **does not** intend to offer any previously undisclosed evidence related to its damages.[2]

The request for an evidentiary ruling is a charade, plainly evident by Amazon's request that the Court exclude not just strawman "evidence" that it claims was wrongfully withheld from

---

[1] Amazon omits that *both* parties demanded a trial by jury. *See* D.E. 1, 10.

[2] Wreal will rely on information that Amazon has not yet disclosed related to its sales of products bearing Wreal's marks, but Amazon has not supplemented these disclosures. But as Amazon points out, and Wreal agrees, disgorgement is an equitable remedy, and thus this information has no bearing on the instant motion.

it, but also any argument whatsoever related to actual damages on that basis. Apparently, Amazon hopes that the Court will strike the jury demands made by both parties in their initial pleadings once it grants Amazon's backdoor motion for summary judgment.

Setting aside Amazon's brazen violation of the Court's August 16, 2022, order denying its request to renew its motion for summary judgment, Amazon's *third* attempt at what amounts to a thinly-veiled motion for summary judgment fails on the merits. That is because Amazon's argument is based on the mistaken premise that to be awarded actual damages under the Lanham Act, Wreal must put forth specific, highly complex theories of actual damages, quantified and explained by an expert. The Lanham Act does not require empirical quantification or expert testimony to support an award of actual damages.

Amazon takes aim at Wreal's request for lost profits, which Wreal cannot quantify, and will not seek. But the Lanham Act is much broader than merely lost profits. It compensates for *any* actual damage sustained by Wreal, including loss of goodwill and reputation, which are beyond a formulaic calculation, but are what Wreal has suffered because of Amazon's decision to cause reverse confusion.

Even if Wreal were limited to disgorgement of Amazon's wrongfully gained profits and injunctive relief (and it is not), Amazon ignores Wreal's pendant Florida common law claims, which allow for Wreal to be awarded punitive or nominal damages, both legal damages that preserve the right to a jury trial. Amazon simply ignored Wreal's state-law causes of action and cannot assert new arguments in its reply brief.

In fact, Amazon does not even bother explaining to this Court why it *should* strike the jury demands made by both parties in this case, instead apparently assuming incorrectly that if the right does not exist, the jury automatically must go. But there is no Constitutional right to a non-jury

trial. And that is all Amazon puts forth. The Court should deny Amazon's request. (D.E. 416 at 3 ("[W]e conclude that the district court erred in granting summary judgment and should have allowed the case to proceed to trial."); *id.* at 49 ("This is not to say that Amazon may not ultimately prevail on the merits; rather, it must do so before a jury.").)

## <u>BACKGROUND</u>

On July 27, 2022, the Eleventh Circuit Court of Appeals issued its mandate in this case, reversing summary judgment and remanding for a jury trial. (D.E. 416). Two days later, the Court re-opened this case, saying that it "will be set for a jury trial by separate order." (D.E. 417). On August 4, 2022, Amazon filed its motion for a pre-trial conference. (D.E. 418). As part of that motion, Amazon suggested that it would ask the Court to allow it to renew its motion for summary judgment on the issue of damages. *Id.* Wreal would have opposed that, but did not have to, because on August 16, 2022, this Court denied Amazon's request for permission to renew its Motion for Summary Judgment on the issue of damages. D.E. 419 at 1-2. The Court explained that permitting Amazon to do so would be "outside the scope of the Eleventh Circuit's Mandate…." *Id*. (citing *Wreal*, *LLC v. Amazon.com, Inc.,* 38 F.4th 114, 140 (11th Cir. 2022) ("This is not to say that Amazon may not ultimately prevail on the merits; rather, it must do so before a jury.")).

Apparently still unsatisfied that it was unable to renew its motion for summary judgment, on October 19, 2022, Amazon filed the instant Motion in Limine to Exclude Evidence or Argument of Actual Damages and Strike Plaintiff's Jury Demand. ECF No. 422. In it, Amazon tries to sidestep the Eleventh Circuit's mandate and this Court's August 16, 2022, order by swapping out the name and calling it a "Motion in Limine."

Amazon's argument reveals that its request for an evidentiary ruling is little more than a strawman – Wreal has not and does not intend to introduce any previously undisclosed evidence

at trial. Yet, Amazon presumes that if the new evidence Amazon concocted is excluded, the Court will automatically prevent Wreal from introducing *any* evidence or argument related to Wreal's actual damages. Thus, Amazon's motion is little more than a summary judgment motion passing itself off for a motion in limine.[3]

This is enough for the Court to deny Amazon's unauthorized motion for summary judgment. Deciding it on the merits would yield the same result. That is because Amazon fundamentally misconstrues the types of damages available under the Lanham Act and fails to address the harms caused by reverse confusion.

It is also enough to deny Amazon's request to set aside the parties' respective jury demands. The parties agree that the Seventh Amendment provides for a jury trial by right for Wreal's Lanham Act claims provided any amount of actual damages are available to it.

Even if Amazon were correct, however, it fails to address Wreal's Florida common law tort claims for trademark infringement and unfair competition, which undeniably provide for a trial by jury and compensatory damages. Indeed, even if actual damages are not available under Florida's state law claims – and Amazon makes no argument whatsoever about those (and cannot for the first time on reply), Wreal can still recover punitive or even nominal damages, both of which must be determined by a jury.

## **ARGUMENT**

Aside from the procedural problems with Amazon's repeated attempts to re-litigate its failed motion for summary judgment, Amazon unsurprisingly is, once again, wrong on the facts

---

[3] It should go without saying that the Court should not agree with Amazon's request to disregard the Eleventh Circuit's mandate. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 844 (11th Cir. 2018) (reversing for failure to follow mandate, explaining, with respect to the mandate: "We don't know what else we could have said other than, perhaps, 'and we really mean it.' Well, we really did mean it. And we still do.").

and law. This is not a request for an evidentiary ruling – there is no dispute there – Wreal does not have any undisclosed evidence to exclude. The issue is moot. To the extent the Court wants to entertain Amazon's third request to grant it summary judgment on damages, Amazon fails. That is because Amazon fails to address the scope of damages available under the Lanham Act, and the harm caused by reverse confusion.

As the Eleventh Circuit explained, the "paradigm case [of reverse confusion] is that of a knowing junior user with much greater economic power who saturates the market with advertising of a confusingly similar mark, overwhelming the marketplace power and value of the senior user's mark." *Wreal*, *LLC*, 38 F.4th at 127 (11th Cir. 2022). (citation omitted). "[B]oth the harm and theory of infringement in a reverse-confusion case differ from what is claimed in a forward-confusion case." *Id.* The harm in reverse confusion is the type that does not lend itself to precise damage calculations like lost profits, for example. Instead, the harms that can occur are "varied," and include the "smaller, senior user of the mark," Wreal, being believed to be the infringer, when in fact Amazon consciously decided to infringe to create reverse confusion:

> "The record evidence established that when Amazon launched the fireTV, it specifically tried to flood the market with advertising in an attempt to lower awareness of Wreal's similarly named mark. We take Amazon at its word, and we therefore conclude that the intent factor weighs heavily in favor of Wreal."

*Id.* at 137. Indeed, in a reverse confusion case:

> [t]he public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

*Id.* at 128 (quoting *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)).

Turning back to Amazon's "motion in limine," it seeks to exclude unidentified "evidence"

of the precise calculations, by way of some expert that Wreal somehow failed to disclose, but in reality, simply does not exist. The law is clear. Wreal does not have to put forth a precise calculation of its damages. It follows that no expert testimony is required. This means that nothing is undisclosed. Amazon has all the information.

"Actual Damages" under the Lanham Act is a broad term that encompasses any type of harm that is caused by trademark infringement. It is not merely "lost profits." Rather, damages include "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts" such as the costs of corrective advertising or injury to business reputation or goodwill. *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986).

Courts in reverse confusion cases have looked at the advertising expenditure of the Defendant who saturated the marketplace with advertising and applied the FTC's guideline of 25% of that amount to correct for the harm caused. This is a simple calculation, based solely on information already in Amazon's possession.[4] *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1375 (10th Cir.1977) (awarding 25% of what the Defendant spent saturating the market with advertising as damages in a reverse confusion case).

In determining the extent of the plaintiff's actual damages, courts assess the harm the defendant's conduct may have caused to the plaintiff's goodwill by considering "a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a

---

[4] But not in Wreal's possession – at least nothing up-to-date. Wreal asked for Amazon's advertising expenditures during discovery, and Amazon has the duty to supplement. Wreal does not have to demand this from Amazon, as Amazon concedes in its brief that it is incumbent on the producing party to supplement with new information. Wreal is not prejudiced by the fact that Amazon has not supplemented, however, and will work with Amazon's counsel as to the timing of supplemental discovery of already-issued document requests.

defendant's bad acts." *N. Atl. Operating Co., Inc. v. Hammad Enterprises, Inc*., No. 19-60200-CIV, 2020 WL 1286180, at *3 (S.D. Fla. Jan. 15, 2020). "In measuring harm to goodwill [in Lanham Act cases], a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." *ADT LLC v. Vivint, Inc.,* No. 17-CV-80432, 2017 WL 8404330, at *7 (S.D. Fla. Nov. 20, 2017). Wreal invested approximately $22 million building its brand and reputation. *See* Ex. 1, excerpts of June 4, 2015 30(b)(6) Deposition of Wreal, LLC, at 28-29.

**1. Wreal Properly Disclosed its Actual Damages.**

The evidence Wreal already disclosed is sufficient to sustain an award of actual damages under the Lanham Act. In its initial disclosures, served on August 14, 2014, over 8 years ago, Wreal disclosed that its damages may include any diminution in value that results from Amazon's illegal use of its mark, "including but not limited to loss of good will and injury to WREAL's reputation." D.E. 422-1.

Even more, Amazon asked Wreal in an interrogatory to "[i]dentify all material facts that you contend show or evidence how Amazon's Fire TV or Fire TV Stick have harmed W[real] or its business in any way." In response, Wreal answered:

- Amazon's continued use in commerce of the Fire TV and Fire TV Stick marks, and its prominent advertising of those marks, will cause Wreal to *lose the value of its trademark, its product identity, corporate identity, control over its goodwill and reputation, and the ability to venture into new markets*
- Sales decreased at a faster pace since the release of Fire TV
- Wreal's FyreTV *no longer appears near the top of Google search results when searching for "Fire TV," whereas before, it did.*
- *Wreal will be forced to abandon using its own brand name which will result in the destruction of years of hard work and capital that Wreal put into building up its brand name and reputation.*
- *Wreal faces the risk of losing the ability to contract with content providers as content providers who are likely to come to view Wreal as infringing on Amazon*

- Wreal faces the risk of losing potential customers who are likely to come to view Wreal as infringing on Amazon

D.E. 422-2 (emphasis added).

And one of the documents that Wreal identified as supporting its claim that it was suffering actual damage was disclosed as such and Amazon even identifies it in its brief, albeit incompletely. (D.E. 422-5). That April 3, 2014, email between Wreal and its advertising partners not only said that Wreal could not benefit[5] from Amazon's launch, but went on to say that it "won't be possible" to reclaim its marks in search rankings. *Id.* This was the specifically intended consequence of Amazon's decision to cause reverse confusion.

Wreal will not seek lost profits, or any damages related to lost sales, as the only type of confusion in this case is reverse confusion. And while Wreal did not put forth a precise calculation, that is because its damages cannot be precisely calculated. But the Lanham Act does not require a precise calculation. *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) ("Unlike in the case of future lost profits caused by breach of contract, 'Lanham Act damages may be awarded even when they are not susceptible to precise calculations'") (quoting *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564-65 (11th Cir. 1986))**.**

Nor is expert testimony required as Amazon suggests. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (awarding damages based on testimony from corporate officer). *See also N. Atl. Operating Co., Inc. v. Hammad Enterprises, Inc*., No. 19-60200-CIV, 2020 WL 1286180, at *3 (S.D. Fla. Jan. 15, 2020) ("The Lanham Act demands neither empirical quantification nor expert testimony to support a monetary award for actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages.");

---

[5] It is a very common misconception in reverse confusion cases that the senior user will somehow benefit from the saturation.

*ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 8404330, at *7 (S.D. Fla. Nov. 20, 2017) (same) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012)). Thus, Wreal does not put forth an expert to testify, nor does it have to – it will not present complex calculations for the jury.

What is remarkable is that Amazon, the wrongdoer here – seeks to shield itself from any consequences of its intended destruction of Wreal's ability to use its mark by relying on the difficulty Wreal will have in determining the extent of its damages and putting a precise number on it. "The wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury." *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1111 (5th Cir. 1976) (quoting *Kestenbaum v. Falstaff Brewing Corporation,* 514 F.2d 690, 698 (5th Cir. 1975) (citation omitted)). Amazon cannot get away from its wrongful actions so easily. This case should, as the Constitution and the Eleventh Circuit mandate, be tried by a jury, and the Court should decline Amazon's flawed request.

**2.   This Case Should be Tried by a Jury.**

Wreal's claim for actual damages is sufficient to preserve the right to a jury trial. Aside from compensatory damages, addressed in the previous section, Wreal's Florida common law claims provide for legal damages in the form of punitive damages or nominal damages. Either theory preserves Wreal's right to a jury trial. Amazon does not address either, nor could it.

**a.   The Jury May Award Punitive Damages.**

Even if actual damages were not available to Wreal under the Lanham Act, and they are, Wreal also seeks legal damages in the form of punitive damages. Wreal disclosed that it seeks punitive damages as part of its Rule 26(a) disclosures. And while it did not specifically include them in its initial pleading, it did not have to. *See Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir. 1987) (citing

*Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972) ("It is not necessary to claim exemplary damages by specific denomination if the facts show that the wrong complained of was inflicted with malice, oppression, or other like circumstances of oppression.") (internal quotation omitted)); *see also* Fed. R. Civ. P. 54(c) ("Every final judgment except for a default judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.)

The jury will have no trouble finding Amazon's conduct to be of the type that must be deterred by way of punitive damages. Amazon's infringement is no accident. It acted with specific intent. Amazon confessed that reverse confusion was by design.Assuming the jury takes Amazon at its word, as the Eleventh Circuit did, Amazon had the specific intent to cause reverse confusion. *Wreal,* 38 F.4th at 137 ("The record evidence established that when Amazon launched the fireTV, ***it specifically tried to flood the market with advertising in an attempt to lower awareness of Wreal's similarly named mark***. We take Amazon at its word, and we therefore conclude that the intent factor weighs ***heavily*** in favor of Wreal.") (emphasis added). It is bad acts such as Amazon's that must be punished to deter the same misconduct in the future.

### b.  The Jury May Award Nominal Damages.

At the very least, nominal damages are available to Wreal under Florida common law for trademark infringement (Count IV) and unfair competition (Count V). Amazon does not address Wreal's Florida common law claims. Nominal damages are not the type that must be disclosed or quantified in discovery – but they are in the province of the jury.

In *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), the United States Supreme Court stated: "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory

damages." *Id.* at 802. This is so if Wreal "cannot or chooses not to quantify that harm in economic terms." *Id.*

Amazon does not address Wreal's state law claims in its motion. Even if it did, it could not dispute that Wreal's common law claims for trademark infringement and unfair competition, both torts, are legal claims that must be tried by jury upon a timely demand.

Thus, even if Wreal's Lanham Act claim was purely equitable, and it is not, Wreal would still have a right to a jury trial based on its state law claims. *Wreal*, 38 F.4th 114, 125 n. 8 ("As noted by the district court, the protection that these [] bodies of law provide is coextensive.")[6]

### c. Absent a Constitutional Right, the Court Should Empanel an Advisory Jury.

As explained above, Wreal has a right to a trial by jury in this case. Even if it didn't, it does not follow that this case must not be tried by jury. And Amazon puts forth no reason *why* this Court should set aside both parties' jury demands.[7]

The Seventh Amendment provides a right to a jury trial for common law cases, but there is no corresponding right to a non-jury trial. *Simler v. Conner*, 372 U.S. 221, 222 (1963) ("The federal policy favoring jury trials is of historic and continuing strength."); *see also Hughes v. Priderock Cap. Partners, LLC*, No. 9:18-CV-80110, 2019 WL 771801, at *3 (S.D. Fla. Feb. 21, 2019) (same) (quoting *Simler,* 372 U.S. at 222)). Indeed, Fed. R. Civ. P. 39(c)(1) specifically permits the Court to empanel a jury in an advisory capacity even if there is no Constitutional right to one.

That is what the Court should do here, if it somehow finds that there is no Constitutional

---

[6] The Eleventh Circuit also discussed Wreal's FDUPTA claim, which is the only purely equitable claim Wreal brought against Amazon. Of Wreal's five causes of action, its FDUPTA one is the only one where it does not have the right to a jury trial *by itself*.

[7] Amazon's motion is to strike Wreal's demand, but Amazon forgets that it also demanded a jury trial. D.E. 10.

CASE NO.: 14-21385-CIV-LENARD/GOODMAN

right. The issue is whether reasonable ordinary consumers are likely to be confused. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 921 F.3d 1343, 1364 (11th Cir. 2019) (analyzing confusion from the perspective of the "reasonable consumer"); *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337-38, 1342 (11th Cir. 1999) (same). The jury will be made up of reasonable ordinary consumers. It will be in the best position to determine whether there is a likelihood of confusion. *Cf. Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422, 135 S. Ct. 907, 911, 190 L. Ed. 2d 800 (2015) ("Application of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury.")

## CONCLUSION

Amazon's "motion in limine" should be denied. Its thinly-veiled unauthorized third attempt at summary judgment should be denied. Its request to dispense with a jury made of reasonable ordinary consumers, demanded by both parties, must be denied.

Respectfully submitted,

WASERSTEIN & NUNEZ, PLLC
*Attorneys for Applicant Decevale*
1124 Kane Concourse
Bay Harbor, FL 33154
Telephone: (305) 563-1011

s/John Marfoe
Carlos Nunez-Vivas, Esq.
Florida Bar No. 128181
carlos@wnlawgroup.com
John Marfoe
Florida Bar No. 101535
jmarfoe@wnlawgroup.com

## CERTIFICATE OF SERVICE

I certify that on November 9, 2022, this document was served by the Court's ECF filing system on all counsel of record.

By: /s/ John Marfoe