## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-21385-CIV-LENARD

**WREAL, LLC,**

      Plaintiff,

**v.**

**AMAZON.COM, INC.,**

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART AMAZON.COM, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT OF ACTUAL DAMAGES AND STRIKE PLAINTIFF'S JURY DEMAND (D.E. 422)

**THIS CAUSE** is before the Court on Defendant Amazon.com, Inc.'s Motion in Limine to Exclude Evidence or Argument of Actual Damages and Strike Plaintiff's Jury Demand, ("Motion," D.E. 422, 425-1), filed October 19, 2022.[1]  Plaintiff Wreal, LLC filed a Response on November 9, 2022, ("Response," D.E. 428), to which Amazon filed a Reply on November 23, 2022, ("Reply," D.E. 429).   Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.     Background

Plaintiff Wreal, LLC ("Wreal") "is a Miami-based technology company that was formed in 2006 with the goal of developing a platform for streaming video content over the internet."  Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1246 (11th Cir. 2016)

---

[1] Defendant filed a partially redacted version of the Motion on the docket, (D.E. 422), and an unredacted version of the Motion under seal, (D.E. 425-1).

("Wreal I").  In connection with its business, Wreal "registered the marks 'FyreTV' and 'FyreTV.com' with the U.S. Patent and Trademark Office on October 14, 2008 . . . ."  Id.  "Through FyreTV, Wreal exclusively streams adult content, the majority of which is hardcore pornography."  Id.  Its customers can access the FyreTV service through the FyreTV.com website, or by purchasing a set-top box called the FyreBoXXX.  Id.

Defendant Amazon.com, Inc. ("Amazon") "is the largest online purveyor of goods in the United States."  Wreal, LLC v. Amazon.com, Inc., 38 F.4th 114, 122 (11th Cir. 2022) ("Wreal II").  It has been using the mark "Fire TV" (or "fireTV") in commerce since 2012, id. at 121, and began offering a set-top box called "fireTV" in April 2014.  Id. at 122.

On April 17, 2014, Wreal filed a Complaint against Amazon, asserting the following causes of action:

- Count I: trademark infringement in violation of the Lanham Act,[2] 15 U.S.C. § 1114(1)(a), (Compl. (D.E. 1) ¶¶ 55-66);

---

[2]       Wreal is proceeding under "reverse-confusion" theory of trademark infringement.  As the Eleventh Circuit recently explained:

> Reverse confusion is not a standalone claim in trademark law; rather, it is a theory of how trademark infringement can occur.  In reverse-confusion cases, the plaintiff is usually a commercially smaller, but more senior, user of the mark at issue.  The defendant tends to be a commercially larger, but more junior, user of the mark.  The plaintiff thus does not argue that the defendant is using the mark to profit off plaintiff's goodwill; instead, the plaintiff brings suit because of the fear that consumers are associating the plaintiff's mark with the defendant's corporate identity.  It is this false association and loss of product control that constitutes the harm in reverse-confusion cases.

Wreal II, 38 F.4th at 121.

- Count II: false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), (id. ¶¶ 67-74);

- Count III: violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"), (id. ¶¶ 75-81);

- Count IV: trademark infringement in violation of Section 495.131, Florida Statutes, (id. ¶¶ 82-92); and

- Count V: unfair competition under Florida common law, (id. ¶¶ 93-96).

The Complaint's Prayer for Relief seeks declaratory and injunctive relief, compensatory and statutory damages, disgorgement of illegally obtained profits, attorneys' fees, costs, and "[a]ny such other and further relief as this Court may deem just and equitable." (Id. at 17-18.)

On September 22, 2014, Wreal filed a Motion for Preliminary Injunction, (D.E. 28), which the Court referred to Magistrate Judge Jonathan Goodman, (D.E. 35).  Following an evidentiary hearing, Judge Goodman issued a Report recommending that the Court deny the Motion for Preliminary Injunction.[3]  (D.E. 130.)  Relevant here, Judge Goodman found that Wreal's Chief Operating Officer, Rodrigo Franco, "could not identify any actual damage—loss of business, lost sales, or subscriber cancellations—due to Amazon's Fire TV." (Id. at 43.)  Wreal filed Objections to the Report, (D.E. 132), but the Court adopted

---

[3]    See Wreal LLC v. Amazon.com, Inc., CASE NO. 14-21385-CIV-LENARD/GOODMAN, 2015 WL 12550932 (S.D. Fla. Feb. 3, 2015).

the Report and denied Wreal's Motion for Preliminary Injunction, (D.E. 177).   Wreal appealed, (D.E. 195), and the Eleventh Circuit affirmed the Court's Order, (D.E. 342).[4]

Meanwhile, on October 13, 2015, Amazon filed a Motion for Summary Judgment, (D.E. 205, 224),[5] which the Court referred to Judge Goodman, (D.E. 341).   On April 9, 2019, Judge Goodman issued a Report recommending that the Court grant the Motion. (D.E. 378.)   Specifically, Judge Goodman found that Amazon was entitled to summary judgment on liability, and therefore he did not need to consider the issue of damages and disgorgement.   (Id. at 51.)   Wreal filed Objections, (D.E. 379), but Amazon did not. Ultimately, the Court adopted the Report and granted Amazon's Motion for Summary Judgment.  (D.E. 381.)   Wreal appealed, (D.E. 384), and the Eleventh Circuit reversed and remanded for trial, (D.E. 416), finding that the relevant factors weighed "heavily in favor" of Wreal.   Wreal II, 38 F.4th at 140.   The Eleventh Circuit's opinion concludes with this sentence: "This is not to say that Amazon may not ultimately prevail on the merits; rather, it must do so before a jury."  Id.

Following remand, Amazon filed a Motion for Case Management Conference seeking to discuss two issues: (1) whether the Court would permit Defendant to renew its Motion for Summary Judgment on the issue of damages, and (2) whether the Court would specially set this matter for trial.  (D.E. 418.)   On August 16, 2022, the Court issued an Order explaining that it could dispose of the issues without a case management conference.

---

[4]      See Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1246 (11th Cir. 2016).

[5]      Plaintiff filed a redacted version of the Motion for Summary Judgment on the docket, (D.E. 205), and an unredacted version under seal, (D.E. 224).

(D.E. 419 at 1.)  First, it denied Amazon's request for permission to renew its Motion for Summary Judgment on the issue of damages because: (1) it "would be outside the scope of the Eleventh Circuit's Mandate which reversed the Court's Order on Summary Judgment and remanded for trial[,]" (id.); and (2) in his Report and Recommendation on Amazon's Motion for Summary Judgment, Judge Goodman found that there was no need to analyze the issue of Plaintiff's damages because Defendant was entitled to summary judgment on liability, and Amazon did not file Objections seeking a ruling on damages in the alternative to the liability ruling, (id. at 2).  However, the Court granted the Motion for a specially set trial, and solicited mutually-agreed-upon trial periods for the Court's consideration.  (Id.)  The Parties later submitted potential trial periods for the Court's consideration, (D.E. 420), and on October 12, 2022, the Court entered an Order scheduling trial for September 11, 2023, (D.E. 421).

On October 19, 2022, Amazon filed the instant Motion in Limine to Exclude Evidence or Argument of Actual Damages and Strike Plaintiff's Jury Demand.  (D.E. 422, 425-1.)  Wreal filed a Response, (D.E. 428), to which Amazon filed a Reply, (D.E. 429).

## II.    Legal Standard

A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial.  See Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013).  "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial."  Id.

Generally, "[m]otions in limine are disfavored."  Id.  "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds."  United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).   Accordingly, if evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."  Id. (internal citation and quotation marks omitted).  Even when a trial court does rule in limine, its ruling "remains subject to reconsideration by the court throughout the trial" and the parties may renew their objections as appropriate.  Stewart v. Hooters of Am., Inc., No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007).

## III.   Discussion

Amazon requests that the Court preclude Wreal "from introducing at trial any evidence or argument related to actual damages"; and, if the Court grants that requests, Amazon moves to strike Wreal's jury demand.  (Mot. at 1.)

### a.   Evidence of actual damages

First, Amazon argues that the Court should exclude evidence and argument related to actual damages because Wreal failed to disclose a computation of its claimed actual damages in violation of Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and (e), and such failure was not substantially justified or harmless under Rule 37(c)(1).  (Mot. at 2, 7-10 (citing City of Rome v. Hotels.com, L.P., 549 F. App'x 896, 905 (11th Cir. 2013); Carter v. BPCL Mgmt., LLC, CASE NO. 19-60887-CIV-DIMITROULEAS/SNOW, 2021 WL 7502558, at *2 (S.D. Fla. May 10, 2021); Vital Pharms., Inc. v. Monster Energy Co., CASE

NO. 19-60809-CIV-ALTMAN/Hunt, 2020 WL 13513442, at *1-3 (S.D. Fla. May 20, 2020), aff'd 2022 WL 3083273 (11th Cir, 2022); Shock v. Aerospace Integration Corp., No. 3:08cv304/RV/EMT, 2009 WL 595923, at *5 (N.D. Fla. Mar. 6, 2009); Boldstar Tech., LLC v. Home Depot USA, Inc., CASE NO.: 07-80435-Civ-Hurley/Hopkins, 2008 WL 11320010, at *2 (S.D. Fla. Feb. 28, 2008)).)  Amazon argues that "any purported evidence of actual damages offered by Plaintiff at this late stage would consist of speculative and unreliable lay-opinion testimony that is inadmissible under Rule 701 of the Federal Rules of Evidence."  (Mot. at 2, 10-12 (citing Tim Hortons USA, Inc. v. Singh, CASE NO. 16-23041-CIV-GOODMAN, 2017 WL 4837552, at *14 (S.D. Fla. Oct. 25, 2017)).)   Amazon argues that it would be "severely prejudiced by any belated attempt by Plaintiff to remedy its persistent and abject failure to comply with its disclosure obligations during pre-trial discovery."  City of Rome, 549 F. App'x at 905; Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1222 (11th Cir. 2010); Carter, 2021 WL 7502558, at *3.

Wreal initially argues that the Court should deny the Motion in Limine as a thinly-veiled attempt at sidestepping the Court's Order denying Amazon's request to renew its Motion for Summary Judgment on the issue of damages.  (Resp. at 1, 4.)   On the merits, Wreal states that it is not seeking damages for lost profits and will not introduce evidence of lost profits.  (Id. at 1-2, 8.)   However, Wreal states that it is seeking other damages available under the Lanham Act—including damages for loss of goodwill and reputation— "which are beyond a formulaic calculation[.]"   (Id. at 2; see also id. at 5 ("The harm in reverse confusion is the type that does not lend itself to precise damage calculations[.]"))  As such, Wreal argues that it "does not have to put forth a precise calculation of its damages

. . . ." (Id. at 6.)  It argues that "[c]ourts in reverse confusion cases have looked at the advertising expenditure of the Defendant who saturated the marketplace with advertising and applied the FTC's guideline of 25% of that amount to correct for the harm caused. This is a simple calculation, based solely on information already in Amazon's possession." (Id. (citing Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1375 (10th Cir. 1977)).)  It further argues that "[i]n determining the extent of the plaintiff's actual damages, courts assess the harm the defendant's conduct may have caused to the plaintiff's goodwill by considering 'a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts.'"  (Id. at 6-7 (quoting N. Atl. Operating Co., Inc. v. Hammad Enters., Inc., CASE NO. 19-60200-CIV-ALTMAN/Hunt, 2020 WL 1286180, at *3 (S.D. Fla. Jan. 15, 2020)); see also id. at 7 (citing ADT LLC v. Vivint, Inc., Case No.: 17-cv-80432-MIDDLEBROOKS, 2017 WL 8404330, at *7 (S.D. Fla. Nov. 20, 2017)).)  In this regard, Wreal states that it "invested approximately $22 million building its brand and reputation."  (Id. (citing Dep. Tr. of Ferdinand Toro (D.E. 428-1) at 28-29.)  Wreal argues that it properly disclosed in its Initial Disclosures "that its damages may include any diminution in value that results from Amazon's illegal use of its mark, 'including but not limited to loss of good will and injury to WREAL's reputation[,]'" (id. (citing Initial Disclosures, D.E. 422-1)), and identified in a response to an Interrogatory facts that established such damages, (id. at 7-8 (citing Wreal's Resp. to Second Set of Interrog., D.E. 422-2)).  Finally, Wreal argues that Amazon should not be permitted to benefit from its wrongful conduct just because Wreal cannot put

a precise number on its damages.  (Id. at 9 (citing Bangor Punta Ops., Inc. v. Universal Marine Co., Ltd., 543 F.2d 1107, 1111 (5th Cir. 1976)).)

      In its Reply, Amazon argues that its Motion in Limine is not an improper summary judgment motion, and that its request to exclude evidence of actual damages is the proper subject of a motion in limine.  (D.E. 429 at 3-4 (citing Mee Indus., 608 F.3d at 1210; Nymbus, Inc. v. Chrome Fed. Credit Union, CASE NO. 18-CV-25081-MCALILEY, 2021 WL 8894791, at *3-4 (S.D. Fla. June 3, 2021)).  On the merits, Amazon argues that Wreal admits that it never disclosed a computation of damages as required by Rules 26(a) and (e). (Id. at 4-7.)  Amazon argues that Wreal "largely tries to divert attention from the relevant issue, by focusing on whether its asserted actual damages theories are legally sufficient . . . , rather than properly focusing on whether it disclosed the computation of its damages or even the methodology of calculation."  (Id. at 4.)  It argues that Rule 26(a)'s disclosure requirement is not satisfied by simply listing categories of possible damages.  (Id. at 5 (citing Boldstar, 2008 WL 11320010, at *2); see also id. at 7 (citing Mee Indus., 608 F.3d at 1222; Design Strategy Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006); Vital Pharms., 2022 WL 3083273, at *3).)  In response to Wreal's argument that it did not need to disclose any specific computation because its "damages cannot be precisely calculated[,]" Amazon argues that "[t]he inquiry here is not whether Wreal's actual damages are adequately precise; it is whether Wreal disclosed any computation of those damages to Amazon."  (Id. (citing Vital Pharms., 2022 WL 3083273, at *4; Nymbus, 2021 WL 8894791, at *4).)  It further argues that although "Wreal contends that it does not have a precise number to disclose," in its Response brief Wreal identified at least two computations for actual

damages that it intends to present to the jury—specifically, (1) "corrective advertising" computations based on the defendant's advertising expenditures and (2) loss of goodwill computations based on a plaintiff's expenditures in building its reputation.  (Id. at 6 (citing Resp. at 6-7).)  Amazon argues, however, that "Wreal identified these alleged computations for the first time in its opposition brief, not as part of its discovery obligations."  (Id.)  Amazon further asserts that Wreal "does not attempt to argue that its nondisclosure was substantially justified or harmless."  (Id. at 7-8.)  It argues that Wreal's argument regarding Amazon benefiting because Wreal cannot place a precise number on its damages improperly conflates disclosure with precision.  (Id.)  It argues that Wreal's nondisclosure "harmed Amazon here by depriving it of the opportunity to 'test the Plaintiff's theory in discovery—by, for example, requesting relevant evidence, developing targeted expert testimony, or subjecting the Plaintiff's theory to scrutiny.'"  (Id. at 8 (quoting Vital Pharms., 2020 WL 13513442, at *2).)  As such, it argues that any evidence of actual damages should be excluded.  (Id. (citing Ryder Truck Rental, Inc. v. Logistics Resource Solutions, Inc., Case No. 21-21573-CIV-LENARD/LOUIS, 2022 WL 2348642, at *34 (S.D. Fla. May 26, 2022)).)

Rule 26(a)(1) of the Federal Rules of Civil Procedure governs the initial disclosures each party is required to make in every case (unless "exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court").  Fed. R. Civ. P. 26(a)(1)(A).  As relevant here, Rule 26(a)(1) provides that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . . ."  Fed. R. Civ. P 26(a)(1)(A)(iii).  Rule 26(e) requires a party to

supplement or correct its initial disclosures (and discovery responses) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ."  Fed. R. Civ. P 26(e)(1)(A).  Pursuant to Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Initially, the Court finds that Amazon's Motion in Limine is not an improper motion for summary judgment on the issue of damages.  The Court finds that a request to exclude evidence of damages pursuant to Rule 37(c)(1) for failure to disclose a computation of those damages under Rule 26(a)(1) is the proper subject of a motion in limine.  See Mee Indus., 608 F.3d at 1221-22 (affirming district court's order granting motion in limine and excluding evidence of loss of goodwill damages under Rule 37(c)(1) because the plaintiff failed to disclose a computation of those damages as required by Rule 26(a)(1) and (e)); Nymbus, 2021 WL 8894791, at *3-7 (granting motion in limine to exclude evidence of lost profits damages under Rule 37(c)(1) because the plaintiff failed to disclose a computation of those damages as required by Rule 26(a)(1) and (e)).

Second, the Court finds that Wreal failed to provide a computation of its claimed damages in its Initial Disclosures in violation of Rule 26(a)(1)(A)(iii), and failed to supplement its Initial Disclosures with a computation of claimed damages in violation of Rule 26(e)(1)(A).  Wreal's Initial Disclosures provide only a general statement regarding the categories of damages it "may" seek, and admits that "[a] precise calculation of

WREAL's actual damages has not yet been determined."[6]  (Pl.'s Initial Disclosures (D.E. 422-1) at 4.)   Thereafter, Wreal never supplemented its Initial Disclosures with a computation of damages.  Although Wreal indirectly mentioned its <u>theory</u> of damages in an answer to an interrogatory,[7] (<u>see</u> Second Set of Interrogs. (D.E. 422-2) at 12, Resp. to Interrog. 15 (D.E. 422-2)),[8] and produced a Profit and Loss statement in discovery, (<u>see</u>

---

[6]      Wreal's Initial Disclosure No. 3 states, in its entirety:

Rule 26(a)(1)(A)(iii) Disclosures:

WREAL seeks temporary and permanent injunctive relief, as well as damages. WREAL's damages may include WREAL's lost profits as a result of Defendant Amazon.com, Inc's ("Defendant") illegal use of the FyreTV® and FyreTV.com® marks, and/or profit obtained by Defendant as a result of its illegal actions, and/or any diminution in the value of WREAL as a result of Amazon's illegal use of the FyreTV® and FyreTV.com® marks, including but not limited to loss of good will and injury to WREAL's reputation. A precise calculation of WREAL's actual damages has not yet been determined. WREAL is also entitled to its actual attorney's fees and costs pursuant to 15 U.S.C. §§ 1117(a). In addition, WREAL is entitled to treble damages pursuant to provisions of the Lanham Act, and to recover punitive damages to the extent permitted by Florida law.

(Pl.'s Initial Disclosures (D.E. 422-1) at 4.)

[7]      Wreal also points to an email it apparently produced in discovery in which one of Wreal's "advertising partners" expressed to a Wreal representative that he could not "see any clear way we can benefit from" Amazon's launch of FireTV, and that it "won't be possible for an adult site to rank for."  (Resp. at 8 (citing email from "Adrian" to Fabio Vasco, (Apr. 3, 2014 10:36 AM).)  The Court finds that this email does not satisfy Rule 26(a)(1)(A)(iii)'s "computation" disclosure requirement.

[8]      Interrogatory No. 15 of Amazon's Second Set of Interrogatories states: "Identify all material facts that you contend show or evidence how Amazon's Fire TV or Fire TV Stick have harmed WREAL or its business in any way."  (D.E. 422-2 at 13.)  Wreal's Response states:

Amazon's continued use in commerce of the Fire TV and Fire TV Stick marks, and its prominent advertising of those marks, will cause Wreal to lose the value of its trademark, its product identity, corporate identity, control over its goodwill and reputation, and the ability to venture into new markets.  Sales decreased at a faster pace since the release of Fire TV.  Wreal's FyreTV® no longer appears near the top of Google search results when searching for "Fire TV," whereas before, it did.

D.E. 425-2), the Eleventh Circuit has found this to be insufficient to satisfy the computation disclosure requirement under Rules 26(a) and (e).  <u>Vital Pharms.</u>, 2022 WL 3083273, at *3 ("While VPX identified categories of damages and produced financial records, it never presented the required computation of lost sales or loss of goodwill, much less how those damages might be computed.").  As in <u>Vital Pharmaceuticals</u>, Wreal never disclosed the required computation of damages, nor explained how those damages might be computed. <u>See also</u> <u>Design Strategy</u>, 469 F.3d at 295 ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents."); <u>Boldstar Tech.</u>, 2008 WL 11320010, at *2 (finding that the plaintiff's interrogatory response identifying the categories of claimed damages to be insufficient under Rule 26(a) because it failed to disclose a computation of those damages).

The Court rejects Wreal's argument that it was not required to disclose a computation of damages "because its damages cannot be precisely calculated."  (Resp. at 8-9.)  Wreal's "alleged inability to accurately calculate [damages] does not excuse [it] from providing at least a rudimentary calculation."  <u>Nymbus</u>, 2021 WL 8894791, at *4.  <u>See also</u> <u>Pro. LED Lighting, Ltd. v. Aadyn Tech LLC</u>, Case No. 14-cv-61376-BLOOM/VALLE,

---

Wreal will be forced to abandon using its own brand name which will result in the destruction of years of hard work and capital that Wreal put into building up its brand name and reputation.  Wreal faces the risk of losing the ability to contract with content providers as content providers who are likely to come to view Wreal as infringing on Amazon.  Wreal faces the risk of losing potential customers who are likely to come to view Wreal as infringing on Amazon.

(<u>Id.</u>)

2015 WL 11578511, at *2 (S.D. Fla. July 24, 2015) ("A party cannot shirk its obligations to provide initial disclosures based on arguments that they do not have a breakdown of damages or that a subsequent recalculation would be necessary.") (citing City of Rome, 549 F. App'x at 905); Am. Enters. Collision Ctr., Inc. v. Travelers Prop. & Cas. Co. of Am., Case No. 2:09–cv–443–FtM–29SPC, 2010 WL 11507335, at *3 (M.D. Fla. Sept. 17, 2010) ("Although the exact amount of damages may not be known, the disclosing party must make 'a good faith estimate of damages and methods of calculations based on the information available at this state of the litigation, while reserving the right to amend their calculations.'") (quoting LeBlanc v. Unifund CCR Partners, G.P., No. 8:06-cv-1216-T-TBM, 2007 WL 2446900, at *1 (M.D. Fla. Aug. 23, 2007)); Dunstan v. Wal-Mart Stores E., L.P., No. 3:07-cv-713-J-32TEM, 2008 WL 2025313, at *1 (M.D. Fla. May 9, 2008) (same). The Court further finds that this argument is undermined by the fact that in its Response brief, Wreal provided (1) a $22 million calculation for loss of goodwill damages, and (2) a method for calculating other actual damages. (D.E. 428 at 6-7.) However, Wreal did not provide this information in its Initial Disclosures or in any supplement thereto.

The Court further rejects Wreal's apparent argument that it needs more information from Amazon in order to provide a computation of certain damages. (See Resp. at 6.) "Rule 26 requires parties to make a computation of each category of damages claimed as part of its initial disclosures." Boldstar Tech., 2008 WL 11320010, at *2 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)). "Parties are not entitled to make their discovery responses contingent on the receipt of their opponent's discovery responses." Id. (citing Fed. R. Civ. P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then

14

reasonably available to it.  A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.")).  See also Pure Pools, Inc. v. Oxygen Pools, LLC, Civil No. 20-cv-80426-DIMITROULEAS/MATTHEWMAN, 2020 WL 4689775, at *3-4 (S.D. Fla. Aug. 13, 2020) (rejecting the counter-plaintiff's argument that it was excused from providing a computation of damages in its initial disclosures because it needed information from the counter-defendant to make the computation); Gonzalez v. LiveOps, Inc., CIVIL ACTION FILE NO. 1:08-CV-0813-BBM, 2008 WL 11324067, at *3 (N.D. Ga. Sept. 29, 2008) ("The Federal Rules do not contemplate waiting for discovery before providing any computation of damages.  Rule 26 requires that 'a party must, without awaiting a discovery request, provide' a computation of damages.").

In sum, the Court finds that Plaintiff violated Rule 26(a)(1)(A)(iii) by failing to provide in its Initial Disclosures "a computation of each category of damages claimed[,]" and violated Rule 26(e)(1)(A) by failing to timely supplement its Initial Disclosures to include a the required computations.  Plaintiff's failure to disclose a computation of actual damages precludes its introduction as evidence at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009) (quoting Leathers v. Pfizer, Inc., 233 F.R.D. 687, 697 (N.D. Ga. 2006)); see also Ryder Truck Rental, 2022 WL

2348642, at *34; <u>Stallworth v. E-Z Serve Convenience Stores</u>, 199 F.R.D. 366, 368 (M.D. Ala. 2001).

Wreal has not even attempted to argue that its failure to disclose a computation of its claimed damages was substantially justified or is harmless.  Consequently, the Court finds that Wreal failed to carry its burden on this issue, and Wreal is precluded from introducing evidence of actual damages at trial.  <u>See</u> <u>Vital Pharms.</u>, 2022 WL 3083273, at *3-4 (affirming district court's order excluding evidence of damages for lost sales and loss of goodwill because the plaintiff failed to provide a computation of those damages in its initial disclosures, and the nondisclosure was not substantially justified or harmless); <u>City of Rome</u>, 549 F. App'x at 905 (affirming district court's order excluding "breakage" damages for failure to disclose and failing to establish that the nondisclosure was substantially justified or harmless); <u>Mee Indus.</u>, 608 F.3d at 1221-22 (affirming district court's decision to exclude damages for loss of goodwill for failure to disclose and failing to establish that the nondisclosure was substantially justified or harmless) (citing <u>Design Strategy</u>, 469 F.3d at 293-97 (upholding exclusion of lost profits evidence based on lack of notice or computation of damages)); <u>Ryder Truck Rental</u>, 2022 WL 2348642, at *34 (excluding damages evidence under Rule 37(c)(1) because the defendant failed to argue that its nondisclosure was substantially justified or harmless); <u>Nymbus</u>, 2021 WL 8894791, at *5-7 (excluding evidence of lost profits damages because the plaintiff's failure to

disclose a computation of those damages in its initial disclosures was neither substantially justified nor harmless).[9]

Because the Court finds that evidence of actual damages must be excluded, the Court must address Amazon's argument that the Court should strike Wreal's jury demand.

### b.   Jury trial

Amazon argues that without a claim for actual damages, Plaintiff is not entitled to a jury trial under the Seventh Amendment to the United States Constitution, and the Court should strike the jury demand under Rule 39(a)(2).  (Id. at 12-14.)  Specifically, it argues that without a claim for actual damages, Wreal is limited to seeking only equitable remedies under the Lanham Act, and the Seventh Amendment's right to a jury trial does not extend to suits based in equity.  (Id. at 12-13 (citing Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1355-60 (11th Cir. 2019); Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995); Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1075 (9th Cir. 2015); Ferrari S.P.A. v. Roberts, 944 F.2d 1235, 1248 (6th Cir. 1991)).)

Wreal argues that its claims under Florida common law "provide for legal damages in the form of punitive damages or nominal damages" and "[e]ither theory preserves Wreal's right to a jury trial."  (Resp. at 9; see also id. at 9-11.)  Wreal further argues that

---

[9]      Although it is not Amazon's burden to establish harm, its argument that the nondisclosure denied Amazon a full opportunity to obtain relevant discovery and expert testimony for its defense" is well taken.  (Mot. at 10.)  Thus, the Court cannot find that the nondisclosure was harmless.  See Carter, 2021 WL 7502558, at *3 ("[B]y failing to compute his damages, [the plaintiff] precluded [the defendant] from critically examining his claim for lost business opportunities.").

even if the Court should find that it does not have a constitutional right to a jury trial, it should empanel an advisory jury.  (Id. at 11-12.)  It further notes that Amazon also demanded a jury trial.  (Id. at 4, 11 & n.7.)

In its Reply, Amazon argues that "nominal damages are insufficient to support a jury demand because Wreal's 'potential recovery cannot exceed the $20 threshold set by the Seventh Amendment.'"  (D.E. 429 at 9 (quoting Robinson v. Larson, Case No. 3:13cv387-LC-CJK, 2018 WL 6028819, at *1 (N.D. Fla. Oct. 17, 2018)).)  It argues that generally nominal damages do not exceed one dollar.  (Id. (citing Whitfield v. Thompson, 165 F. Supp. 3d 1227, 1238 n.4 (S.D. Fla. 2016)).)  Amazon further argues that Wreal's request for punitive damages does not preserve its right to a jury trial because Wreal is not entitled to punitive damages absent actual damages.  (Id. at 9-10 (citing Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001); NEXxUS Prods. Co. v. Gentle Concepts, Inc., No. 87–1152–CIV–T–15, 1993 WL 496824, at *13, 15 (M.D. Fla. Apr. 30, 1993)).)  Finally, Amazon argues that Wreal has not shown "unique or compelling circumstances" justifying its request to empanel an advisory jury, and it would be inefficient and wasteful to empanel an advisory jury.  (Id. at 10.)

Rule 39(a)(2) states: "When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action.  The trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."

The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial

by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of common law."  U.S. Const. amend. VII.  As the Eleventh Circuit has explained:

> Because the Seventh Amendment requires that the right to a jury trial only be "preserved" as it then existed, the inquiry requires us to look to the right as it existed at the time of the Founding.  At common law, jury trials were limited to cases heard in courts of law, as opposed to those in courts of equity or admiralty.  See Tull, 481 U.S. at 417, 107 S. Ct. 1831.  The Seventh Amendment right has thus long been understood to extend only to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447, 7 L. Ed. 732 (1830) (Story, J.).
>
> The Supreme Court has set out a two-part test to determine whether the Seventh Amendment's guarantee applies to a particular claim:
>
> > To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought.  First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

Hard Candy, 921 F.3d at 1354 (quoting Tull v. United States, 481 U.S. 412, 417-18 (1987)).

As to the first part of the test, the Eleventh Circuit in Hard Candy explained that by the time the Seventh Amendment was ratified in 1791, "the common law trademark infringement action was well established."  Id. at 1355 (citation omitted).  However, "[t]rademark actions also were brought in courts of equity during the same period."  Id. (citation omitted).  Therefore, "this part of the Supreme Court's test is indeterminate."  Id.

As to the second part of the test—the nature of the remedy—the Eleventh Circuit in Hard Candy found that a request for an accounting and disgorgement of profits under the

Lanham Act was equitable relief.  Id. at 1355-57.  Because the plaintiff in Hard Candy did not seek actual damages, and sought only equitable relief (an injunction, an accounting, and disgorgement of profits), attorneys' fees, and costs, the Eleventh Circuit found that the plaintiff was not entitled to a jury trial on its Lanham Act claims.  Id. at 1360.

Here, the Complaint's Prayer for Relief seeks compensatory and statutory damages, declaratory and injunctive relief, an order requiring Amazon to publish corrective advertising, disgorgement of profits, attorneys' fees, costs, and "[a]ny other and further relief as this Court may deem just and equitable."  (D.E. 1 at 17-18.)  The Court has excluded all evidence of actual damages, (see supra Section III(a)), and Plaintiff is not entitled to a jury trial on its claims for declaratory and injunctive relief, corrective advertising, disgorgement of profits, attorneys' fees and costs.  Hard Candy, 921 F.3d at 1355-57, 1360.

However, the Court finds that Wreal is entitled to a jury trial on its claim for statutory damages under the Lanham Act.  "An award of statutory damages [under the Lanham Act] is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement."  Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1292 (S.D. Fla. 2016) (citing Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); Playboy Enters., Inc. v. Universal Tel–A–Talk, Inc., No. Civ. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits)).  Statutory damages under the Lanham Act are a legal

remedy, not an equitable one.   Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12 Civ. 6283(AJN), 2012 WL 5265727, at *6 (S.D.N.Y. Oct. 24, 2012) (observing that subsequent to the U.S. Supreme Court's decision in Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998), which held that statutory damages under § 504(c) of the Copyright Act are a legal remedy triggering the Seventh Amendment right to a jury trial, "every decision of which the Court is aware has concluded that statutory damages under the Lanham Act are a remedy at law, not one at equity") (collecting cases).   The availability of statutory damages under the Lanham Act preserves Wreal's Seventh Amendment right to a jury trial.   See Feltner, 523 U.S. at 353 ("The right to a jury trial includes the right to have a jury determine the amount of statutory damages . . . .").

The Court further finds that the availability of nominal damages on the Florida law claims preserves Wreal's Seventh Amendment right to a jury trial.   First, the Court finds that an award of nominal damages is available on Wreal's Florida law claims for trademark infringement and unfair competition.   See Rooney v. Skeet'r Beat'r of Sw. Fla., Inc., 898 So. 2d 968, 970 (Fla. Dist. Ct. App. 2005) (finding that the evidence did not support a compensatory damage award on the plaintiff's Florida and federal trademark infringement claims and remanding for entry of a nominal damages award).   Second, the Court finds that the Complaint's request for monetary damages and "[a]ny such other and further relief as this Court may deem just and equitable" preserved Wreal's right to seek nominal damages. See Virdi v. Dekalb Cnty. Sch. Dist., 216 F. App'x 867, 873 (11th Cir. 2007) (finding that the complaint's request for monetary damages preserved entitlement to nominal damages); Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006) (finding that complaint's

request for compensatory damages and "any other relief the court deem[s] appropriate" preserved entitlement to nominal damages).  Third, the Court disagrees with Amazon that an award of nominal damages cannot exceed $20.  In Florida, there is no "definitive cap" on nominal damages.  Prestige Gallery, Inc. v. Napleton, 283 So. 3d 875, 876 (Fla. Dist. Ct. App. 2019).  Nominal damages up to $100 may be permissible.  See id. at footnote. See also KH Outdoor, LLC v. City of Trussville, 465 F.3d 1256, 1262 (11th Cir. 2006) (affirming nominal damages award of $100).  Because nominal damages may be available to Plaintiff, and because nominal damages may exceed $20, the Court finds that Plaintiff's claim for nominal damages preserves its right to a jury trial under the Seventh Amendment. D.H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC, CIVIL ACTION FILE NO. 1:17-CV-3430-MHC, 2021 WL 2819778, at *3-5 (N.D. Ga. May 24, 2021) ("Because an award of nominal damages could be for a sum in excess of the minimum $20.00 threshold required by the Seventh Amendment, the Court finds that Pace's right to pursue a claim for nominal damages in this case triggers its right to a trial by jury.").

Finally, the Court rejects Amazon's argument that Wreal is not entitled to punitive damages absent actual damages.  Under Florida law, where the factfinder has found the defendant liable, a plaintiff can recover punitive damages even if no compensatory or actual damages have been proven.  Ault v. Lohr, 538 So. 2d 454, 455-56 (Fla. 1989) ("[A] jury finding of liability is the equivalent of finding nominal damages and, consequently, the jury may assess punitive damages."); Lohr v. Fla. Dep't of Corrs., 869 F.2d 1456, 1457 (11th Cir. 1989) (same).

In sum, the Court finds that the availability of statutory damages under the Lanham Act, and the availability of nominal and punitive damages on the Florida law claims for trademark infringement and unfair competition preserve Wreal's Seventh Amendment right to a jury trial.  Therefore, Amazon's Motion to Strike the jury demand is denied.[10]

## IV.      Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Amazon.com, Inc.'s Motion in Limine to Exclude Evidence or Argument of Actual Damages and Strike Plaintiff's Jury Demand, (D.E. 422, 425-1), is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 7th day of December, 2022.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

---

[10]      The Court further notes that in reversing the Court's Order granting summary judgment in favor of Amazon and remanding the case to this Court, the Eleventh Circuit stated: "This is not to say that Amazon may not ultimately prevail on the merits; rather, it must do so before a jury." Wreal II, 38 F.4th at 140 (emphasis added).  Thus, the Court's finding that Wreal is entitled to a jury trial is supported by the Eleventh Circuit's opinion in Wreal II.